IN THE DISTRICT COURT OF POTTAWATOMIE COUNTY
STATE OF OKLAHOMA

FILED
IN THE DISTRICT COURT

APR 11 2024

POTTAWATOMIE COUNTY, OK
VALERIE N. UELTZEN, COURT CLERK
BY____________DEPUTY

CITIZEN POTAWATOMI COMMUNITY
COMMUNITY DEVELOPMENT CORPORATION,

Plaintiff,

v.

NATHAN O. BEAUCHAMP;
ADA OUTDOORS, LLC, an Oklahoma limited liability company;
SHAWNEE OUTDOORS, LLC, an Oklahoma limited liability company;
BOARD OF COUNTY COMMISSIONERS OF PONTOTOC COUNTY;
TREASURER OF PONTOTOC COUNTY;
CAPITOL SERVICES, LLC, an Oklahoma corporation,
CATERPILLAR FINANCIAL SERVICES CORPORATION, a foreign corporation;
CITIZENS BANK OF ADA, an Oklahoma banking corporation;
CORPORATION SERVICE COMPANY, a foreign corporation;
FIRST UNITED BANK AND TRUST CO., an Oklahoma banking corporation;
HUNTINGTON DISTRIBUTION FINANCE, a foreign corporation;
MAGOO FINANCIAL, a foreign corporation;
OKLAHOMA HERITAGE BANK, an Oklahoma banking corporation;
TCF INVENTORY FINANCE, a foreign corporation; and
THE UNITED STATES SMALL BUSINESS ADMINISTRATION,

Defendants.

CJ-2024-141

**PETITION**

COMES NOW Plaintiff, CITIZEN POTAWATOMI COMMUNITY DEVELOPMENT CORPORATION ("Plaintiff") and for its causes of action against the Defendants NATHANIEL O. BEAUCHAMP ("Beauchamp"), in his personal capacity and as member of the limited liability companies named as Defendants; ADA OUTDOORS, LLC (Ada Outdoors), an Oklahoma limited liability company; SHAWNEE OUTDOORS, LLC (Shawnee Outdoors), an Oklahoma limited liability company, (these three collectively referred to as the "Borrowers")

EXHIBIT 2

and BOARD OF COUNTY COMMISSIONERS OF PONTOTOC COUNTY, TREASURER OF PONTOTOC COUNTY, CAPITOL SERVICES, LLC, an Oklahoma corporation, CATERPILLAR FINANCIAL SERVICES CORPORATION, a foreign corporation, CITIZENS BANK OF ADA, an Oklahoma banking corporation; CORPORATION SERVICE COMPANY, a foreign corporation, FIRST UNITED BANK AND TRUST CO., an Oklahoma banking corporation, HUNTINGTON DISTRIBUTION FINANCE, a foreign corporation, MAGOO FINANCIAL, a foreign corporation, OKLAHOMA HERITAGE BANK, an Oklahoma banking corporation, TCF INVENTORY FINANCE, a foreign corporation, and THE UNITED STATES SMALL BUSINESS ADMINISTRATION (all collectively, the "Defendants"), alleges and states:

1.     Plaintiff is an enterprise of the Citizen Potawatomi Nation, a federally recognized sovereign Native American tribe.

2.     Nathaniel O. Beauchamp is an individual person and resident of Pottawatomie County, Oklahoma, who may be served at 35766 Braums Road, Wanette, OK 74878.

3.     Shawnee Outdoors, LLC is an Oklahoma limited liability company and, upon information and belief, may be served through its Registered Agent, Nathaniel O. Beauchamp at 35766 Braums Road, Wanette, OK 74878.

4.     Ada Outdoors, LLC is an Oklahoma limited liability company and, upon information and belief, may be served through its Registered Agent, Nathaniel O. Beauchamp at 1030 W. 12th Street, Ada, OK 74820.

5.     Paula Hall, in her official capacity as Treasurer of Pontotoc County, may be served at 100 W 13th, Ada, Oklahoma 74820.

6.     The Board of County Commissioners of Pontotoc County, in their official capacities, may be served at 100 W 13th, Ada, Oklahoma 74820.

7.     Capitol Services, LLC is an Oklahoma corporation and may be served through its Registered Agent, Capitol Document Services, Inc. at 1833 Morgan Road, Oklahoma City, OK 73128.

8.     Caterpillar Financial Services Corporation is a foreign corporation and may be served through its Registered Agent Corporation Service Company at 10300 Greenbriar Place, Oklahoma City, OK 73159

9.     Citizen's Bank of Ada is an Oklahoma corporation, which may be served through its Registered Agent Jimmy Eppler at 123 W. 12th Street, Ada, OK 74820.

10.     Corporation Service Company is a foreign corporation which may be served through its Registered Agent United States Corporation Company at 10300 Greenbriar Place, Oklahoma City, OK 73159 or at 801 Adlai Stevenson Drive, Springfield, IL 62703.

11.     First United Bank and Trust Co. is an Oklahoma corporation, which may be served through its Registered Agent Spend Life Wisely Company, Inc. at 1400 W. Main, Durant, OK 74701.

12.     Huntington Distribution Finance is a foreign corporation and may be served through its Registered Agent CT Corporation System at 1833 South Morgan Road, Oklahoma City, OK 73128.

13. Magoo Financial is a foreign corporation and may be served at 13943 Irvine Blvd, #85, Irvine, CA 92602.

14. Oklahoma Heritage Bank is a domestic banking corporation and may be served through its Registered Agent R. Darryl Fisher at 515 S. Hickory, Roff, OK 74865.

15. TCF Inventory Finance is an Oklahoma corporation, which may be served through its Registered Agent C T Corporation System at 1833 South Morgan Road, Oklahoma City, OK 73128.

16. The United States Small Business Administration is a federal agency which may be served through its registered agent Corporation Services Company at 801 Adlai Stevenson Drive, Springfield, IL 62703.

17. This Court possesses jurisdiction pursuant to 20 O.S. § 91.1 and venue is proper in this Court pursuant to 12 O.S. §§ 131, 134, & 143.

**CPCDC LOAN # 8351**

18. On or about June 21, 2018, Beauchamp and Ada Outdoors, for good and valuable consideration, made, executed and delivered to Plaintiff, a certain written Promissory Note in the original amount of Two Hundred Nine Thousand Seven Hundred Dollars ($209,700.00). A copy of Note 8351 is attached hereto as Exhibit 1. Note 8351 had an original maturity date of July 1, 2023.

19. As part of the same transaction, and to secure Note 8351 Beauchamp and Ada Outdoors, made, executed, and delivered to the Plaintiff, a Real Estate Mortgage with Power of Sale (Mortgage 8351), which mortgaged and conveyed to the Plaintiff, the following described real estate:

> A part of the SW/4 of Section 5, Township 3 North, Range 6 East of the Indian Base and Meridian, Pontotoc County, Oklahoma, described as follows: Commencing at the Southeast Corner of the SW/4 of SE/4 of SW/4 of said Section 5, thence S89°16'21"W along the South line thereof a distance of 376.56 feet to the point of beginning; thence continuing S89°16'21"W along said South line a distance of 276.06 feet to a point on the East right of way line of State Highway 1; thence N00°22'51"E along and with said East right of way line a distance of 239.82 feet; thence continuing along and with said East right of way on a curve to the left, said curve having a radius of 2034.86 feet which a chord bearing N02°27'47"W and a chord length of 201.97 feet, an arc distance of 202.05 feet; thence N89°16'54"E a distance of 280.56 feet; thence S00°20'06"E a distance of 441.62 feet to the point of beginning.
> (the "Ada Real Property")

with all the buildings and other improvements located or constructed on the real estate, fixtures, personal property, used on or in, and appurtenances to the real estate, and all rents, issues, profits, and income derived from the referenced property and a security interest

therein. Mortgage 8351 was recorded on or about June 25, 2018, with the Pontotoc County Clerk as Instrument No. 2018-3435. A copy of Mortgage 8351 is attached hereto as Exhibit 2.

20. As a part of the same transaction, and to secure Note 8351, Beauchamp and Ada Outdoors also made, executed, and delivered to the Plaintiff a Guaranty Agreement. A copy is attached hereto as Exhibit 3.

21. As a part of the same transaction, and to secure Note 8351, Beauchamp and Ada Outdoors also made, executed, and delivered to the Plaintiff a Limited Liability Company Guaranty and Pledging Resolution wherein they issued a security interest in "any and all assets of the Company" and guaranteed the indebtedness reflected in Note 8351. A copy is attached hereto as Exhibit 4.

22. As a part of the same transaction, to evidence the Security Interests, Plaintiff filed a UCC-1 at Oklahoma County Clerk Inst. No. 20180917020959120. Plaintiff filed a continuation of this UCC-1 on or about October 30, 2023 at Oklahoma County Inst. No. 2023103002105935. Copies are attached as Exhibits 5 & 6.

23. On or about January 14, 2019, Borrowers entered into a Cross-Default and Cross-Collateralization Agreement. A copy is attached hereto as Exhibit 7.

**CPCDC LOAN # 8366**

24. On or about May 28, 2019, Beauchamp and Shawnee Outdoors, for good and valuable consideration, made, executed and delivered to Plaintiff, a Promissory Note (Note 8366) in the original amount of One Hundred Two Thousand Twenty Dollars ($102,020.00). A copy is attached hereto as Exhibit 8. Note 8366 had an original maturity date of June 1, 2022.

25. As a part of the same transaction, and to secure the payment of Note 8366, Beauchamp and Ada Outdoors, made, executed, and delivered to the Plaintiff a Guaranty Agreement. A copy is attached hereto as Exhibit 9.

26. As a part of the same transaction, and to secure the payment of Note 8366, Beauchamp and Ada Outdoors, made, executed, and delivered to the Plaintiff a Security Agreement as to all business assets to include all furniture, inventory, fixtures, equipment of whatever kind or nature, wherever located, now owned or hereafter acquired, and all returns, repossessions, exchanges, substitutions, replacements, attachments, parts, accessories, and accessions thereto and thereof and all proceeds thereof, and of all deposits. A copy is attached hereto as Exhibit 10.

27. As a part of the same transaction, and to secure the payment of Note 8366, Beauchamp and Ada Outdoors, made, executed, and delivered to the Plaintiff an Assignment of Leases, Rents, Profits from the property located at 40960 Hardesty Road, Shawnee, OK 74801. A copy is attached hereto as Exhibit 11.

28. As a part of the same transaction, to evidence the Security Interests, Plaintiff filed a UCC-1 on or about June 10, 2019 at Oklahoma County Clerk Inst. No. 201906100020581520. Plaintiff filed a continuation of this UCC-1 on or about February 14,

2024 at Oklahoma County Inst. No. 2024021402014055. Copies are attached as Exhibits 12 & 13.

**CPCDC LOAN # 8394**

29. On or about March 10, 2021, Borrower Defendants for good and valuable consideration, made, executed, and delivered to Plaintiff, a certain Promissory Note (Note 8394) in the original amount of Two Million Forty-four Thousand Eighty-nine Dollars ($2,044,089.00). A copy of Note 8394 is attached hereto as Exhibit 14. Note 8394 had an original maturity date of July 15, 2021.

30. As a part of the same transaction, and to secure the payment of Note 8394, Beauchamp, Ada Outdoors, and Shawnee Outdoors, made, executed, and delivered to the Plaintiff a Security Agreement, in any and all assets of the Company as collateral, including Purchase Order #136365 for 66,560 of 9mm pistol ammo and 55,000 5.56 rifle ammo (the "Ammunition"). This Security Agreement was recorded on or about April 26, 2021 at Pontotoc County Clerk's Instrument Number 2021-2467 and on or about April 5, 2021 at Pottawatomie County Clerk's Instrument Number 2021-4501. A copy is attached hereto as Exhibit 15.

31. As a part of the same transaction, and to secure the payment of Note 8394, Beauchamp, Ada Outdoors, and Shawnee Outdoors, made, executed, and delivered to the Plaintiff an Assignment of Leases, Rents, and Profits from the Ammunition. A copy is attached hereto as Exhibit 16.

32. As a part of the same transaction, and to secure the payment of Note 8394, Beauchamp, Ada Outdoors, and Shawnee Outdoors, made, executed, and delivered to the Plaintiff a Guaranty Agreement. A copy is attached hereto as Exhibit 17.

33. As a part of the same transaction, and to secure the payment of Note 8394, Beauchamp, Ada Outdoors, and Shawnee Outdoors, made, executed, and delivered to the Plaintiff Pledging Resolutions. Copies are attached hereto as Exhibits 18 & 19.

34. As a part of the same transaction, to evidence the Security Interests, Plaintiff filed a UCC-1 on or about April 8, 2021 at Oklahoma County Clerk Inst. No. 2021040802033184. A copy is attached hereto as Exhibit 20.

**CPCDC LOAN #8530**

35. On or about March 30, 2023, Beauchamp, Shawnee Outdoors, and Ada Outdoors, for good and valuable consideration, entered into a loan agreement with the Plaintiff, which was a renewal of Loan 8394.

36. As part of this loan agreement, Beauchamp, Shawnee Outdoors, and Ada Outdoors issued a Promissory Note to the Plaintiff for the amount of Two Million Three Hundred Thirty-Three Thousand Three Hundred Four Dollars and Five Cents ($2,330,304.05) (Note 8530). A copy of Note 8530 is attached hereto as Exhibit 21.

37. As part of the same transaction, to secure Note 8394, as a renewal of Note 8394, Beauchamp, Shawnee Outdoors, and Ada Outdoors made, executed, and delivered to

Plaintiff a Modification of Mortgage 8351, on the Ada Real Property. A copy is attached hereto as Exhibit 22.

38. As a part of the same transaction, and to secure the payment of Note 8530, as a renewal of Note 8394, Beauchamp, Ada Outdoors, and Shawnee Outdoors, made, executed and delivered to the Plaintiff a Security Agreement, in any and all assets of the business, including the Ammunition. A copy is attached hereto as Exhibit 23.

39. As a part of the same transaction, and to secure the payment of Note 8530, as a renewal of Note 8394, Beauchamp, Ada Outdoors, and Shawnee Outdoors, made, executed and delivered to the Plaintiff a Guaranty Agreement. A copy is attached hereto as Exhibit 24.

40. As a part of the same transaction, and to secure the payment of Note 8530, as a renewal of Note 8394, Beauchamp, Ada Outdoors, and Shawnee Outdoors, made, executed and delivered to the Plaintiff a Limited Liability Company Guaranty and Pledging Resolutions. Copies are attached hereto as Exhibits 25 & 26.

41. Plaintiff has complied with all the terms, conditions precedent and provisions of said Notes and Mortgages and is duly empowered to bring this suit.

42. The Notes and Mortgages provide that in the event of a failure to pay monthly installments, the filing of a bankruptcy proceeding, or any other failure to keep or perform any of the conditions and covenants of the Notes and Mortgages, the entire principal sum and accrued interest, together with all sums secured by the Mortgage shall at once become due and payable at the option of the Plaintiff, and the Plaintiff will be entitled to foreclose the Mortgages and recover the unpaid principal thereon and all expenditures of the Mortgagee made thereunder, with interest thereon, and to have the premises sold and the proceeds applied to the payment of the indebtedness secured thereby, together with all legal and necessary expenses and all costs. The Borrowers have also cross collateralized the secured property and entered a cross default agreement.

43. Default has been made upon the Notes and Mortgages and Security Agreements. As of April 10, 2024, the principal amount and accrued interest is $2,454,630.56, plus accruing daily interest, attorney fees, costs and expenses, and other allowable charges. The mortgage constitutes a valid lien against the Ada Real Property, prior to and superior to any right, title, lien, estate or interest of the Defendants or any other party. The Security Instrument also constitutes a valid lien against the enumerated other secured property which priority may vary according to the particular asset and will be established after the Defendants answer and discovery is conducted, but Plaintiff seeks the maximal priority allowable by law.

44. After allowing all just credits there is due to Plaintiff on the Notes and Mortgages and other security instruments, through April 10, 2024, the principal sum and interest in the amount of $2,330,204.05 plus interest accruing thereafter at 5% per annum until paid, with costs, expenses, and a reasonable attorney's fee, and for such sums as may be advanced or incurred by Plaintiff during the pendency of this action for taxes, assessments, hazard insurance premiums, expenses reasonably necessary for the

preservation of the premises or of the priority of Plaintiff's mortgage lien and for execution and sale on any judgment hereafter entered in this cause.

**Defendants other than The Borrowers**

45. The County Treasurer of Pontotoc County, Oklahoma and/or the Board of County Commissioners of Pontotoc County, Oklahoma, may claim some right, title, lien, encumbrance claim, assessment, or interest in and to the Ada Real Property by reason of ad valorem taxes due and delinquent. Such right, title, lien, estate, encumbrance, claim, assessment, or interest if any, is superior to the Mortgages of Plaintiff.

46. The Citizens Bank of Ada may claim some right, title, lien, encumbrance claim, assessment, or interest in and to the Ada Real Property by a Mortgage given it by Ada Outdoors and recorded on or about December 7, 2018 at Instrument Number 2018-6486 and Subordination Agreement filed on or about December 13, 2018 at Pontotoc County Clerk Instrument No. 2018-6580. Such right, title, lien, estate, encumbrance, claim, assessment, or interest if any, is inferior to the Mortgages of Plaintiff.

47. The Borrowers are the subject of many UCC filings by the non-Borrower Defendants. Because the referenced collateral varies so greatly and Plaintiff has little more than the face of the UCC filings to review, the Plaintiff will recite in brief the UCC filings by the Defendants which its research has revealed, but will not assert an outright claim as to the priority of its security interests as to each Defendant, but preserves all it rights, and asserts that its security interests have the maximal priority allowable by law and, subsequent to answer and discovery by and between the Parties, will assert its claim as to the validity and priority of security interests other than its own with more particularity in subsequent pleadings.

48. Caterpillar Financial Services Corporation may claim some right, title, lien, encumbrance, claim, assessment, or interest in and to a Caterpillar 299D3XE Compact Track Loader by a UCC-1 filed at Oklahoma County Clerk Inst. No. 20230210020013745.

49. The Citizens Bank of Ada, may claim some right, title, lien, encumbrance claim, assessment, or interest in and to

a. certain Kubota, Clark, and Caterpillar equipment by a UCC-1 filed at Oklahoma County Clerk Inst. No. 20190124020075880 and a continuation filed at Oklahoma County Clerk Inst. No. 2023122002122436
b. furniture, fixtures, computers, tools, displays, and shelves and accounts receivable by a UCC-1 filed at Oklahoma County Clerk Inst. No. 20150116020052870 and a continuation filed at Oklahoma County Clerk Inst. No. 20191204021211650.

50. Corporation Service Company may claim some right, title, lien, encumbrance, claim, assessment, or interest in and to the assets of Shawnee Outdoors and Ada Outdoors by a UCC-1 filed at Oklahoma County Clerk Inst. No. 2023072002071282.

51. First United Bank and Trust Company may claim some right, title, lien, encumbrance, claim, assessment, or interest in and to

a. 2017 Kubota Tractor w/Loader M7-151 (Serial No. 10761), 2010 Kubota L5740 (Serial No. 70766), 1999 Ditchwitch 3700 DD (Serial No. 3R1334), 2001 Clark Forklift (Serial No. P365G05418721FB), Clark SC60 CGP 30 for Klift (Serial No. P365L-1269-9466FB) by a UCC-1 filed at Oklahoma County Clerk Inst. No. 20191010021039570, and

b. a 1996 Caterpillar Dozer and 2018 John Deere tractor by a UCC-1 filed at Oklahoma County Clerk Inst. No. 2022082202088731.

52. Huntington Distribution Finance, Inc. and TCF Inventory Finance may claim some right, title, lien, encumbrance claim, assessment, or interest in and to the assets of Ada Outdoors by a UCC-1 filed at Oklahoma County Clerk Inst. No. 20130328020302450, a continuation filed at Oklahoma County Clerk Inst. No. 20171229021290720, a continuation filed at Oklahoma County Clerk Inst. No. 2022101802108543, an amendment filed at Oklahoma County Clerk Inst. No. 2022101202106532, and a continuation filed at Oklahoma County Clerk Inst. No. 20230113020048.

53. Capitol Services, LLC and/or Magoo Financial may claim some right, title, lien, encumbrance claim, assessment, or interest in and to all assets held by Shawnee Outdoors, LLC by a UCC-1 filed at Oklahoma County Clerk Inst. No. 20200121020068380.

54. Oklahoma Heritage Bank may claim some right, title, lien, encumbrance claim, assessment, or interest in and to

a. a 2019 John Deere Tractor by a UCC-1 filed at Oklahoma County Clerk Inst. No. 2022013102010248; and

b. certain Kubota, Cub Cadet, and Clark equipment by a UCC-1 filed at Oklahoma County Clerk Inst. No. 202001029021256080; and

c. Clark and Kubota equipment by a UCC-1 filed at Oklahoma County Clerk Inst. No. 2023091102089904

55. TCF Inventory Finance may claim some right, title, lien, encumbrance claim, assessment, or interest in and to the assets of Ada Outdoors and/or Shawnee Outdoors by a UCC-1 filed at Oklahoma County Clerk Inst. No. 20200227020195390 and UCC-1s filed at Oklahoma County Clerk Inst. No. 20200306020230060 UC1 and 20200311020242110.

56. The United States Small Business Administration may claim some right, title, lien, encumbrance claim, assessment, or interest in and to the assets of Ada Outdoors and/or Shawnee Outdoors by a UCC-1 filed at Oklahoma County Clerk Inst. No. 20200727020887290 and at Oklahoma County Clerk Inst. No. 20200727020880840.

57. Defendants are notified that unless, within 35 days after receipt of this notice, they dispute the validity of this debt, or any portion thereof, Plaintiff will assume the debt to be valid. If the Defendants, or any of them, dispute the debt in writing within the 35-day period, that debt, or any portion thereof, is disputed, Plaintiff will obtain verification of the debt and mail a copy of the verification to Defendants. Upon Defendants' written request within the 35-day period, Plaintiff will also provide Defendants with name of the original creditor, if different from the current creditor. This litigation is an attempt to collect a debt and any information obtained from this communication will be used for that purpose.

**PRAYER FOR RELIEF**

58. The Plaintiff prays that it recovers a judgment *in rem* against all the Defendants and a judgment both *in personam* and *in rem* against the Borrowers as to the Real Property and the Chattels, in an amount of, as of April 10, 2024, $2,454,630.56 plus accruing interest, attorney fees, costs, expenses, and other allowable charges.

59. The Plaintiff prays that it the Court determine that:

a. Plaintiff's Mortgage is a valid lien upon the Ada Real Property subject only to payment of delinquent *ad valorem* taxes, if any, and

b. the lien be foreclosed for such sums and against each Borrower Defendant, and the subject property be sold, with or without appraisement, as elected by the Plaintiff, and

c. the right, title, and interest of any and each Defendant and any person or entity claiming by or through them in and to the Ada Real Property, with exception of those identified in paragraph 45 above, be subject, junior, inferior to the liens of Plaintiff, and

d. the proceeds of the sale of the Ada Real Property be applied first to costs herein, then to the payment of unpaid *ad valore*m taxes, if any, to satisfaction of Plaintiff's claim and judgment, to any valid liens of inferior priority, with the surplus, if any, paid into the Court to abide further order,

60. The Plaintiff further prays that the Court determine that:

61. Plaintiff's Security Instruments are a valid lien upon the secured property enumerated above,

62. The validity and then priority of any liens against the secured property enumerated above, giving Plaintiff's liens the maximal priority allowable by law, and

63. the lien be foreclosed for such sums and against each Borrower Defendant, and the secured property be sold, with or without appraisement, as elected by the Plaintiff, and

64. the proceeds of the sales applied first to costs herein, then to the payment and satisfaction of the valid lienholders in order of priority as established by the Court, with the surplus, if any, paid into the Court to abide further order

65. The Plaintiff further prays that the Court determine that, upon confirmation of the sale of the Real Property and Chattels, adjudge that the Defendants and all persons or entities claiming by, through, or under them be forever barred, foreclosed, and enjoined from asserting any claim to right, title, interest, estate or equity of redemption in and to the Real Property and other secured property, or any part thereof, and order such other and further relief as may be just and equitable.

Respectfully submitted,

George Wright, OBA #21873
1601 Gordon Cooper Drive
Shawnee, OK 74801
(405) 275-3121 | (405) 275-0198 (fax)
george.wright@potawatomi.org
ATTORNEYS FOR PLAINTIFF
CITIZEN POTAWATOMI COMMUNITY
DEVELOPMENT CORPORATION

EXHIBIT 2

**VERIFICATION**

STATE OF OKLAHOMA )
) SS:
COUNTY OF POTTAWATOMIE )

Robert L. Crothers, Chief Operating Officer of Citizen Potawatomi Community Development Corporation, being first duly sworn, state that I am the Chief Operating Officer of the Plaintiff above named, and I have read the foregoing document and am familiar with the contents thereof. The matters and statements therein set forth are true and correct.

ROBERT L. CROTHERS, COO
CITIZEN POTAWATOMI COMMUNITY
DEVELOPMENT CORPORATION

Subscribed and sworn to before me on this 11th day of April, 2024.

Notary Public

JORDAN GAIL OSWALD
NOTARY PUBLIC - STATE OF OKLAHOMA
MY COMMISSION EXPIRES NOV. 28, 2027
COMMISSION # 23015524

# PROMISSORY NOTE – Fixed or Variable Rate - Commercial

DATE OF NOTE: 6/21/2018

| DEBTOR'S NAME(S) | LENDER'S NAME AND ADDRESS |
|---|---|
| Ada Outdoors, LLC<br>Nathan O. Beauchamp | Citizen Potawatomi<br>Community Development Corporation<br>130 E. MacArthur, Suite 206<br>Shawnee, OK 74804 |
| DEBTOR'S ADDRESS<br>1030 W 12th<br>Ada, OK 74820 | |

| NOTE NUMBER | FIXED INTEREST RATE PER ANNUM | MATURITY DATE | PRINCIPAL AMOUNT | SOCIAL SECURITY/TIN NUMBER: | |
|---|---|---|---|---|---|
| 8351 | 7.5% | 7/1/2023 | $209,700.00 | [redacted] | ☐ 360 DAY ☒ 365 DAY |

☒ NEW LOAN
☐ RENEWAL OF LOAN NUMBER(S)
☒ FULLY ADVANCED ☐ MULTIPLE ADVANCES ☐ REVOLVING CREDIT

PURPOSE OF LOAN: Purchase Land

COLLATERAL DESCRIPTION: Land (SW/4, S5-T3N-R6E) Pontotoc Co., Oklahoma, Tract #1 First Mtg, Tract #2 2nd Mtg.

PAYMENT TERMS: Principal and Interest are due and payable in 59 equal installment payments consisting of principal and interest, in the amount of $4,201.96 each, commencing on August 1, 2018 and continuing monthly thereafter, and one (1) final installment payment consisting of the full amount of the principal and all accrued interest remaining due and payable on July 1, 2023.

Notwithstanding any provision to the contrary, the law of Citizen Potawatomi Nation will govern the construction and enforcement of this agreement. All parties understand and agree that Citizen Potawatomi Nation Tribal Court has jurisdiction to resolve any dispute under this agreement and the parties do hereby submit to the personal jurisdiction of, and waive any objection to venue in, the Citizen Potawatomi Nation Tribal Court for the resolution of any dispute arising out of this agreement.

PROMISE TO PAY. For value received, the undersigned Debtor, whether one or more, and jointly and severally if more than one, agrees to the terms of this Note and promises to pay to the order of the Lender named above at its place of business as indicated in this Note or at such other places as may be designated in writing by Lender, the Principal Amount of this Note together with interest on the unpaid Principal Amount until maturity at the per annum interest rate or rates stated above and according to the Payment Terms stated in this Note. Interest on this Note is calculated on the actual number of days elapsed on a basis of a 360 or 365 day year, as indicated above. For purposes of computing interest and determining the date principal and interest payments are received, all payments will be deemed made only when received in collected funds. Payments are applied first to accrued and unpaid interest and other charges, and then to unpaid Principal Amount. In this Note, "Debtor" includes any party liable under this Note, including endorsers, co-makers, guarantors and otherwise, and "Lender" includes all subsequent holders.

VARIABLE RATE. If this is a Variable Rate transaction as indicated above, the interest rate shall vary from time to time with changes (whether increases or decreases) in the Rate shown above. The interest rate on this Note will be the Index Rate plus a Margin, if any, as indicated above. Each change will become effective on the same date the Index Rate changes unless a different effective date is indicated above. If the Index Rate is Lender's base or prime rate, it is determined by Lender in its sole discretion, primarily on a basis of its cost of funds, is not necessarily the lowest rate Lender is charging its customers, and is not necessarily a published rate.

LATE PAYMENTS. When permitted by law, any principal and/or interest amount not paid within 5 calendar days after will be assessed 5.000% of the amount past due, as a late charge fee. In addition, any principal and/or interest not paid by the maturity date of this Note shall thereafter bear interest at the applicable rate stated in this Note. In no event shall the interest rate and related charges either before or after maturity be greater than permitted by law.

ALL PARTIES PRINCIPAL. All Debtors shall each be regarded as a principal and each Debtor agrees that any Debtor, with Lender's approval and without notice to any other Debtor, may from time to time renew this Note or consent to one or more extensions or deferrals of the Maturity Date for any term(s) or to any other modification(s), and all Debtors shall be liable in same manner as on the original Note.

ADVANCES AND PAYMENTS. If the Fully Advanced box is checked, then the Debtor acknowledges that the entire Principal Amount has been advanced to the Debtor or for Debtor's account or benefit. If the Multiple Advances box is checked, then the Debtor understands that the Lender will disburse the proceeds of this Note in increments, up to the Principal Amount, but that even if the Debtor prepays, the Debtor has no right to reborrow any amounts disbursed. The balance that the Debtor owes under this Note is the aggregate of all such disbursements, less any payments of principal made on this Note. Interest will accrue only on the actual amount of principal disbursed and outstanding from time to time. If the Revolving Credit box is checked, then the Debtor understands that the Lender will disburse the proceeds of this Note in increments up to the Principal Amount and that the remaining terms of this paragraph shall apply to this Note. The balance that the Debtor owes under this Note is the aggregate of all such disbursements, less any payments of principal made on this Note. Interest will accrue only on the actual amount of principal disbursed and outstanding from time to time. If the Revolving Credit box is checked, then the Debtor understands that the Lender will disburse the proceeds of this Note in increments up to the Principal Amount and that the remaining terms of this paragraph shall apply to this Note. The balance that the Debtor owes under this Note is the aggregate of all such disbursements, less any payments of principal made on this Note. The Debtor understands that the maximum amount of all such advances outstanding at any one time cannot exceed the Principal Amount, but that the Debtor may repay and reborrow up to the Principal Amount during the term of this Note. If the aggregate outstanding amount advanced under this Note ever exceeds the Principal Amount, then the Debtor will repay the excess upon demand, plus interest on the excess. There may be times when no principal is outstanding on this Note, but this Note and any collateral securing this Note remain valid and effective as to future advances under this Note. Any loans or advances the Lender makes to the Debtor or for the Debtor's account or benefit are presumed to be made under the terms of this Note. The Lender may make advances under this Note at the oral or written request of any person designated or authorized by the Debtor until the Debtor revokes such designation or authorization in writing received by the Lender, provided that the Lender has the right, but is not obligated, to require written authorization from the Debtor prior to honoring any oral request. Interest will accrue only on the actual amount of principal disbursed and outstanding from time to time.

PREPAYMENT. Debtor shall have the right to prepay all or any part of the principal due under this Note at any time, subject to the following conditions: (a) all interest must be paid through the date of any prepayment; (b) if this Note provides for monthly or other periodic payments, there will be no changes in the due dates or amounts following any partial prepayments unless Lender agrees to such changes in writing; (c) upon prepayment, in whole or in part, Lender may charge and Debtor agrees to pay a fee or premium calculated as follows (this fee/premium provision will not apply if prohibited by applicable law):

COLLATERAL. This Note and all other obligations of Debtor to Lender, including renewals and extensions, are secured by all collateral securing this Note and by all other security interests and mortgages previously or later granted to Lender and by all money, deposits and other property owned by any Debtor and in Lender's possession or control.

ACCELERATION. At option of Lender, the unpaid balance of this Note and all other obligations of Debtor to Lender, whether direct or indirect, absolute or contingent, now existing or later arising, shall become immediately due and payable without notice or demand, upon or after the occurrence or existence of any of the following events or conditions: (a) Any payment required by this Note or by any other note or obligation of Debtor to Lender or to others is not made when due, or any event or condition occurs or exists which results in acceleration of the maturity of any Debtor's obligation to Lender or to others under any promissory note, agreement or undertaking; (b) Debtor defaults in performing any covenant, obligation, warranty or provision contained in any loan agreement or in any instrument or document securing or relating to this Note or any other note or obligation of Debtor to Lender or to others; (c) any warranty, representation, financial information or statement made or furnished to Lender by or on behalf of Debtor proves to have been false in any material respect when made or furnished; (d) any levy, seizure, garnishment or attachment is made against any asset of any Debtor, (e) Lender determines, at any time and in Lender's sole discretion, that the prospect of payment of this Note is impaired; (f) whenever, Lender's sole judgment; the collateral for the debt evidenced by this Note becomes unsatisfactory or insufficient either in character or value and, upon request, Debtor fails to provide additional collateral as required by Lender; (g) all or any part of the collateral for the debt evidenced by this Note lost, stolen, substantially damaged or destroyed; (h) death, incompetency, insolvency, dissolution, on, change in ownership or senior management, or termination of existence of any Debtor; or (i) a receiver is appointed over all or part of any Debtor's property, or any Debtor makes an assignment for the benefit of creditors, files For relief under any bankruptcy or insolvency laws, or becomes subject to all involuntary proceeding under such laws.

RIGHT OF OFFSET. Except as otherwise restricted by law, any indebtedness due from Lender to Debtor, including, without limitation, any deposits or credit balances due from Lender, is pledged to secure payment or this Note and any other obligation to Lender of Debtor, and may at any time while the whole or any art of such obligation(s) remain(s) unpaid, either before or after maturity of this Note, be set off, appropriated, held or applied toward the payment of this Note, be set off, appropriated, held or applied toward the payment of this Note or any other obligation to Lender by any Debtor.

ADDITIONAL PROVISIONS. (1) Limitations on Suit – Liability for damages which the Citizen Potawatomi Community Development Corporation may be found responsible must arise solely pursuant to this Agreement and shall be strictly limited to only the principal amount of the loan, the Corporation's equity interest in the Debtor's enterprise, or the Corporation's security interest in Obligor's property (whichever is greater), and such recovery, if any, shall be exclusively limited to only the assets of the Corporation. (2)Debtor a agrees, if requested, to furnish to, Lender copies of income tax returns as well, as balance sheets and income statements for each fiscal year following Date of Note and at more frequent disburse the proceeds of this Note in increments up to the Principal Amount and intervals as Lender may require. (3) No waiver by Lender of any payment or other right under this Note or any related agreement or documentation shall operate as a waiver of any other payment or right. All Debtors waive presentment, notice of acceleration, notice of dishonor and protest and consent to substitutions, releases and failure to perfect as to collateral and to additions or releases of any Debtor. (4) This Note and the obligations evidenced by it are to be construed and governed by the laws of the state indicated in Lender's address shown in this Note. (5) All Debtors, agree to pay costs of collection including, as allowed by law, an attorney's fee equal to a minimum of 15% of all sums due upon default or such other maximum fee as allowed by law. (6) All parties signing below acknowledge receiving a completed copy of this Note and related documents, which contain the complete and entire agreement between Lender and any party liable for payment under this Note. No variation, condition, modification, change, amendment, extension or renewal (collectively referred to as a "Revision") of this Note or related documents shall be binding unless in writing and signed by Lender and Debtor. If there is more than one Debtor, any Debtor may agree to a Revision of this Note and/or related documents, and all Debtors agree to be bound by such Revision. No legal relationship is created by the execution of this Note and related documents except that of debtor and creditor or as stated in writing.

DEBTOR'S SIGNATURE(S)

Ada Outdoors, LLC

Nathan O. Beauchamp, Managing Member

Nathan O. Beauchamp, Individual

EXHIBIT 1

EXHIBIT 2

I hereby certify that I received $ 209.70 and issued receipt No. 1376 in payment of mortgage tax on the within Mortgage. Dated this 25th day of June 2018.
Paula Hall, County Treasurer
Pontotoc County, Oklahoma

## REAL ESTATE MORTGAGE WITH POWER OF SALE

| Ada Outdoors, LLC<br>1030 W 12th<br>Ada, OK 74820 | When Recorded, Return To:<br><br>Citizen Potawatomi Community Development Corporation<br>130 E. MacArthur, Suite 206<br>Shawnee, OK 74804 |
|---|---|

*KNOW ALL PERSONS BY THESE PRESENTS* that: Ada Outdoors, LLC, an Oklahoma Limited Liability Company

(called "Mortgagor," whether one or more) mortgages to: Citizen Potawatomi Community Development Corporation (called "Mortgagee," whether one or more and which term shall be constructed to include Mortgagee's successors and assigns) the following described real estate and premises located in Pontotoc County, State of Oklahoma

A part of the SW/4 of Section 5, Township 3 North, Range 6 East of the Indian Base and Meridian, Pontotoc County, Oklahoma, described as follows: Commencing at the Southeast Corner of the SW/4 of SE/4 of SW/4 of said Section 5; thence S 89°16'21" W along the South line thereof a distance of 376.56 feet to the point of beginning; thence continuing S 89°16'21" W along said South line a distance of 276.06 feet to a point on the East right-of-way line of State Highway 1; thence N 00°22'51" E along and with said East right-of-way line a distance of 239.82 feet; thence continuing along and with said East right-of-way line on a curve to the left, said curve having a radius of 2034.86 feet which a chord bearing N 02°27'47" W and a chord length of 201.97 feet, an arc distance of 202.05 feet; thence N 89°16'54" E a distance of 280.56 feet; thence S 00°20'06" E a distance of 441.62 feet to the point of beginning.

with all the buildings and other improvements located or constructed on the real estate, all fixtures, personal property used on or in, and appurtenances to the real estate, and Mortgagor assigns and pledges all rents, issues, profits and income derived from the above real estate (collectively referred to as the "Mortgaged Property"). This Mortgage and assignment of rents, issues, profits and income derived from the Mortgaged Property creates a security interest in the Mortgaged Property and like kind future property from the time the Mortgage and assignment is granted even though enforcement of the assignment of rents, issues, profits and income may be delayed until default.

Mortgagor warrants the title to the Mortgaged Property.

This Mortgage is given to secure the payment and performance of all of the following (collectively, the "Debt"):

(a) The indebtedness evidenced by the following described promissory Note(s) (the "Note," whether one or more) and any modifications, renewals or substitutions of Note #4351 in the Principal Amount of $209,700.00 in the name of Ada Outdoors, LLC with a maturity date of July 1, 2023

(b) All sums advanced or paid by Mortgagee on account of the failure of the Mortgagor to comply with the terms or covenants of this Mortgage or other documents signed by the Mortgagor;

(c) All future loans and advances and all future renewals of loans which Mortgagee may make to Mortgagor or to the Debtor identified in the Note, if different from Mortgagor (the "Debtor"); and all other debts, obligations and liabilities of every kind and character of Mortgagor or Debtor now existing, whether or not explicitly referred to, or arising in the future in favor of Mortgagee, whether direct or indirect, absolute or contingent, or originally payable to Mortgagee or any other person; and any renewals or extensions; provided, however, if the Mortgaged Property includes Mortgagor's principal dwelling or is otherwise a 1 to 4 family dwelling, the Mortgaged Property will not secure any future loan, advance, debt, obligation or liability taken or incurred principally for a personal, family or household purpose.

Mortgagor further agrees (a) to pay and discharge all taxes and assessments on the Mortgaged Property before they become delinquent; (b) to keep all the Mortgaged Property and improvements insured and under policies which are acceptable to, and for the benefit of, the Mortgagee; (c) to cure all title defects or clouds on or claims against Mortgagor's title which may arise or be discovered; (d) to keep all the Mortgaged Property in good condition and repair, and to repair or replace any damaged or destroyed Mortgaged Property; and (e) to discharge any levies, liens, attachments, or other claims which may be asserted against the Mortgaged Property. Mortgagor also agrees with respect to the Mortgaged Property to comply with all environmental laws and regulations now in force or later promulgated and to disclose to Mortgagee at all times information regarding the environmental status of the Mortgaged Property. Mortgagor grants Mortgagee the right to acquire additional environmental information regarding the Mortgaged Property. Mortgagor also grants Mortgagee or its agents a license to enter onto the Mortgaged Property and inspect it for any reason and further agrees to indemnify Mortgagee for any liability associated with the Mortgaged Property. The discovery of undisclosed environmental hazards on the Mortgaged Property may at option of Mortgagee be considered an Event of Default under this Mortgage. In the Event of the failure of the Mortgagor to fulfill the agreements of this paragraph, the Mortgagee may purchase insurance or pay taxes, assessments or other liens and appropriate sums to protect the Mortgaged Property, and shall have a lien secured by this Mortgage and assignment for the amount of those sums with interest on those amount at the maximum rate of interest on any part of the Debt secured by this Mortgage and assignment.

If the Mortgaged Property is Mortgagor's homestead and one of the Mortgagors is the spouse of another Mortgagor or the Borrower identified in the Note but is not obligated under the Note, and is only signing this Mortgage to satisfy the requirements of Title 16 Okla. Stat. § 4 (which requires a spouse to sign a mortgage on homestead property), then such Mortgagor is not obligated under the provisions of the immediately preceding paragraph and is only signing this Mortgage to convey his or her interest in the Mortgaged Property.

If Mortgagee is required to give Mortgagor notice, notice mailed or delivered at least 5 days before action is taken will be considered reasonable.

Mortgagor confers on Mortgagee or its attorney or agent the power to sell the Mortgaged Property and the interests of all persons in it in the manner provided in the Oklahoma Power of Sale Mortgage Foreclosure Act (Title 46 Okla. Stat. § *40 et seq.*). On the occurrence of an Event of Default (as described in this Mortgage), Mortgagee may, at its option, accelerate payment of the Debt so that all the Debt shall be immediately due and payable and may either exercise the Power of Sale or foreclose this Mortgage in a judicial foreclosure. The following are considered "Events of default": (a) any default in payment of the Debt or performance under the Note; (b) Mortgagor fails to perform any covenant or agreement contained in this Mortgage or in any other indebtedness, obligation or agreement of the Mortgagor to Mortgagee or to another; (c) Mortgagor sells, conveys, transfers, hypothecates, or in any other manner ceases to be the owner or in possession of all or any portion of or interest in the Mortgaged Property, except as agreed to by Mortgagee in writing or as permitted under applicable law; or (d) Mortgagee believes the prospect of payment under the Note is impaired or the Mortgaged Property is in jeopardy.

Subject to the provisions of the Oklahoma Power of Sale Mortgage Foreclosure Act, Mortgagee may accelerate payment of the Debt for the reasons stated in this Mortgage without notice to, or demand on, Mortgagor.

The Mortgagor irrevocably appoints the Mortgagee its lawful attorney in fact, with Power of Attorney in its name and stead to collect any income, rents, issues and profits arising from or accruing at any time that are due under each and all of the leases, contracts and agreements, written or verbal, now existing or existing in the future with reference to the Mortgaged Property, with the same rights and powers and subject to the same immunities, exoneration of liability and rights of recourse and indemnity as the Mortgagor would have. As often as any action may be taken to foreclose this Mortgage or to exercise rights under the Power of Sale Mortgage Foreclosure Act, the Mortgagor agrees to pay an attorney's fee to the Mortgagee equal to the greater of a sum of not less than 15 % of the amount due or the incurred attorney's fee, in addition to other sums due, which shall be secured by this Mortgage.

If there is a foreclosure of this Mortgage other than by Power of Sale, Mortgagor waives appraisement of the Mortgaged Property, unless Mortgagee seeks an appraisal. Appraisal shall be at the sole option of the Mortgagee, to be declared when the petition to foreclose is filed or when judgment is taken.

Mortgagor understands and agrees that on Mortgagor's default, a court may grant specific performance of Mortgagor's agreements in this Mortgage, and Mortgagee will have the right to take possession of the Mortgaged Property by appointing a receiver in accordance with Title 12 Okla. Stat. § 1551.2 (c) which authorizes appointment when a condition of a mortgage has not been performed and the mortgage provides for appointment of a receiver. The court may also appoint a receiver upon other grounds as specified in Title 12 Okla. Stat. § 1551.

"A POWER OF SALE HAS BEEN GRANTED IN THIS MORTGAGE. A POWER OF SALE MAY ALLOW THE MORTGAGEE TO TAKE THE MORTGAGED PROPERTY AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY THE MORTGAGOR UNDER THIS MORTGAGE."

I-2018-003435 Book 3226 Pg: 125
06/25/2018 2:43 pm Pg 0125-0126
Fee: $ 15.00 Doc: $ 0.00
Tammy Brown - Pontotoc County Clerk
State of Oklahoma

EXHIBIT 2

EXHIBIT
2

SIGNATURES

Signed and Delivered on this Date:
Date: 6/21/2018

Nathan O. Beauchamp, Managing Member of Ada Outdoors, LLC

ACKNOWLEDGEMENT FOR INDIVIDUAL ACTING IN HIS/HER OWN RIGHT OR REPRESENTING A CORPORATION/PARTNERSHIP/LLC

STATE OF OKLAHOMA
COUNTY OF Pontotoc } ss.

The foregoing instrument was acknowledged before me on this 21 day of June, 2018 by Nathan O. Beauchamp, Managing Member of Ada Outdoors, LLC

My Commission Expires: ______

NOTARY PUBLIC

© 2005 Citizen Potawatomi Community Development Corporation

Notary Public State of Oklahoma
Danielle E. Pacula
Commission #08003592
Pontotoc Co., Oklahoma
Commission Exp. 03-28-2020

COUNTY CLERK
PONTOTOC COUNTY OKLAHOMA

I-2018-003435 Book 3226 Pg: 126
06/25/2018 2:43 pm Pg 0125-0126
Fee: $ 15.00 Doc: $ 0.00
Tammy Brown - Pontotoc County Clerk
State of Oklahoma

# GUARANTY AGREEMENT

6/21/2018

| DEBTOR'S NAME(S) | LENDER'S NAME AND ADDRESS |
|---|---|
| Ada Outdoors, LLC<br>Nathan O. Beauchamp | Citizen Potawatomi<br>Community Development Corporation<br>130 E. MacArthur, Suite 206<br>Shawnee, Oklahoma 74804 |
| DEBTOR'S ADDRESS | |
| 1030 W 12th<br>Ada, OK 74820 | |

A. [illegible]

B. [illegible]

C. [illegible]

D. [illegible]

E. [illegible]

F. [illegible]

G. [illegible]

H. [illegible]

I. [illegible]

J. [illegible]

K. [illegible]

L. [illegible]

M. [illegible]

N. [illegible]

O. [illegible]

P. [illegible]

Q. [illegible]

R. [illegible]

S. [illegible]

GUARANTOR'S SIGNATURE(S)

Nathan O. Beauchamp

EXHIBIT 3

EXHIBIT 2

# LIMITED LIABILITY COMPANY GUARANTY and PLEDGING RESOLUTION

| DEBTOR'S NAME(S) | LIMITED LIABILITY COMPANY | FINANCIAL INSTITUTION |
|---|---|---|
| Ada Outdoors, LLC<br>Nathan O. Beauchamp | State of Organization: Oklahoma | Citizen Potawatomi Community Development Corporation<br>130 E. MacArthur, Suite 206<br>Shawnee, OK 74804 |

THE UNDERSIGNED CERTIFIES to the above-named Financial Institution as of the date set forth below that: (1) I am a duly appointed and qualified Manager of the above-named limited liability company (the "Company") and the keeper of the Company records; (2) the following is a true and correct copy of Resolutions duly adopted by all of the Members of the Company either at a meeting at which a quorum was present or by unanimous consent of the Members as evidenced by a memorandum of action duly signed by all Members of the Company; (3) there is no provision in the Company's Articles of Organization or Operating Agreement limiting the power of the Members to adopt the following Resolutions which conform with the provisions of the Articles and Operating Agreement; and (4) the Resolutions which are quoted below are now in full force and effect:

"RESOLVED that any One (1) of the Managers of this Company be, and are by these Resolutions authorized, on behalf of this Company:

1. To unconditionally, absolutely and continually guarantee to the following named Financial Institution, hereinafter called Financial Institution: Citizen Potawatomi Community Development Corporation

   that the following named Debtor, hereinafter called Debtor: Ada Outdoors, LLC

   will fully and promptly pay and discharge all indebtedness for which the Debtor now owes or may at any later time become obligated to the Financial Institution, either as principal, guarantor, endorser, or in any other capacity, and whether created by direct dealing with the Financial Institution or otherwise, and regardless of the nature or form of such indebtedness, including without limitation, judgments, promissory notes, open accounts or any other form of indebtedness (collectively, the "Indebtedness").

2. To pledge and grant a security interest in any and all assets of the Company as collateral for the Indebtedness and/or the Company's guaranty of the Indebtedness.

3. To execute and deliver such security agreements, assignments, guarantees, financing statements, lien entry forms and any other documents and agreements, and to do and perform such other acts as may be necessary and required in order to carry into effect the terms, provisions and conditions of, and to consummate the transactions contemplated by, these Resolutions.

4. To provide that any guaranty of the Indebtedness, pledge of and/or security interest in the assets of the Company to the Financial Institution be unlimited, except as follows: n/a

"FURTHER RESOLVED, that the Members of the Company have determined that the actions authorized in these Resolutions are in the best interest of the Company and will be to its benefit, and that the execution of any document, instrument or agreement required in furtherance of these Resolutions is authorized by the Company's Articles of Organization or Operating Agreement."

"FURTHER RESOLVED, that these Resolutions and authorities shall continue in full force and effect until revoked or modified by resolution of the Members and until official notice in writing of such change shall be given to, and received and acknowledged by, the Financial Institution, and that all previous acts of and all documents and papers previously executed and/or delivered by any of the Managers of the Company in exercising any of the powers or matters described in these Resolutions are ratified, adopted, confirmed and approved."

| NAME | TITLE | SIGNATURE |
|---|---|---|
| Nathan O. Beauchamp | Managing Member | |
| | | |
| | | |

**SIGNATURE OF MANAGER**

WITNESS my hand on this 21st day of June, 2018 ______ Manager

**CERTIFIED CONFIRMATION**

Being one of the Managers of the Company (other than the signing Manager), I confirm the above certificate as of the date set forth above. ______ Manager

© 2005 Citizen Potawatomi Community Development Corporation

EXHIBIT 6

EXHIBIT 2

20190610020681520
06/10/2019 12:41:36 PM
Bk Pg 0 Pgs 1 UC1
State of Oklahoma
County of Oklahoma
Oklahoma County Clerk
David B Hooten

20190610020681520
Filing Fee $10.00

06/10/2019 12:41:36 PM
UC1

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Felecia Freeman 405-878-4697

B. E-MAIL CONTACT AT FILER (optional)
ffreeman@cpcdc.org

C. SEND ACKNOWLEDGEMENT TO: (Name and Address)
Citizen Potawatomi Community Development Corp.
1545 Gordon Cooper Drive
Shawnee, Oklahoma 74801

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME: Shawnee Outdoors, LLC | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS: 40960 Hardesty Road | CITY: Shawnee | STATE: OK | POSTAL CODE: 74801 | COUNTRY: USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| OR 2b. INDIVIDUAL'S SURNAME: Beauchamp | FIRST PERSONAL NAME: Nathan | ADDITIONAL NAME(S)/INITIAL(S): O. | | SUFFIX |
| 2c. MAILING ADDRESS: 35766 Braums Rd | CITY: Wanette | STATE: OK | POSTAL CODE: 74820 | COUNTRY: USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME: Citizen Potawatomi Community Development Corporation | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS: 1545 Gordon Cooper Drive | CITY: Shawnee | STATE: Ok | POSTAL CODE: 74804 | COUNTRY |

4. COLLATERAL: This financing statement covers the following collateral:
PURCHASE MONEY INTEREST CLAIMED. Including but not limited to all business assets to include all inventory, furniture, fixtures, equipment of whatever kind or nature, wherever located, now owned or hereafter acquired, and all returns, repossessions, exchanges, substitutions, replacements, attachments, parts, accessories, and accessions thereto and thereof and all proceeds thereof, (whether in the form of cash, instruments, chattel paper, general intangibles, accounts or otherwise) including an assignment of monthly payments from CPN PD.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

EXHIBIT 2

EXHIBIT 5

ENTERED
TDFS DH PF

20231030021O5935
10/30/2023 11:49:06 AM Pgs: 1
Fee: $ 10.00
Maressa Treat, County Clerk
Oklahoma County - State of Oklahoma

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Felecia Freeman/405-878-4697

B. E-MAIL CONTACT AT FILER (optional)
ffreeman@cpcdc.org

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Citizen Potawatomi Community Development Corporation
1545 S. Gordon Cooper Drive
Shawnee, OK 74801

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
20180917020959120

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☑ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:
Check one of these two boxes: This Change affects ☐ Debtor or ☐ Secured Party of record
AND Check one of these three boxes to: ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c ☐ ADD name: Complete item 7a or 7b, and item 7c ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME: Ada Outdoors, LLC

OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME

OR 7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY: USA

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME: Citizen Potawatomi Community Development Corporation

OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA:

EXHIBIT 2

EXHIBIT 6

## Cross-Default; Cross-Collateralization

Pledgor hereby acknowledges and agrees that (a) each other Loan Document and agreement between Pledgor and Secured Party is hereby amended, to the extent necessary, to provide that a Default or an Event of Default under this Agreement is a default or event of default, respectively, under each such Loan Document or agreement, and a default or event of default under any Loan Document or agreement between Pledgor and Secured Party is a Default or an Event of Default, respectively, under this Agreement, and (b) the Pledged Collateral secures the final and indefeasible payment to Secured Party in cash and performance of the Pledgor Obligations in full, whether now or hereafter outstanding under all other Loan Documents and agreements between Pledgor and Secured Party, and (c) that the Collateral and any other Property of any other Person pledged to Secured Party in connection with the transactions contemplated by this Agreement under any other Loan Document or agreement with Secured Party secures the final and indefeasible payment to Secured Party in cash and performance of the Pledgor Obligations in full.

Collateral being pledged hereunder is located in Pontotoc County and is more fully described in "Legal Description," attached hereto and made a part hereof.

Dated this 14th Day of January, 2019

**RETURN TO: CPCDC**
**1545 Gordon Cooper Dr**
**Shawnee, OK 74801**

Pledgor:
Ada Outdoors, LLC
Shawnee Outdoors
Nathan Beauchamp, Individually

By: Nathan Beauchamp, Owner/Manager

ACKNOWLEDGMENT FOR ACKNOWLEDGMENT BY MEMBER OR MANAGER OF LIMITED LIABILITY COMPANY

*STATE OF OKLAHOMA*
COUNTY OF Pottowatomie } ss.

The foregoing instrument was acknowledged before me on this 14th day of January 2019 by Nathan O. Beauchamp, Individually and as Managing Member of Ada Outdoors, LLC and Shawnee Outdoors, LLC

My Commission Expires:

*NOTARY PUBLIC*

D. BOURBONNAIS, NOTARY PUBLIC, STATE OF OKLAHOMA, #03006395, EXP. 03/02/19

VIEW ADDITIONAL LAND RECORDS AT OKCOUNTYRECORDS.COM

I-2019-000269 Book 3274 Pg 62
01/17/2019 12:45 pm Pg 0062-0063
Fee: $ 15.00 Doc: $ 0.00
Tammy Brown - Pontotoc County Clerk
State of Oklahoma

EXHIBIT
7

EXHIBIT 2

**Attachment**

**Legal Description**

A part of the SW/4 of Section 5, Township 3 North, Range 6 East of the Indian Base and Meridian, Pontotoc County, Oklahoma, described as follows: Commencing at the Southeast Corner of the SW/4 of SE/4 of SW/4 of said Section 5; thence S 89°16'21" W along the South line thereof a distance of 376.56 feet to the point of beginning; thence continuing S 89°16'21" W along said South line a distance of 276.06 feet to a point on the East right-of-way line of State Highway 1; thence N 00°22'51" E along and with said East right-of-way line a distance of 239.82 feet; thence continuing along and with said East right-of-way line on a curve to the left, said curve having a radius of 2034.86 feet which a chord bearing N 02°27'47" W and a chord length of 201.97 feet, an arc distance of 202.05 feet; thence N 89°16'54" E a distance of 280.56 feet; thence S 00°20'06" E a distance of 441.62 feet to the point of beginning.

End of Legal Description

Page Blank Below This Point

I-2019-000269 Book 3274 Pg: 63
01/17/2019 12:45 pm Pg 0062-0063
Fee: $ 15.00 Doc: $ 0.00
Tammy Brown - Pontotoc County Clerk
State of Oklahoma

VIEW ADDITIONAL LAND RECORDS AT
OKCOUNTYRECORDS.COM

EXHIBIT 2

# PROMISSORY NOTE – Fixed ( ) Variable Rate – Commercial

DATE OF NOTE: 5/28/2019

| DEBTOR'S NAME(S) | LENDER'S NAME AND ADDRESS |
|---|---|
| Shawnee Outdoors, LLC<br>Nathan O. Beauchamp | Citizen Potawatomi<br>Community Development Corporation<br>1545 Gordon Cooper Drive<br>Shawnee, OK 74801 |
| DEBTOR'S ADDRESS<br>40960 Hardesty Road<br>Shawnee, OK 74801 | |

| NOTE NUMBER | FIXED INTEREST RATE PER ANNUM | MATURITY DATE | PRINCIPAL AMOUNT | SOCIAL SECURITY/ TIN NUMBER: | |
|---|---|---|---|---|---|
| 8366 | 7.75% | 6/1/2022 | $102,020.00 | [redacted] | ☐ 360 DAY<br>☒ 365 DAY |

☒ NEW LOAN
☐ RENEWAL OF LOAN NUMBER(S)
☒ FULLY ADVANCED ☐ MULTIPLE ADVANCES ☐ REVOLVING CREDIT

PURPOSE OF LOAN: repair of equipment in the gun range

COLLATERAL DESCRIPTION: All business assets to include all inventory, furniture, fixtures, equipment; now owned or to be acquired by the business and assignment of CPN PD monthly payments.

PAYMENT TERMS: Principal and interest are due and payable in 35 equal installment payments consisting of principal and interest, in the amount of $3,185.18 each, commencing on July 1,2019 and continuing monthly thereafter, and one (1) final payment all remaining principal and interest due and payable on June 1, 2022.

Notwithstanding any provision to the contrary, the law of Citizen Potawatomi Nation will govern the construction and enforcement of this agreement. All parties understand and agree that Citizen Potawatomi Nation Tribal Court has jurisdiction to resolve any dispute under this agreement and the parties do hereby submit to the personal jurisdiction of, and waive any objection to venue in, the Citizen Potawatomi Nation Tribal Court for the resolution of any dispute arising out of this agreement.

PROMISE TO PAY. For value received, the undersigned Debtor, whether one or more, and jointly and severally if more than one, agrees to the terms of this Note and promises to pay to the order of the Lender named above at its place of business as indicated in this Note or at such other places as may be designated in writing by Lender, the Principal Amount of this Note together with interest on the unpaid Principal Amount until maturity at the per annum interest rate or rates stated above and according to the Payment Terms stated in this Note. Interest on this Note is calculated on the actual number of days elapsed on a basis of a 360 or 365 day year, as indicated above. For purposes of computing interest and determining the date principal and interest payments are received, all payments will be deemed made only when received in collected funds. Payments are applied first to accrued and unpaid interest and other charges, and then to unpaid Principal Amount. In this Note, "Debtor" includes any party liable under this Note, including endorsers, co-makers, guarantors and otherwise, and "Lender" includes all subsequent holders.

VARIABLE RATE. If this is a Variable Rate transaction as indicated above, the interest rate shall vary from time to time with changes (whether increases or decreases) in the Rate shown above. The interest rate on this Note will be the Index Rate plus a Margin, if any, as indicated above. Each change will become effective on the same date the Index Rate changes unless a different effective date is indicated above. If the Index Rate is Lender's base or prime rate, it is determined by Lender in its sole discretion, primarily on a basis of its cost of funds, is not necessarily the lowest rate Lender is charging its customers, and is not necessarily a published rate.

LATE PAYMENTS. When permitted by law, any principal and/or interest amount not paid within 5 calendar days after will be assessed 5.000% of the amount past due, as a late charge fee. In addition, any principal and/or interest not paid by the maturity date of this Note shall thereafter bear interest at the applicable rate stated in this Note. In no event shall the interest rate and related charges either before or after maturity be greater than permitted by law.

ALL PARTIES PRINCIPAL. All Debtors shall each be regarded as a principal and each Debtor agrees that any Debtor, with Lender's approval and without notice to any other Debtor, may from time to time renew this Note or consent to one or more extensions or deferrals of the Maturity Date for any term(s) or to any other modification(s), and all Debtors shall be liable in same manner as on the original Note.

ADVANCES AND PAYMENTS. If the Fully Advanced box is checked, then the Debtor acknowledges that the entire Principal Amount has been advanced to the Debtor or for Debtor's account or benefit. If the Multiple Advances box is checked, then the Debtor understands that the Lender will disburse the proceeds of this Note in increments, up to the Principal Amount, but that even if the Debtor prepays, the Debtor has no right to reborrow any amounts disbursed. The balance that the Debtor owes under this Note is the aggregate of all such disbursements, less any payments of principal made on this Note. Interest will accrue only on the actual amount of principal disbursed and outstanding from time to time. If the Revolving Credit box is checked, then the Debtor understands that the Lender will disburse the proceeds of this Note in increments up to the Principal Amount and that the remaining terms of this paragraph shall apply to this Note. The balance that the Debtor owes under this Note is the aggregate of all such disbursements, less any payments of principal made on this Note. Interest will accrue only on the actual amount of principal disbursed and outstanding from time to time. If the Revolving Credit box is checked, then the Debtor understands that the Lender will disburse the proceeds of this Note in increments up to the Principal Amount and that the remaining terms of this paragraph shall apply to this Note. The balance that the Debtor owes under this Note is the aggregate of all such disbursements, less any payments of principal made on this Note. The Debtor understands that the maximum amount of all such advances outstanding at any one time cannot exceed the Principal Amount, but that the Debtor may repay and reborrow up to the Principal Amount during the term of this Note. If the aggregate outstanding amount advanced under this Note ever exceeds the Principal Amount, then the Debtor will repay the excess upon demand, plus interest on the excess. There may be times when no principal is outstanding on this Note, but this Note and any collateral securing this Note remain valid and effective as to future advances under this Note. Any loans or advances the Lender makes to the Debtor or for the Debtor's account or benefit are presumed to be made under the terms of this Note. The Lender may make advances under this Note at the oral or written request of any person designated or authorized by the Debtor until the Debtor revokes such designation or authorization in writing received by the Lender, provided that the Lender has the right, but is not obligated, to require written authorization from the Debtor prior to honoring any oral request. Interest will accrue only on the actual amount of principal disbursed and outstanding from time to time.

PREPAYMENT. Debtor shall have the right to prepay all or any part of the principal due under this Note at any time, subject to the following conditions: (a) all interest must be paid through the date or any prepayment; (b) if this Note provides for monthly or other periodic payments, there will be no changes in the due dates or amounts following any partial prepayments unless Lender agrees to such changes in writing; (c) upon prepayment, in whole or in part, Lender may charge and Debtor agrees to pay a fee or premium calculated as follows (this fee/premium provision will not apply if prohibited by applicable law):

COLLATERAL. This Note and all other obligations of Debtor to Lender, including renewals and extensions, are secured by all collateral securing this Note and by all other security interests and mortgages previously or later granted to Lender and by all money, deposits and other property owned by any Debtor and in Lender's possession or control.

ACCELERATION. At option of Lender, the unpaid balance of this Note and all other obligations of Debtor to Lender, whether direct or indirect, absolute or contingent, now existing or later arising, shall become immediately due and payable without notice or demand, upon or after the occurrence or existence of any of the following events or conditions: (a) Any payment required by this Note or by any other note or obligation of Debtor to Lender or to others is not made when due, or any event or condition occurs or exists which results in acceleration of the maturity of any Debtor's obligation to Lender or to others under any promissory note, agreement or undertaking; (b) Debtor defaults in performing any covenant, obligation, warranty or provision contained in any loan agreement or in any instrument or document securing or relating to this Note or any other note or obligation of Debtor to Lender or to others; (c) any warranty, representation, financial information or statement made or furnished to Lender by or on behalf of Debtor proves to have been false in any material respect when made or furnished; (d) any levy, seizure, garnishment or attachment is made against any asset of any Debtor, (e) Lender determines, at any time and in Lender's sole discretion, that the prospect of payment of this Note is impaired; (f) whenever, Lender's sole judgment, the collateral for the debt evidenced by this Note becomes unsatisfactory or insufficient either in character or value and, upon request, Debtor fails to provide additional collateral as required by Lender; (g) all or any part of the collateral for the debt evidenced by this Note lost, stolen, substantially damaged or destroyed; (h) death, incompetency, insolvency, dissolution, on, change in ownership or senior management, or termination of existence of any Debtor; or (i) a receiver is appointed over all or part of any Debtor's property, or any Debtor makes an assignment for the benefit of creditors, files For relief under any bankruptcy or insolvency laws, or becomes subject to all involuntary proceeding under such laws.

RIGHT OF OFFSET. Except as otherwise restricted by law, any indebtedness due from Lender to Debtor, including, without limitation, any deposits or credit balances due from Lender, is pledged to secure payment or this Note and any other obligation to Lender of Debtor, and may at any time while the whole or any art of such obligation(s) remain(s) unpaid, either before or after maturity of this Note, be set off, appropriated, held or applied toward the payment of this Note, be set off, appropriated, held or applied toward the payment of this Note or any other obligation to Lender by any Debtor.

ADDITIONAL PROVISIONS. (1) Limitations on Suit – Liability for damages which the Citizen Potawatomi Community Development Corporation may be found responsible must arise solely pursuant to this Agreement and shall be strictly limited to only the principal amount of the loan, the Corporation's equity interest in the Debtor's enterprise, or the Corporation's security interest in Obligor's property (whichever is greater), and such recovery, if any, shall be exclusively limited to only the assets of the Corporation. (2)Debtor a agrees, if requested, to furnish to, Lender copies of income tax returns as well, as balance sheets and income statements for each fiscal year following Date of Note and at more frequent disburse the proceeds of this Note in increments up to the Principal Amount and intervals as Lender may require. (3) No waiver by Lender of any payment or other right under this Note or any related agreement or documentation shall operate as a waiver of any other payment or right. All Debtors waive presentment, notice of acceleration, notice of dishonor and protest and consent to substitutions, releases and failure to perfect as to collateral and to additions or releases of any Debtor. (4) This Note and the obligations evidenced by it are to be construed and governed by the laws of the state indicated in Lender's address shown in this Note. (5) All Debtors, agree to pay costs of collection including, as allowed by law, an attorney's fee equal to a minimum of 15% of all sums due upon default or such other maximum fee as allowed by law. (6) All parties signing below acknowledge receiving a completed copy of this Note and related documents, which contain the complete and entire agreement between Lender and any party liable for payment under this Note. No variation, condition, modification, change, amendment, extension or renewal (collectively referred to as a "Revision") of this Note or related documents shall be binding unless in writing and signed by Lender and Debtor. If there is more than one Debtor, any Debtor may agree to a Revision of this Note and/or related documents, and all Debtors agree to be bound by such Revision. No legal relationship is created by the execution of this Note and related documents except that of debtor and creditor or as stated in writing.

DEBTOR'S SIGNATURE(S)

| | Shawnee Outdoors, LLC |
|---|---|
| Nathan O. Beauchamp, Individual | Nathan O. Beauchamp/ Member of Shawnee Outdoors, LLC |

EXHIBIT 2

# GUARANTY AGREEMENT

DATE OF AGREEMENT
05/28/2019

| DEBTOR'S NAME(S) | LENDER'S NAME AND ADDRESS |
|---|---|
| Shawnee Outdoors, LLC<br>Nathan O. Beauchamp | Citizen Potawatomi<br>Community Development Corporation |
| **DEBTOR'S ADDRESS** | |
| 40960 Hardesty Road<br>Shawnee, OK 74801 | |

A. To induce the Lender to extend credit to the Debtor and for other good and valuable consideration, the receipt of which is acknowledged, and for the purpose of enabling the Debtor to obtain or renew loans, credit or other financial accommodation from the Lender named above, each of the undersigned as a primary obligor, jointly and severally and unconditionally: (1) guarantees to the Lender that Debtor will fully and promptly pay or otherwise discharge all indebtedness and other obligations ("Indebtedness") upon which Debtor now is or may later, from time to time, become obligated to Lender as principal, guarantor, endorser, or in any other capacity, and whether joint or several liability or liability created by direct dealing with Lender or through transfer from others, and regardless of the nature and form of indebtedness and whether due or not due; (2) agrees, without the Lender first having to proceed against Debtor or ally other party liable or to liquidate any security, to pay on demand all sums due and to become due to Lender from Debtors and all losses, costs, attorney fees or expenses which may be suffered or incurred by Lender by reason of Debtor's default or the default of the undersigned; (3) except as setoff is waived, agrees to be bound by and on demand to pay any deficiency or difference between all indebtedness of the Debtor and the proceeds of any private or public sale (including a sheriff's sale) of the security held by Lender, with or without notice to the undersigned; (4) agrees that liability under this Agreement will not be affected or impaired by any failure, neglect or omission, including a failure or delay to perfect or maintain perfection of a security interest, either in relation to the collection of the indebtedness or the protection of the security given, and regardless of whether the Lender fails or omits to seek or is precluded from seeking a judgment against Debtor; and (5) further agrees that the liability of the undersigned shall not be affected by any lack of validity or enforceability due to defense, claim, discharge or otherwise of any indebtedness guaranteed by this Agreement or of the security of the indebtedness.

B. Lender may at any time and from time to time without the further consent of or notice to the undersigned, without incurring responsibility to the undersigned and without impairing or releasing the obligations of the undersigned, and upon any terms and conditions the Lender may elect: (1) change the manner, place or terms of payment or extend the time of payment of any indebtedness of Debtor to Lender; (2) renew, increase or alter any indebtedness of Debtor to Lender; (3) raise or lower the interest rate or rates charged Debtor; (4) sell, exchange, release, surrender, realize upon or otherwise deal or not deal with in any manner and in any order any property at any time pledged to secure or securing the indebtedness of Debtor to Lender or any liabilities incurred directly or indirectly under this Agreement, or any offsets against any such indebtedness or liabilities; (5) exercise or refrain from exercising any rights against Debtor or others, or otherwise act or refrain from acting (6) settle or compromise any indebtedness guaranteed or incurred; (7) subordinate the payment of all or part of any indebtedness of Debtor to Lender to the payment of any liabilities which may be due Lender or others; (8) apply any sums paid by or for account of Debtor to any indebtedness of Debtor to Lender regardless of what indebtedness or liability of Debtor to Lender remains unpaid and regardless of to which indebtedness such sums were intended to be applied; (9) release any one or more of the undersigned, any other guarantor or any other party liable upon or for any indebtedness or other obligation guaranteed, and such release will not affect the liability under this Agreement of any of the undersigned or any other party not so released; (10) add or release the primary or secondary liability of principals, guarantors or other parties; and/or (11) obtain additional collateral security.

C. The undersigned waives: (1) any and all acceptance of this Guaranty Agreement; (2) notice of the creation of any indebtedness; (3) any presentment, demand for payment, notice of default or non-payment, notice of acceleration, notice of disposition of security, notice of dishonor or protest to or upon any party and all other notices whatsoever whether required or permitted by this Guaranty Agreement, any other agreement, course of dealing, usage of trade, course of performance and, to the extent allowed, the law; (4) any exercise of any remedy which the Lender now has or later acquires against the Debtor or any other party; (5) any impairment of collateral, including, but not limited to, the failure to perfect, or maintain perfection of, a security interest in collateral; and (6) any event, or any act or omission of the Lender (except act or omissions in bad faith) which materially increases the scope of the undersigned's risk as guarantor, including the manner of administration of the loan and changes in the form or manner in which any party does business or in their financial condition and any notice of any such change.

D. This Guaranty Agreement shall be absolute, unconditional and continuing guaranty of payment and not of collection and shall be binding upon the undersigned, heirs or successors of the undersigned, and the estate or estates of the undersigned: (1) regardless of the death or cessation of existence of any of the undersigned or of any guarantor or any other party liable upon any indebtedness or other obligation hereby guaranteed; (2) irrespective of any defenses, claim or discharge available to the Debtor under law or under any agreement with the Lender; and (3) irrespective of any failure or delay by the Lender to perfect or keep perfected any lien or security interest in any collateral. This Guaranty Agreement is an independent obligation which is separately enforceable from the obligation of the Debtor.

E. All rights of the Lender are cumulative and not alternative to other rights. Suit may be brought against the undersigned or other parties liable, jointly and severally, and against any one or more of them, and against all or less than all, without impairing the rights of the Lender, its successors or assigns, against others of the undersigned. The Lender may settle with any one of the undersigned or any other party for such sum or sums as it may see fit and release such of the undersigned or other parties from all further liability to the Lender for such indebtedness without impairing the right of the Lender to demand and collect the balance of such indebtedness from others of the undersigned not so released.

F. The Lender may assign this Agreement or any of its rights and powers under it, with all or any part of the indebtedness guaranteed, and may assign to any such assignee any of the security for the indebtedness. In the event of such assignment, the assignee shall have the same rights and remedies as if originally named in this Agreement in place of Lender, and the Lender shall thereafter be fully discharged from all responsibility with respect to any such indebtedness so assigned.

G. Unless expressly limited by specific writing as set forth in this Guaranty Agreement, it is understood to be unlimited in amount. If limited, it is understood the limit means a fixed amount or percentage of any indebtedness remaining after application of the actual proceeds of the disposition of any security to any unguaranteed portion of the indebtedness.

H. Until the indebtedness of the Debtor have been paid in full, the undersigned agrees to provide to the Lender from time to time upon demand such financial statements, copies of tax returns, and other information as to the undersigned as the Lender may reasonably require.

I. Any deposits or other sums credited by or due from the Lender to the undersigned may be set off against any and all liabilities of the undersigned to the Lender arising under the terms of this Guaranty Agreement. The rights granted by this paragraph shall be in addition to the rights of the Lender under any statutory banker's lien or common law right of offset.

J. Until the obligations of the Debtor have been paid in full the undersigned specifically waives all rights of subrogation to the rights of the Lender, any claim to any security or its value to which the Lender has recourse, and all rights of reimbursement or contribution from other parties, whether principals or sureties, accommodation parties or guarantors.

K. The undersigned may, only by written notice given to and received by Lender, withdraw only from liability for additional indebtedness of Debtor accepted by or incurred to Lender after the time of receipt of such notice by Lender. The liability and other agreements of the undersigned shall not be otherwise affected but shall continue until all indebtedness, including loan commitments, existing at the time of the receipt of such notice, and renewals or extensions of indebtedness to which the undersigned consents, is fully paid. After any such revocation, Lender may exercise any rights granted in this Agreement without releasing the undersigned from liability.

L. Notwithstanding the provisions of any note or obligation to which this Guaranty Agreement applies, it is the intention of the parties, and it is here provided, that a Guarantor shall not be liable for interest charges in excess of the maximum amount permitted under the law applicable to this Guaranty Agreement.

M. The undersigned specifically waives any right to setoff under 12 O.S. sec. 616, 15 O.S. sec. 341, or any like statutes, and agree that the Lender may apply the actual proceeds from the disposition of any security first to any unguaranteed portion of the indebtedness. Any party to this Guaranty Agreement has right to waive trial by jury and waives all objections to venue in any action instituted by the Lender arising out of this Guaranty Agreement.

N. The undersigned waive, as of the date of this Guaranty Agreement, any claim, as that term is defined in the Federal Bankruptcy Code, which the undersigned might have or acquire against the Debtor arising from the existence or performance of the undersigned's obligations under this Guaranty Agreement, and to that extent that the undersigned is not a creditor of the Debtor. In addition to the waiver of the status of creditor, it is agreed that the indebtedness guaranteed under this Guaranty Agreement excludes all portions of the indebtedness paid by the Debtor during the period of time within one year prior to the filing of any bankruptcy, reorganization or insolvency proceedings by or against the Debtor. If any payment made by the Debtor to the Lender is determined to be avoidable under applicable state law or the Federal Bankruptcy Code, to that extent, if demanded by the Lender, this Guaranty Agreement is deemed to be reinstated to include the amount within the indebtedness under this Guaranty Agreement.

O. The undersigned, by signing below, acknowledge having read this Guaranty Agreement, having reviewed it to the extent desired with their legal counsel, and receiving a copy of it and also receiving an explanation of any questions. The undersigned also have read any cosigner notice provided by Lender. The undersigned understand that the undersigned may have to pay any indebtedness or obligation covered by this Guaranty Agreement in the event the Debtor fails or refuses to do so. The undersigned also represent that they are aware of the financial condition of Debtor and acknowledge a responsibility to maintain a close watch on that financial condition as long as this Guaranty Agreement is outstanding and that they are not relying on the Lender to provide information on the Debtor's financial condition, now or in the future.

P. This Guaranty and the obligations evidenced in it are to be construed and governed by the laws of the state indicated in the address of Lender shown above.

Q. This Guaranty Agreement constitutes the entire agreement between the parties with respect to the obligations of the undersigned and the rights of the Lender under this Guaranty Agreement. This Guaranty Agreement cannot be amended except by an agreement in writing signed by both the undersigned and the Lender. No condition as to the effectiveness or enforcement of this Guaranty Agreement exists except as stated in this Guaranty Agreement. Regardless of any other provision of this Guaranty Agreement to the contrary, and unless otherwise specifically released or modified by this Guaranty Agreement, all other obligations of the undersigned to Lender evidenced by a note, loan agreement, guaranty or any other written agreement remain in force and effect.

R. Limitations on Suit—Liability for damages which the Citizen Potawatomi Community Development Corporation may be found responsible must arise solely pursuant to this Agreement and shall be strictly limited to only the principal amount of the loan, the Corporation's equity interest in the Debtor's enterprise, or the Corporation's security interest in Obligor's property (whichever is greater), and such recovery, if any, shall be exclusively limited to only the assets of the Corporation.

S. Notwithstanding any provision to the contrary, the law of Citizen Potawatomi Nation will govern the construction and enforcement of this agreement. All parties understand and agree that Citizen Potawatomi Nation Tribal Court has jurisdiction to resolve any dispute under this agreement and the parties do hereby submit to the personal jurisdiction of, and waive any objection to venue in, the Citizen Potawatomi Nation Tribal Court for the resolution of any dispute arising out of this agreement.

**GUARANTOR'S SIGNATURE(S)**

Nathan O. Beauchamp

Nathan O. Beauchamp, Member

Nathan O. Beauchamp, Individual

Robert L. Crothers, Commercial Loan Officer

© 2005 Citizen Potawatomi Community Development Corporation

EXHIBIT 2

# SECURITY AGREEMENT

| DEBTOR'S NAME(S) | SECURED PARTY'S NAME AND ADDRESS |
|---|---|
| Shawnee Outdoors, LLC<br>Nathan O. Beauchamp | Citizen Potawatomi<br>Community Development Corporation |
| **DEBTOR'S ADDRESS**<br>40960 Hardesty Road<br>Shawnee, OK 74801 | |

DATE OF NOTE: May 28, 2019

I. GRANT OF SECURITY INTEREST. For value received, the undersigned (referred to as "Debtor" whether one or more) grants to Secured Party named above a security interest in the Collateral described below to secure the payment of the "Indebtedness" (as defined below) and performance of all Debtor's obligations and agreements in this Agreement or other documents evidencing the Indebtedness. For purposes of this Agreement, any term used in the Uniform Commercial Code, as adopted and revised from time to time in the State of Oklahoma and/or Citizen Potawatomi Nation ("UCC"), and not defined in this Agreement has the meaning given to the term in the UCC. Debtor's location (if other than the address reflected above) is in the state of OK.

II. DESCRIPTION OF COLLATERAL. The "Collateral" shall include:
PURCHASE MONEY INTEREST CLAIMED. Including but not limited to all business assets to include all inventory, furniture, fixtures, equipment of whatever kind or nature, wherever located, now owned or hereafter acquired, and all returns, repossessions, exchanges, substitutions, replacements, attachments, parts, accessories, and accessions thereto and thereof and all proceeds thereof, (whether in the form of cash, instruments, chattel paper, general intangibles, accounts or otherwise) including an assignment of monthly payments from CPN PD.

The term 'Collateral" also includes to the extent not listed above as original collateral:

(1) After-Acquired Property. After-acquired property; provided, however, the security interest will not attach to (a) consumer goods, other than an accession when given as additional security, unless the Debtor acquires rights in them within 10 days after the Secured Party gives value; or (b) a commercial tort claim.

(2) Proceeds. Proceeds, products, additions, substitutions and accessions of the Collateral.

(3) Deposits. Unless prohibited by law, any property (excluding Individual Retirement Accounts and other qualified retirement accounts), tangible or intangible, in possession of Secured Party at any time during the term of this Agreement, or any indebtedness due from Secured Party to Debtor and any deposit or credit balances due front Secured Party to Debtor, and Secured Party may at any nine while the whole or any part of die Indebtedness remains unpaid, whether before or after maturity thereof, be appropriated, held or applied toward payment of die Indebtedness or any obligation of Debtor to Secured Party

III. SECURED INDEBTEDNESS. The security interest granted under this Agreement secures the following (referred to as the "Indebtedness"): (1) the performance of all of the agreements, obligations, covenants and warranties of Debtor as set forth in this Agreement or any other agreement between Debtor and Secured Party; (2) all liabilities of Debtor to Secured Party of every kind and description, including (a) all promissory notes given front Debtor to Secured Party, (b) all future advances front Secured Party to Debtor, whether in the form of a loan for a similar or different purpose than any other loan to Debtor, (c) Debtor's overdrafts, whether business or personal, (d) direct or indirect liabilities, (e) liabilities due or to become due and whether absolute or contingent, and (f) liabilities now existing or hereafter arising and however evidenced; (3) all extensions, renewals and deferrals of liabilities of Debtor to Secured Party for any term or terms, to which the undersigned hereby consents; (4) all interest and other finance charges due or to become due on the liabilities of Debtor to Secured Party; (5) All expenditures by Secured Party involving the performance or enforcement of Debtor's obligations, agreements, covenants and warranties under this Agreement or any other agreement between Debtor and Secured Party; and (6) All costs, attorneys' fees and other expenditures of Secured Party in the collection slid enforcement of any obligation or liability of Debtor to Secured Party and in the collection and enforcement, sale or other liquidation of any of the Collateral.

IV. GENERAL PROVISIONS.
1. GOVERNING LAW. Notwithstanding any provision to the contrary, the law of Citizen Potawatomi Nation will govern the construction and enforcement of this agreement. All parties understand and agree that Citizen Potawatomi Nation Tribal Court has jurisdiction to resolve any dispute under this agreement and the parties do hereby submit to the personal jurisdiction of, and waive any objection to venue in, the Citizen Potawatomi Nation Tribal Court for the resolution of any dispute arising out of this agreement.
2. WAIVERS. No act, delay or omission, including Secured Party's written express waiver of a remedy after any default under this Agreement, shall constitute a waiver of any of Secured Party's rights and remedies not expressly waived in writing under this Agreement or any other agreement between the parties. All of Secured Party's rights and remedies are cumulative and may be exercised singly or concurrently. The waiver or exercise of any one or more rights or remedies will not be a waiver or a bar to the exercise of any other rights or remedies upon ally subsequent default. No waiver, change, modification or discharge of any of Secured Party's rights or remedies or Debtor's duties as specified or allowed by this Agreement will be effective unless in writing and signed by a duly authorized officer of Secured Party. Acceptance of any partial or late payment shall not constitute a waiver of any requirement of this Agreement or impose any additional notification duties upon Secured Party. Debtor and all other signers, including guarantors, waive presentment, notice of dishonor and protest, notice of default, notice of intention to accelerate and notice of acceleration and consent to any and all extensions of time for any term or terms regarding payment due, partial payments, or renewals before or after maturity. Debtor and all other signers, including guarantors, further consent to substitution, impairment, release or nonperfection with regard to the Collateral, and the addition or release of or agreement not to sue any party or guarantor.
3. AGREEMENT BINDING ON ASSIGNS. This Agreement inures to the benefit of Secured Party's successors and assigns, and is binding upon Debtor's heirs, executors, administrators, representatives, successors and permitted assigns (and all persons who become bound as a debtor to this Security Agreement), but no person taking front or representing Debtor has any right to advances under any instrument or document secured by this Agreement.
4. CHANGES IN TERMS. Secured Party reserves the right to change ally of the terms of this Agreement in accordance with applicable law and the provisions of this Agreement.
5. TERM OF AGREEMENT. This Agreement, and the security interest created by this Agreement, will remain in force until all of the Indebtedness is paid in full, unless the security interest created by this Agreement is earlier released by Secured Party in writing.
6. RIGHTS OF SECURED PARTY ASSIGNABLE. Secured Party, at any time and at its option, may pledge, transfer or assign its rights under this Agreement in whole or in part, and any transferee or assignee shall have all Secured Party's rights or the parts of them so pledged, transferred or assigned. Debtor's rights under this Agreement or in the Collateral may not be assigned without Secured Party's prior written consent.
7. JOINT AND SEVERAL RESPONSIBILITY OF DEBTOR AND SURETIES. The responsibilities of Debtor and any co-debtor, guarantor, surety or accommodation party under this Agreement are joint and several, and the references to Debtor in this Agreement shall be deemed to refer to each such person, including any person who pledges Collateral even if such pledgor is not otherwise liable under any promissory note, guaranty or other instrument secured by this Agreement.
8. SEPARABILITY OF PROVISIONS. If any provision of this Agreement shall for any reason be held invalid or unenforceable such invalidity or unenforceability shall not affect any other provision of this Agreement, and this Agreement shall be construed as if such invalid or unenforceable provision had never existed.
9. ENTIRE AGREEMENT. This Agreement, together with any mortgage of real estate which may be Collateral, constitutes the entire agreement between the parties with respect to the subjects addressed herein. This Agreement may be amended or modified only by a writing signed by Secured Party specifying that it is a modification, amendment or addition to this Agreement.

V. EVENTS OF DEFAULT. Debtor shall be in default under this Agreement upon the happening of any one or more of the following events or conditions, called "Events of Default" in this Agreement:
1. If any warranty, covenant, agreement, representation, financial information or statement made or furnished to Secured Party by Debtor, any guarantor or surety, or otherwise on Debtor's behalf to induce Secured Party to enter into this Agreement, or in conjunction with it, is violated or proves to have been false in any material respect when made or furnished.
2. If any payment required in this Agreement or under any other agreement or obligation of Debtor to Secured Party or to others is not made when due or in accordance with the terms of the applicable contract.
3. If Debtor defaults in the performance of any covenant, obligation, warranty, or provision contained in this Agreement or any other agreement, mortgage or obligation of Debtor to Secured Party or to others, including without limitation Debtor's failure to insure the Collateral or unlawful use of tile Collateral.
4. If any event or condition exists or occurs which results in acceleration of the maturity of ally obligation of Debtor to Secured Party or to others under any note, mortgage, indenture, agreement, or undertaking.
5. If anyone makes any levy against or seizes, garnishes or attaches any of the Collateral; if Debtor consensually encumbers any of the Collateral; or if Debtor sells, leases, or otherwise disposes of any of the Collateral without Secured Party's prior written consent as required by this Agreement or ally mortgage executed in connection with this Agreement.
6. If the Collateral is lost, stolen, substantially damaged or destroyed.
7. If, in Secured Party's judgment, the Collateral becomes unsatisfactory or insufficient in character or value, and upon request Debtor fails to provide additional Collateral as required by Secured Party.
8. If at any time Secured Party, in its sole discretion, believes the prospect of payment or performance of any duty, covenant, warranty or obligation secured by this Agreement is impaired.
9. If Debtor or any guarantor or surety dies, dissolves, terminates existence, or becomes insolvent; if a receiver is appointed over any part of Debtor's property or any part of the Collateral; if Debtor makes an assignment for the benefit of creditors; or if any proceeding is commenced under ally bankruptcy or insolvency law by or against Debtor or any guarantor or surety for Debtor.
10. If the Collateral is removed from the location specified in this Agreement or in a separate notice to Secured Party without Secured Party's prior written consent. except for temporary periods in the normal and customary use of the Collateral
11. Secured Party shall receive at any time following the Closing a filing office report indicating that Secured Party's security interest is not prior to all other security interests or other interests reflected in the report.

VI. ADDITIONAL PROVISIONS. The undersigned specifically agree to all of the "Additional Provisions" on the reverse side of this Agreement.

| SECURED PARTY'S SIGNATURE | DEBTOR'S SIGNATURE(S) | |
|---|---|---|
| Citizen Potawatomi Community Development Corporation | Nathan O. Beauchamp, Individual | Nathan O. Beauchamp, Member of Shawnee Outdoors, LLC |
| Robert L. Crothers-Commercial Loan Officer | | |

EXHIBIT 1-D

EXHIBIT 2

WH[illegible] RECORDED, RETURN TO:
Citizen Potawatomi Community Development Corporation
1545 S. Gordon Cooper Drive
Shawnee, Oklahoma 74801

# ASSIGNMENT OF LEASES, RENTS, PROFITS
*(INDIVIDUAL – CORPORATION – PARTNERSHIP)*

| ASSIGNOR NAME AND ADDRESS | ASSIGNEE NAME AND ADDRESS |
|---|---|
| Shawnee Outdoors, LLC<br>Nathan O. Beauchamp<br>40960 Hardesty Road<br>Shawnee, OK 74801 | Citizen Potawatomi Community Development Corporation<br>1545 S. Gordon Cooper Drive<br>Shawnee, Oklahoma 74801 |

FOR VALUE RECEIVED, the Undersigned (called "Assignor") sells, assigns and transfers to above named Assignee, (called "Assignee" which term shall be construed to include Assignee's successors and assigns), all right, title and interest in the rents and profits (known as the "Assignment") now due and which may later become due under, or by virtue of, any lease, whether written or verbal, or any letting of, or of any agreement for the use or occupancy of the following described Property:

40960 Hardesty Road, Shawnee, OK 74801

Said payments/rents being assigned hereunder are more specifically described as "those certain monthly stipend/rental payments of $3,000 paid to Assignor by the Citizen Potawatomi Nation, as rental for the unlimited use of the CPN Tribal Police Department."

This Assignment is conditioned on Assignor's default under a certain Promissory Note dated 5/28/2019 (the "Note"), and becomes effective after default (whether or not proceedings have been instituted to foreclose the Note by judicial foreclosure or Power of Sale) on the earlier of: (1) Assignee taking possession of the Property, (2) the appointment of a receiver for the Property, or (3) Assignee giving Assignor and any lessee of the Property written notice to pay Assignee any rents or profits due after a specified date. Assignor agrees Assignee or its agents may, on Assignor's default under the Note, take possession of the Property and collect the rents and profits to apply to any amount Assignor owes Assignee. Assignor further agrees that on Assignor's default under the Note, Assignee may seek to have a receiver appointed for the Property as allowed by 12 O.S. 1551, including appointment of a receiver simply when a condition of the Note has not been performed and the Note provides for appointment of a receiver. Assignor recognizes when Assignee receives the rents and profits after written notice, but does not enter into physical possession of the Property and exercise exclusive operating control, Assignee will not be considered a "Notee in possession." Assignor further recognizes Assignee may, as part of this Assignment, extend, renew or enter into new leases under terms customary for leases of the Property. If Assignee sends written notice to a lessee obligated to pay under any lease on the Property requesting lessee to direct all rents and profits under the lease to Assignee, this Assignment, when effective, shall transfer the lessee's obligation to pay rents and profits to Assignee.

Assignor agrees that no modification, termination, or renewal of a lease prior or subsequent to the effective date of this Assignment, or advance payment and collection of rents and profits, will be effective against Assignee unless Assignee consents in writing.

If any lessee obligated to pay Assignee does not do so, Assignee shall have all remedies available to collect the rents and profits including, without limitation, those available to a lessor on a lessee's failure to perform under a lease. Assignor agrees to pay to Assignee a reasonable rental for Assignor's use and occupancy of the Property if, after default, Assignee makes a demand for such payment in writing.

Assignor agrees this Assignment is separate and independent from the Note and shall continue in effect in favor of any purchaser of the Property on foreclosure with respect to leases not terminated by foreclosure. However, at Assignee's election made known before any sale upon foreclosure is concluded, this Assignment shall continue in effect in favor of Assignee with respect to leases not terminated by foreclosure until any deficiency owed Assignee after foreclosure is satisfied, at which time further payments under any such lease shall accrue to the purchaser of the Property or its assigns.

Assignee is not obligated to perform or discharge any obligation under any lease or contract relating to the Property and Assignor agrees to indemnify and hold Assignee harmless from any liability, loss or damage, including costs and attorney's fees, suffered by Assignee under any lease or contract relating to the Property.

Assignor agrees not to assign or pledge the rents and profits of the Property to any other person.

## SIGNATURE(S) OF ASSIGNOR(S)

Signed and Delivered on this Date:

5/29/2019

Nathan O. Beauchamp, Individual

Nathan O Beauchamp, Managing Member

## ACKNOWLEDGEMENT On Reverse Side Hereof

ACKNOWLEDGMENT FOR AN INDIVIDUAL ACTING IN HIS OR HER OWN RIGHT OR REPRESENTING A CORPORATION, PARTNERSHIP, LLC, ETC.

*STATE OF OKLAHOMA*

*COUNTY OF* ____________ } SS.

The foregoing instrument was acknowledged before me on this ________ day of ____________________ by

My Commission Expires: ____________ ____________________
*NOTARY PUBLIC Signature*

EXHIBIT 2





20190610020581520
06/10/2019 12 41 36 PM
Bk Pg 0 Pgs 1 UC1
State of Oklahoma
County of Oklahoma
Oklahoma County Clerk
David B Hooten

20190610020581520
Filing Fee $10 00

06/10/2019 12:41 36 PM
UC1

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Felecia Freeman 405-878-4697

B. E-MAIL CONTACT AT FILER (optional)
ffreeman@cpcdc.org

C. SEND ACKNOWLEDGEMENT TO: (Name and Address)
Citizen Potawatomi Community Development Corp.
1545 Gordon Cooper Drive
Shawnee, Oklahoma 74801

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME: Shawnee Outdoors, LLC | | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX | |
| 1c. MAILING ADDRESS: 40960 Hardesty Road | CITY: Shawnee | STATE: OK | POSTAL CODE: 74801 | COUNTRY: USA | |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| OR 2b. INDIVIDUAL'S SURNAME: Beauchamp | FIRST PERSONAL NAME: Nathan | ADDITIONAL NAME(S)/INITIAL(S): O. | | SUFFIX |
| 2c. MAILING ADDRESS: 35766 Braums Rd | CITY: Wanette | STATE: OK | POSTAL CODE: 74820 | COUNTRY: USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME: Citizen Potawatomi Community Development Corporation | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS: 1545 Gordon Cooper Drive | CITY: Shawnee | STATE: Ok | POSTAL CODE: 74804 | COUNTRY |

4. COLLATERAL: This financing statement covers the following collateral:

PURCHASE MONEY INTEREST CLAIMED. Including but not limited to all business assets to include all inventory, furniture, fixtures, equipment of whatever kind or nature, wherever located, now owned or hereafter acquired, and all returns, repossessions, exchanges, substitutions, replacements, attachments, parts, accessories, and accessions thereto and thereof and all proceeds thereof, (whether in the form of cash, instruments, chattel paper, general intangibles, accounts or otherwise) including an assignment of monthly payments from CPN PD.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

EXHIBIT 2

EXHIBIT 2

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Felecia Freeman/405-878-4697

B. E-MAIL CONTACT AT FILER (optional)
ffreeman@cpcdc.org

C. SEND ACKNOWLEDGMENT TO: (Name and Address)
Citizen Potawatomi Community Development Corporation
1545 S. Gordon Cooper Drive
Shawnee, OK 74801

20240214020140SS
02/14/2024 09:06:27 AM Pgs: 1
Fee: $ 10.00
Maressa Treat, County Clerk
Oklahoma County - State of Oklahoma

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
20190610020581520

1b. [ ] This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. [ ] TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. [ ] ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. [✓] CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. [ ] PARTY INFORMATION CHANGE:
Check one of these two boxes: This Change affects [ ] Debtor or [ ] Secured Party of record
AND Check one of these three boxes to: [ ] CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c [ ] ADD name: Complete item 7a or 7b, and item 7c [ ] DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME
Shawnee Outdoors, LLC

OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME

OR 7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY USA

8. [ ] COLLATERAL CHANGE: Also check one of these four boxes: [ ] ADD collateral [ ] DELETE collateral [ ] RESTATE covered collateral [ ] ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here [ ] and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
Citizen Potawatomi Community Development Corporation

OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA:

EXHIBIT 13

EXHIBIT 2

# PROMISSORY NOTE – Fixed or Variable Rate - Commercial

DATE OF NOTE
03/10/2021

| DEBTOR'S NAME(S) | LENDER'S NAME AND ADDRESS |
|---|---|
| Ada Outdoors, LLC<br>Shawnee Outdoors, LLC<br>Nathaniel O. Beauchamp | Citizen Potawatomi<br>Community Development Corporation<br>1545 Gordon Cooper Drive<br>Shawnee, Oklahoma 74801 |
| DEBTOR'S ADDRESS<br>1030 W 12th Street<br>Ada, OK 74820 | |

| NOTE NUMBER | FIXED INTEREST RATE PER ANNUM | MATURITY DATE | PRINCIPAL AMOUNT | SOCIAL SECURITY/ TIN NUMBER: | |
|---|---|---|---|---|---|
| 8394 | 5.0% | 07/15/2021 | $2,044,089.00 | [redacted] | ☐ 360 DAY<br>☒ 365 DAY |

☒ NEW LOAN
☐ RENEWAL OF LOAN NUMBER(S)
☐ FULLY ADVANCED ☐ MULTIPLE ADVANCES ☐ REVOLVING CREDIT

COLLATERAL DESCRIPTION
All business assets to include all inventory, fixtures, accounts receivables, equipment; now owned or to be acquired by the business; Purchase Order #136365 for 66,560 of 9mm pistol ammo and 55,000 556 rifle ammo described on attachment A

PURPOSE OF LOAN
To provide funding to the businesses herein described, for the purchase and re-sale of certain ammunition products, which have been pre-sold to Farris Brothers, Inc., of Hattiesburg, MS (Buyer).

PAYMENT TERMS
First Payment shall be due on June 15, 2021, with a second, and final payment of $31,000 plus accrued interest and fees, in accordance with the terms of the note, and due on July 15, 2021

Notwithstanding any provision to the contrary, the law of Citizen Potawatomi Nation will govern the construction and enforcement of this agreement. All parties understand and agree that Citizen Potawatomi Nation Tribal Court has jurisdiction to resolve any dispute under this agreement and the parties do hereby submit to the personal jurisdiction of, and waive any objection to venue in, the Citizen Potawatomi Nation Tribal Court for the resolution of any dispute arising out of this agreement.

PROMISE TO PAY. For value received, the undersigned Debtor, whether one or more, and jointly and severally if more than one, agrees to the terms of this Note and promises to pay to the order of the Lender named above at its place of business as indicated in this Note or at such other places as may be designated in writing by Lender, the Principal Amount of this Note together with interest on the unpaid Principal Amount until maturity at the per annum interest rate or rates stated above and according to the Payment Terms stated in this Note. Interest on this Note is calculated on the actual number of days elapsed on a basis of a 360 or 365 day year, as indicated above. For purposes of computing interest and determining the date principal and interest payments are received, all payments will be deemed made only when received in collected funds. Payments are applied first to accrued and unpaid interest and other charges, and then to unpaid Principal Amount. In this Note, "Debtor" includes any party liable under this Note, including endorsers, co-makers, guarantors and otherwise, and "Lender" includes all subsequent holders.

VARIABLE RATE. If this is a Variable Rate transaction as indicated above, the interest rate shall vary from time to time with changes (whether increases or decreases) in the Rate shown above. The interest rate on this Note will be the Index Rate plus a Margin, if any, as indicated above. Each change will become effective on the same date the Index Rate changes unless a different effective date is indicated above. If the Index Rate is Lender's base or prime rate, it is determined by Lender in its sole discretion, primarily on a basis of its cost of funds, is not necessarily the lowest rate Lender is charging its customers, and is not necessarily a published rate.

LATE PAYMENTS. When permitted by law, any principal and/or interest amount not paid within 5 calendar days after will be assessed 5.000% of the amount past due, as a late charge fee. In addition, any principal and/or interest not paid by the maturity date of this Note shall thereafter bear interest at the applicable rate stated in this Note. In no event shall the interest rate and related charges either before or after maturity be greater than permitted by law.

ALL PARTIES PRINCIPAL. All Debtors shall each be regarded as a principal and each Debtor agrees that any Debtor, with Lender's approval and without notice to any other Debtor, may from time to time renew this Note or consent to one or more extensions or deferrals of the Maturity Date for any term(s) or to any other modification(s), and all Debtors shall be liable in same manner as on the original Note.

ADVANCES AND PAYMENTS. If the Fully Advanced box is checked, then the Debtor acknowledges that the entire Principal Amount has been advanced to the Debtor or for Debtor's account or benefit. If the Multiple Advances box is checked, then the Debtor understands that the Lender will disburse the proceeds of this Note in increments, up to the Principal Amount, but that even if the Debtor prepays, the Debtor has no right to reborrow any amounts disbursed. The balance that the Debtor owes under this Note is the aggregate of all such disbursements, less any payments of principal made on this Note. Interest will accrue only on the actual amount of principal disbursed and outstanding from time to time. If the Revolving Credit box is checked, then the Debtor understands that the Lender will disburse the proceeds of this Note in increments up to the Principal Amount and that the remaining terms of this paragraph shall apply to this Note. The balance that the Debtor owes under this Note is the aggregate of all such disbursements, less any payments of principal made on this Note. Interest will accrue only on the actual amount of principal disbursed and outstanding from time to time. If the Revolving Credit box is checked, then the Debtor understands that the Lender will disburse the proceeds of this Note in increments up to the Principal Amount and that the remaining terms of this paragraph shall apply to this Note. The balance that the Debtor owes under this Note is the aggregate of all such disbursements, less any payments of principal made on this Note. The Debtor understands that the maximum amount of all such advances outstanding at any one time cannot exceed the Principal Amount, but that the Debtor may repay and reborrow up to the Principal Amount during the term of this Note. If the aggregate outstanding amount advanced under this Note ever exceeds the Principal Amount, then the Debtor will repay the excess upon demand, plus interest on the excess. There may be times when no principal is outstanding on this Note, but this Note and any collateral securing this Note remain valid and effective as to future advances under this Note. Any loans or advances the Lender makes to the Debtor or for the Debtor's account or benefit are presumed to be made under the terms of this Note. The Lender may make advances under this Note at the oral or written request of any person designated or authorized by the Debtor until the Debtor revokes such designation or authorization in writing received by the Lender, provided that the Lender has the right, but is not obligated, to require written authorization from the Debtor prior to honoring any oral request. Interest will accrue only on the actual amount of principal disbursed and outstanding from time to time.

PREPAYMENT. Debtor shall have the right to prepay all or any part of the principal due under this Note at any time, subject to the following conditions: (a) all interest must be paid through the date of any prepayment; (b) if this Note provides for monthly or other periodic payments, there will be no changes in the due dates or amounts following any partial prepayments unless Lender agrees to such changes in writing; (c) upon prepayment, in whole or in part, Lender may charge and Debtor agrees to pay a fee or premium calculated as follows (this fee/premium provision will not apply if prohibited by applicable law):

COLLATERAL. This Note and all other obligations of Debtor to Lender, including renewals and extensions, are secured by all collateral securing this Note and by all other security interests and mortgages previously or later granted to Lender and by all money, deposits and other property owned by any Debtor and in Lender's possession or control.

ACCELERATION. At option of Lender, the unpaid balance of this Note and all other obligations of Debtor to Lender, whether direct or indirect, absolute or contingent, now existing or later arising, shall become immediately due and payable without notice or demand, upon or after the occurrence or existence of any of the following events or conditions: (a) Any payment required by this Note or by any other note or obligation of Debtor to Lender or to others is not made when due, or any event or condition occurs or exists which results in acceleration of the maturity of any Debtor's obligation to Lender or to others under any promissory note, agreement or undertaking; (b) Debtor defaults in performing any covenant, obligation, warranty or provision contained in any loan agreement or in any instrument or document securing or relating to this Note or any other note or obligation of Debtor to Lender or to others; (c) any warranty, representation, financial information or statement made or furnished to Lender by or on behalf of Debtor proves to have been false in any material respect when made or furnished; (d) any levy, seizure, garnishment or attachment is made against any asset of any Debtor, (e) Lender determines, at any time and in Lender's sole discretion, that the prospect of payment of this Note is impaired; (f) whenever, Lender's sole judgment, the collateral for the debt evidenced by this Note becomes unsatisfactory or insufficient either in character or value and, upon request, Debtor fails to provide additional collateral as required by Lender; (g) all or any part of the collateral for the debt evidenced by this Note lost, stolen, substantially damaged or destroyed; (h) death, incompetency, insolvency, dissolution, on, change in ownership or senior management, or termination of existence of any Debtor; or (i) a receiver is appointed over all or part of any Debtor's property, or any Debtor makes an assignment for the benefit of creditors, files For relief under any bankruptcy or insolvency laws, or becomes subject to all involuntary proceeding under such laws.

RIGHT OF OFFSET. Except as otherwise restricted by law, any indebtedness due from Lender to Debtor, including, without limitation, any deposits or credit balances due from Lender, is pledged to secure payment or this Note and any other obligation to Lender of Debtor, and may at any time while the whole or any art of such obligation(s) remain(s) unpaid, either before or after maturity of this Note, be set off, appropriated, held or applied toward the payment of this Note, be set off, appropriated, held or applied toward the payment of this Note or any other obligation to Lender by any Debtor.

ADDITIONAL PROVISIONS. (1) Limitations on Suit – Liability for damages which the Citizen Potawatomi Community Development Corporation may be found responsible must arise solely pursuant to this Agreement and shall be strictly limited to only the principal amount of the loan, the Corporation's equity interest in the Debtor's enterprise, or the Corporation's security interest in Obligor's property (whichever is greater), and such recovery, if any, shall be exclusively limited to only the assets of the Corporation. (2)Debtor a agrees, if requested, to furnish to. Lender copies of income tax returns as well, as balance sheets and income statements for each fiscal year following Date of Note and at more frequent disburse the proceeds of this Note in increments up to the Principal Amount and intervals as Lender may require. (3) No waiver by Lender of any payment or other right under this Note or any related agreement or documentation shall operate as a waiver of any other payment or right. All Debtors waive presentment, notice of acceleration, notice of dishonor and protest and consent to substitutions, releases and failure to perfect as to collateral and to additions or releases of any Debtor. (4) This Note and the obligations evidenced by it are to be construed and governed by the laws of the state indicated in Lender's address shown in this Note. (5) All Debtors, agree to pay costs of collection including, as allowed by law, an attorney's fee equal to a minimum of 15% of all sums due upon default or such other maximum fee as allowed by law. (6) All parties signing below acknowledge receiving a completed copy of this Note and related documents, which contain the complete and entire agreement between Lender and any party liable for payment under this Note. No variation, condition, modification, change, amendment, extension or renewal (collectively referred to as a "Revision") of this Note or related documents shall be binding unless in writing and signed by Lender and Debtor. If there is more than one Debtor, any Debtor may agree to a Revision of this Note and/or related documents, and all Debtors agree to be bound by such Revision. No legal relationship is created by the execution of this Note and related documents except that of debtor and creditor or as stated in writing.

DEBTOR'S SIGNATURE(S)

| | |
|---|---|
| Nathaniel O. Beauchamp, Managing Member | Nathaniel O. Beauchamp, Individual |
| Nathaniel O. Beauchamp, Member | Nathaniel O. Beauchamp, Individual |

EXHIBIT 14

EXHIBIT 2

## SECURITY AGREEMENT

| DATE OF NOTE |
|---|
| 03/10/2021 |

| DEBTOR'S NAME(S) | SECURED PARTY'S NAME AND ADDRESS |
|---|---|
| Ada Outdoors, LLC<br>Shawnee Outdoors, LLC<br>Nathaniel O. Beauchamp | Citizen Potawatomi Community Development Corporation<br>1545 Gordon Cooper Drive<br>Shawnee, Oklahoma 74801 |
| **DEBTOR'S ADDRESS** | |
| 1030 W 12th Street<br>Ada, OK 74820 | |

I. GRANT OF SECURITY INTEREST. For value received, the undersigned (referred to as "Debtor" whether one or more) grants to Secured Party named above a security interest in the Collateral described below to secure the payment of the "Indebtedness" (as defined below) and performance of all Debtor's obligations and agreements in this Agreement or other documents evidencing the Indebtedness. For purposes of this Agreement, any term used in the Uniform Commercial Code, as adopted and revised from time to time in the State of Oklahoma and/or Citizen Potawatomi Nation ("UCC"), and not defined in this Agreement has the meaning given to the term in the UCC. Debtor's location (if other than the address reflected above) is in the state of OK.

II. DESCRIPTION OF COLLATERAL. The "Collateral" shall include:

PURCHASE MONEY INTEREST CLAIMED. Including but not limited to all business assets to include all inventory, furniture, fixtures, accounts receivables, equipment of whatever kind or nature, wherever located, now owned or hereafter acquired, and all returns, repossessions, exchanges, substitutions, replacements, attachments, parts, accessories, and accessions thereto and thereof and all proceeds thereof, (whether in the form of cash, instruments, chattel paper, general intangibles, accounts or otherwise). Including Purchase money claimed for: Purchase Order #136365 for 66,560 of 9mm pistol ammo and 55,000 556 rifle ammo described on attachment A

The term "Collateral" also includes to the extent not listed above as original collateral:

(1) After-Acquired Property. After-acquired property; provided, however, the security interest will not attach to (a) consumer goods, other than an accession when given as additional security, unless the Debtor acquires rights in them within 10 days after the Secured Party gives value; or (b) a commercial tort claim.

(2) Proceeds. Proceeds, products, additions, substitutions and accessions of the Collateral.

(3) Deposits. Unless prohibited by law, any property (excluding Individual Retirement Accounts and other qualified retirement accounts), tangible or intangible, in possession of Secured Party at any time during the term of this Agreement, or any indebtedness due from Secured Party to Debtor and any deposit or credit balances due from Secured Party to Debtor, and Secured Party may at any time while the whole or any part of the Indebtedness remains unpaid, whether before or after maturity thereof, be appropriated, held or applied toward payment of the Indebtedness or any obligation of Debtor to Secured Party

III. SECURED INDEBTEDNESS. The security interest granted under this Agreement secures the following (referred to as the "Indebtedness"): (1) the performance of all of the agreements, obligations, covenants and warranties of Debtor as set forth in this Agreement or any other agreement between Debtor and Secured Party; (2) all liabilities of Debtor to Secured Party of every kind and description, including (a) all promissory notes given from Debtor to Secured Party, (b) all future advances from Secured Party to Debtor, whether in the form of a loan for a similar or different purpose than any other loan to Debtor, (c) Debtor's overdrafts, whether business or personal, (d) direct or indirect liabilities, (e) liabilities due or to become due and whether absolute or contingent, and (f) liabilities now existing or hereafter arising and however evidenced; (3) all extensions, renewals and deferrals of liabilities of Debtor to Secured Party for any term or terms, to which the undersigned hereby consents; (4) all interest and other finance charges due or to become due on the liabilities of Debtor to Secured Party; (5) All expenditures by Secured Party involving the performance or enforcement of Debtor's obligations, agreements, covenants and warranties under this Agreement or any other agreement between Debtor and Secured Party; and (6) All costs, attorneys' fees and other expenditures of Secured Party in the collection and enforcement of any obligation or liability of Debtor to Secured Party and in the collection and enforcement, sale or other liquidation of any of the Collateral.

IV. GENERAL PROVISIONS.

1. GOVERNING LAW. Notwithstanding any provision to the contrary, the law of Citizen Potawatomi Nation will govern the construction and enforcement of this agreement. All parties understand and agree that Citizen Potawatomi Nation Tribal Court has jurisdiction to resolve any dispute under this agreement and the parties do hereby submit to the personal jurisdiction of, and waive any objection to venue in, the Citizen Potawatomi Nation Tribal Court for the resolution of any dispute arising out of this agreement.

2. WAIVERS. No act, delay or omission, including Secured Party's written express waiver of a remedy after any default under this Agreement, shall constitute a waiver of any of Secured Party's rights and remedies not expressly waived in writing under this Agreement or any other agreement between the parties. All of Secured Party's rights and remedies are cumulative and may be exercised singly or concurrently. The waiver or exercise of any one or more rights or remedies will not be a waiver or a bar to the exercise of any other rights or remedies upon any subsequent default. No waiver, change, modification or discharge of any of Secured Party's rights or remedies or Debtor's duties as specified or allowed by this Agreement will be effective unless in writing and signed by a duly authorized officer of Secured Party. Acceptance of any partial or late payment shall not constitute a waiver of any requirement of this Agreement or impose any additional notification duties upon Secured Party. Debtor and all other signers, including guarantors, waive presentment, notice of dishonor and protest, notice of default, notice of intention to accelerate and notice of acceleration and consent to any and all extensions of time for any term or terms regarding payment due, partial payments, or renewals before or after maturity. Debtor and all other signers, including guarantors, further consent to substitution, impairment, release or nonperfection with regard to the Collateral, and the addition or release of or agreement not to sue any party or guarantor.

3. AGREEMENT BINDING ON ASSIGNS. This Agreement inures to the benefit of Secured Party's successors and assigns, and is binding upon Debtor's heirs, executors, administrators, representatives, successors and permitted assigns (and all persons who become bound as a debtor to this Security Agreement), but no person taking from or representing Debtor has any right to advances under any instrument or document secured by this Agreement.

4. CHANGES IN TERMS. Secured Party reserves the right to change any of the terms of this Agreement in accordance with applicable law and the provisions of this Agreement.

5. TERM OF AGREEMENT. This Agreement, and the security interest created by this Agreement, will remain in force until all of the Indebtedness is paid in full, unless the security interest created by this Agreement is earlier released by Secured Party in writing.

6. RIGHTS OF SECURED PARTY ASSIGNABLE. Secured Party, at any time and at its option, may pledge, transfer or assign its rights under this Agreement in whole or in part, and any transferee or assignee shall have all Secured Party's rights or the parts of them so pledged, transferred or assigned. Debtor's rights under this Agreement or in the Collateral may not be assigned without Secured Party's prior written consent.

7. JOINT AND SEVERAL RESPONSIBILITY OF DEBTOR AND SURETIES. The responsibilities of Debtor and any co-debtor, guarantor, surety or accommodation party under this Agreement are joint and several, and the references to Debtor in this Agreement shall be deemed to refer to each such person, including any person who pledges Collateral even if such pledgor is not otherwise liable under any promissory note, guaranty or other instrument secured by this Agreement.

8. SEPARABILITY OF PROVISIONS. If any provision of this Agreement shall for any reason be held invalid or unenforceable such invalidity or unenforceability shall not affect any other provision of this Agreement, and this Agreement shall be construed as if such invalid or unenforceable provision had never existed.

9. ENTIRE AGREEMENT. This Agreement, together with any mortgage of real estate which may be Collateral, constitutes the entire agreement between the parties with respect to the subjects addressed herein. This Agreement may be amended or modified only by a writing signed by Secured Party specifying that it is a modification, amendment or addition to this Agreement.

V. EVENTS OF DEFAULT. Debtor shall be in default under this Agreement upon the happening of any one or more of the following events or conditions, called "Events of Default" in this Agreement:

1. If any warranty, covenant, agreement, representation, financial information or statement made or furnished to Secured Party by Debtor, any guarantor or surety, or otherwise on Debtor's behalf to induce Secured Party to enter into this Agreement, or in conjunction with it, is violated or proves to have been false in any material respect when made or furnished

2. If any payment required in this Agreement or under any other agreement or obligation of Debtor to Secured Party or to others is not made when due or in accordance with the terms of the applicable contract.

3. If Debtor defaults in the performance of any covenant, obligation, warranty, or provision contained in this Agreement or any other agreement, mortgage or obligation of Debtor to Secured Party or to others, including without limitation Debtor's failure to insure the Collateral or unlawful use of the Collateral.

4. If any event or condition exists or occurs which results in acceleration of the maturity of any obligation of Debtor to Secured Party or to others under any note, mortgage, indenture, agreement, or undertaking.

5. If anyone makes any levy against or seizes, garnishes or attaches any of the Collateral; if Debtor consensually encumbers any of the Collateral; or if Debtor sells, leases, or otherwise disposes of any of the Collateral without Secured Party's prior written consent as required by this Agreement or any mortgage executed in connection with this Agreement.

6. If the Collateral is lost, stolen, substantially damaged or destroyed.

7. If, in Secured Party's judgment, the Collateral becomes unsatisfactory or insufficient in character or value, and upon request Debtor fails to provide additional Collateral as required by Secured Party.

8. If at any time Secured Party, in its sole discretion, believes the prospect of payment or performance of any duty, covenant, warranty or obligation secured by this Agreement is impaired.

9. If Debtor or any guarantor or surety dies, dissolves, terminates existence, or becomes insolvent; if a receiver is appointed over any part of Debtor's property or any part of the Collateral; if Debtor makes an assignment for the benefit of creditors; or if any proceeding is commenced under any bankruptcy or insolvency law by or against Debtor or any guarantor or surety for Debtor.

10. If the Collateral is removed from the location specified in this Agreement or in a separate notice to Secured Party without Secured Party's prior written consent. except for temporary periods in the normal and customary use of the Collateral

11. Secured Party shall receive at any time following the Closing a filing office report indicating that Secured Party's security interest is not prior to all other security interests or other interests reflected in the report.

VI. ADDITIONAL PROVISIONS. The undersigned specifically agree to all of the "Additional Provisions" on the reverse side of this Agreement.

| SECURED PARTY'S SIGNATURE | DEBTOR'S SIGNATURE(S) | |
|---|---|---|
| Citizen Potawatomi Community Development Corporation | Nathaniel O. Beauchamp, Managing Member | Nathaniel O. Beauchamp, Individual |
| | Nathaniel O. Beauchamp, Member | Nathaniel O. Beauchamp, Individual |
| Robert L. Crothers, Commercial Loan Officer | | |

EXHIBIT 2

EXHIBIT 15

WHEN RECORDED, RETURN TO:
Citizen Potawatomi Community Development Corporation
1545 S. Gordon Cooper Drive
Shawnee, Oklahoma 74801

## ASSIGNMENT OF LEASES, RENTS, AND PROFITS

*(INDIVIDUAL – CORPORATION – PARTNERSHIP)*

| ASSIGNOR NAME AND ADDRESS | ASSIGNEE NAME AND ADDRESS |
|---|---|
| Ada Outdoors, LLC<br>Shawnee Outdoors, LLC<br>Nathaniel O. Beauchamp<br>1030 W 12th Street<br>Ada, OK 74820 | Citizen Potawatomi Community Development Corporation<br>1545 S. Gordon Cooper Drive<br>Shawnee, Oklahoma 74801 |

FOR VALUE RECEIVED, the Undersigned (called "Assignor") sells, assigns and transfers to above named Assignee, (called "Assignee" which term shall be construed to include Assignee's successors and assigns), all right, title and interest in the rents and profits (known as the "Assignment") now due and which may later become due under, or by virtue of, any lease, whether written or verbal, or any letting of, or of any agreement for the use or occupancy of the following described Property:

Purchase Order #136365 for 66,560 of 9mm pistol ammo and 55,000 556 rifle ammo described on attachment A

This Assignment is conditioned on Assignor's default under a certain Mortgage dated 03/10/2021 (the "Mortgage"), and becomes effective after default (whether or not proceedings have been instituted to foreclose the Mortgage by judicial foreclosure or Power of Sale) on the earlier of: (1) Assignee taking possession of the Property, (2) the appointment of a receiver for the Property, or (3) Assignee giving Assignor and any lessees of the Property written notice to pay Assignee any rents or profits due after a specified date. Assignor agrees Assignee or its agents may, on Assignor's default under the Mortgage, take possession of the Property and collect the rents and profits to apply to any amount Assignor owes Assignee. Assignor further agrees that on Assignor's default under the mortgage, Assignee may seek to have a receiver appointed for the Property as allowed by 12 O.S. 1551, including appointment of a receiver simply when a condition of the Mortgage has not been performed and the Mortgage provides for appointment of a receiver. Assignor recognizes when Assignee receives the rents and profits after written notice, but does not enter into physical possession of the Property and exercise exclusive operating control, Assignee will not be considered a "mortgagee in possession." Assignor further recognizes Assignee may, as part of this Assignment, extend, renew or enter into new leases under terms customary for leases of the Property. If Assignee sends written notice to a lessee obligated to pay under any lease on the Property requesting lessee to direct all rents and profits under the lease to Assignee, this Assignment, when effective, shall transfer the lessee's obligation to pay rents and profits to Assignee.

Assignor agrees that no modification, termination, or renewal of a lease prior or subsequent to the effective date of this Assignment, or advance payment and collection of rents and profits, will be effective against Assignee unless Assignee consents in writing.

If any lessee obligated to pay Assignee does not do so, Assignee shall have all remedies available to collect the rents and profits including, without limitation, those available to a lessor on a lessee's failure to perform under a lease. Assignor agrees to pay to Assignee a reasonable rental for Assignor's use and occupancy of the Property if, after default, Assignee makes a demand for such payment in writing.

Assignor agrees this Assignment is separate and independent from the Mortgage and shall continue in effect in favor of any purchaser of the Property on foreclosure with respect to leases not terminated by foreclosure. However, at Assignee's election made known before any sale upon foreclosure is concluded, this Assignment shall continue in effect in favor of Assignee with respect to leases not terminated by foreclosure until any deficiency owed Assignee after foreclosure is satisfied, at which time further payments under any such lease shall accrue to the purchaser of the Property or its assigns.

Assignee is not obligated to perform or discharge any obligation under any lease or contract relating to the Property and Assignor agrees to indemnify and hold Assignee harmless from any liability, loss or damage, including costs and attorney's fees, suffered by Assignee under any lease or contract relating to the Property.

Assignor agrees not to assign or pledge the rents and profits of the Property to any other person.

### SIGNATURE(S) OF ASSIGNOR(S)

Signed and Delivered on this Date:

Nathaniel O. Beauchamp, Managing Member — Nathaniel O. Beauchamp, Individual

Nathaniel O. Beauchamp, Member — Nathaniel O. Beauchamp, Individual

ACKNOWLEDGEMENT On Reverse Side Hereof

EXHIBIT 2

EXHIBIT 6

WHEN RECORDED, RETURN TO:
Citizen Potawatomi Community Development Corporation
1545 S. Gordon Cooper Drive
Shawnee, Oklahoma 74801

# ASSIGNMENT OF LEASES, RENTS, AND PROFITS

*(INDIVIDUAL – CORPORATION – PARTNERSHIP)*

| ASSIGNOR NAME AND ADDRESS | ASSIGNEE NAME AND ADDRESS |
|---|---|
| Ada Outdoors, LLC<br>Shawnee Outdoors, LLC<br>Nathaniel O. Beauchamp<br>1030 W 12th Street<br>Ada, OK 74820 | Citizen Potawatomi Community Development Corporation<br>1545 S. Gordon Cooper Drive<br>Shawnee, Oklahoma 74801 |

FOR VALUE RECEIVED, the Undersigned (called "Assignor") sells, assigns and transfers to above named Assignee, (called "Assignee" which term shall be construed to include Assignee's successors and assigns), all right, title and interest in the rents and profits (known as the "Assignment") now due and which may later become due under, or by virtue of, any lease, whether written or verbal, or any letting of, or of any agreement for the use or occupancy of the following described Property:

Purchase Order #136365 for 66,560 of 9mm pistol ammo and 55,000 556 rifle ammo described on attachment A

This Assignment is conditioned on Assignor's default under a certain Mortgage dated 03/10/2021 (the "Mortgage"), and becomes effective after default (whether or not proceedings have been instituted to foreclose the Mortgage by Judicial foreclosure or Power of Sale) on the earlier of: (1) Assignee taking possession of the Property, (2) the appointment of a receiver for the Property, or (3) Assignee giving Assignor and any lessee of the Property written notice to pay Assignee any rents or profits due after a specified date. Assignor agrees Assignee or its agents may, on Assignor's default under the Mortgage, take possession of the Property and collect the rents and profits to apply to any amount Assignor owes Assignee. Assignor further agrees that on Assignor's default under the mortgage, Assignee may seek to have a receiver appointed for the Property as allowed by 12 O.S. 1551, including appointment of a receiver simply when a condition of the Mortgage has not been performed and the Mortgage provides for appointment of a receiver. Assignor recognizes when Assignee receives the rents and profits after written notice, but does not enter into physical possession of the Property and exercise exclusive operating control, Assignee will not be considered a "mortgagee in possession." Assignor further recognizes Assignee may, as part of this Assignment, extend, renew or enter into new leases under terms customary for leases of the Property. If Assignee sends written notice to a lessee obligated to pay under any lease on the Property requesting lessee to direct all rents and profits under the lease to Assignee, this Assignment, when effective, shall transfer the lessee's obligation to pay rents and profits to Assignee.

Assignor agrees that no modification, termination, or renewal of a lease prior or subsequent to the effective date of this Assignment, or advance payment and collection of rents and profits, will be effective against Assignee unless Assignee consents in writing.

If any lessee obligated to pay Assignee does not do so, Assignee shall have all remedies available to collect the rents and profits including, without limitation, those available to a lessor on a lessee's failure to perform under a lease. Assignor agrees to pay to Assignee a reasonable rental for Assignor's use and occupancy of the Property if, after default, Assignee makes a demand for such payment in writing.

Assignor agrees this Assignment is separate and independent from the Mortgage and shall continue in effect in favor of any purchaser of the Property on foreclosure with respect to leases not terminated by foreclosure. However, at Assignee's election made known before any sale upon foreclosure is concluded, this Assignment shall continue in effect in favor of Assignee with respect to leases not terminated by foreclosure until any deficiency owed Assignee after foreclosure is satisfied, at which time further payments under any such lease shall accrue to the purchaser of the Property or its assigns.

Assignee is not obligated to perform or discharge any obligation under any lease or contract relating to the Property and Assignor agrees to indemnify and hold Assignee harmless from any liability, loss or damage, including costs and attorney's fees, suffered by Assignee under any lease or contract relating to the Property.

Assignor agrees not to assign or pledge the rents and profits of the Property to any other person.

## SIGNATURE(S) OF ASSIGNOR(S)

Signed and Delivered on this Date:

Nathaniel O. Beauchamp, Managing Member

Nathaniel O. Beauchamp, Individual

Nathaniel O. Beauchamp, Member

Nathaniel O. Beauchamp, Individual

ACKNOWLEDGEMENT On Reverse Side Hereof

**EXHIBIT 2**

WHEN RECORDED, RETURN TO:
Citizen Potawatomi Community Development Corporation
1545 S. Gordon Cooper Drive
Shawnee, Oklahoma 74801

# ASSIGNMENT OF LEASES, RENTS, AND PROFITS

*(INDIVIDUAL – CORPORATION – PARTNERSHIP)*

| ASSIGNOR NAME AND ADDRESS | ASSIGNEE NAME AND ADDRESS |
|---|---|
| Ada Outdoors, LLC<br>Shawnee Outdoors, LLC<br>Nathaniel O. Beauchamp<br>1030 W 12th Street<br>Ada, OK 74820 | Citizen Potawatomi Community Development Corporation<br>1545 S. Gordon Cooper Drive<br>Shawnee, Oklahoma 74801 |

FOR VALUE RECEIVED, the Undersigned (called "Assignor") sells, assigns and transfers to above named Assignee, (called "Assignee" which term shall be construed to include Assignee's successors and assigns), all right, title and interest in the rents and profits (known as the "Assignment") now due and which may later become due under, or by virtue of, any lease, whether written or verbal, or any letting of, or of any agreement for the use or occupancy of the following described Property:

Purchase Order #136365 for 66,560 of 9mm pistol ammo and 55,000 556 rifle ammo described on attachment A

This Assignment is conditioned on Assignor's default under a certain Mortgage dated 03/10/2021 (the "Mortgage"), and becomes effective after default (whether or not proceedings have been instituted to foreclose the Mortgage by judicial foreclosure or Power of Sale) on the earlier of: (1) Assignee taking possession of the Property, (2) the appointment of a receiver for the Property, or (3) Assignee giving Assignor and any lessee of the Property written notice to pay Assignee any rents or profits due after a specified date. Assignor agrees Assignee or its agents may, on Assignor's default under the Mortgage, take possession of the Property and collect the rents and profits to apply to any amount Assignor owes Assignee. Assignor further agrees that on Assignor's default under the mortgage, Assignee may seek to have a receiver appointed for the Property as allowed by 12 O.S. 1551, including appointment of a receiver simply when a condition of the Mortgage has not been performed and the Mortgage provides for appointment of a receiver. Assignor recognizes when Assignee receives the rents and profits after written notice, but does not enter into physical possession of the Property and exercise exclusive operating control, Assignee will not be considered a "mortgagee in possession." Assignor further recognizes Assignee may, as part of this Assignment, extend, renew or enter into new leases under terms customary for leases of the Property. If Assignee sends written notice to a lessee obligated to pay under any lease on the Property requesting lessee to direct all rents and profits under the lease to Assignee, this Assignment, when effective, shall transfer the lessee's obligation to pay rents and profits to Assignee.

Assignor agrees that no modification, termination, or renewal of a lease prior or subsequent to the effective date of this Assignment, or advance payment and collection of rents and profits, will be effective against Assignee unless Assignee consents in writing.

If any lessee obligated to pay Assignee does not do so, Assignee shall have all remedies available to collect the rents and profits including, without limitation, those available to a lessor on a lessee's failure to perform under a lease. Assignor agrees to pay to Assignee a reasonable rental for Assignor's use and occupancy of the Property if, after default, Assignee makes a demand for such payment in writing.

Assignor agrees this Assignment is separate and independent from the Mortgage and shall continue in effect in favor of any purchaser of the Property on foreclosure with respect to leases not terminated by foreclosure. However, at Assignee's election made known before any sale upon foreclosure is concluded, this Assignment shall continue in effect in favor of Assignee with respect to leases not terminated by foreclosure until any deficiency owed Assignee after foreclosure is satisfied, at which time further payments under any such lease shall accrue to the purchaser of the Property or its assigns.

Assignee is not obligated to perform or discharge any obligation under any lease or contract relating to the Property and Assignor agrees to indemnify and hold Assignee harmless from any liability, loss or damage, including costs and attorney's fees, suffered by Assignee under any lease or contract relating to the Property.

Assignor agrees not to assign or pledge the rents and profits of the Property to any other person.

## SIGNATURE(S) OF ASSIGNOR(S)

Signed and Delivered on this Date:

Nathaniel O. Beauchamp, Managing Member

Nathaniel O. Beauchamp, Individual

Nathaniel O. Beauchamp, Member

Nathaniel O. Beauchamp, Individual

ACKNOWLEDGEMENT On Reverse Side Hereof

EXHIBIT 2

ATTACHMENT A

FARRIS BROTHERS, INC.
24 RATCLIFF LANE

HATTIESBURG MS 39402
Phone: 601-264-8444

PURCHASE ORDER

Vendor Copy

| Number | 136365 |
|---|---|
| Date | 01/18/2021 |
| Page | 1 |

Vendor: ADA201
ADA OUTDOORS
1030 W 12TH STREET
ADA, OK 74820

Ship To:
FARRIS BROTHERS WAREHOUSE
24 RATCLIFF LANE
HATTIESBURG MS 39402

| Buyer | Terms | Ship Via | FOB | Freight | Ref | Exp Rcd | Customer |
|---|---|---|---|---|---|---|---|
| DLH | NET ROG | | ADA | PREPAID | | 01/18/21 | |

| Vendor Item # | Item | Description | Units | UM | Cost | UM | Extension | LN# |
|---|---|---|---|---|---|---|---|---|
| 8605003811701 | PPH9F1 | PPU PISTOL AMMO<br>9mm FMJ 115gr 50bx | 66560 | EA | 21.00 | EA | 1397760.0 | 001 |
| 86050038122500 | PPN5560 | PPU RIFLE AMMO<br>556 NATO FMJ 55gr 20 | 55000 | EA | 11.20 | EA | 616000.00 | 002 |

| Amount | | | Total |
|---|---|---|---|
| 2013760.00 | .00 | .00 | 2013760.00 |

AS SOON AS POSSIBLE!

EXHIBIT 2

# GUARANTY AGREEMENT

| DATE OF AGREEMENT |
|---|
| 03/10/2021 |

| DEBTOR'S NAME(S) | LENDER'S NAME AND ADDRESS |
|---|---|
| Ada Outdoors, LLC<br>Shawnee Outdoors, LLC<br>Nathaniel O. Beauchamp | Citizen Potawatomi<br>Community Development Corporation<br>1545 Gordon Cooper Drive<br>Shawnee, Oklahoma 74801 |
| **DEBTOR'S ADDRESS** | |
| 1030 W 12th Street<br>Ada, OK 74820 | |

A. To induce the Lender to extend credit to the Debtor and for other good and valuable consideration, the receipt of which is acknowledged, and for the purpose of enabling the Debtor to obtain or renew loans, credit or other financial accommodation from the Lender named above, each of the undersigned as a primary obligor, jointly and severally and unconditionally: (1) guarantees to the Lender that Debtor will fully and promptly pay or otherwise discharge all indebtedness and other obligations ("Indebtedness") upon which Debtor now is or may later, from time to time, become obligated to Lender as principal, guarantor, endorser, or in any other capacity, and whether joint or several liability or liability created by direct dealing with Lender or through transfer from others, and regardless of the nature and form of indebtedness and whether due or not due; (2) agrees, without the Lender first having to proceed against Debtor or any other party liable or to liquidate any security, to pay on demand all sums due and to become due to Lender from Debtors and all losses, costs, attorney fees or expenses which may be suffered or incurred by Lender by reason of Debtor's default or the default of the undersigned; (3) except as setoff is waived, agrees to be bound by and on demand to pay any deficiency or difference between all Indebtedness of the Debtor and the proceeds of any private or public sale (including a sheriff's sale) of the security held by Lender, with or without notice to the undersigned; (4) agrees that liability under this Agreement will not be affected or impaired by any failure, neglect or omission, including a failure or delay to perfect or maintain perfection of a security interest, either in relation to the collection of the Indebtedness or the protection of the security given, and regardless of whether the Lender fails or omits to seek or is precluded from seeking a judgment against Debtor; and (5) further agrees that the liability of the undersigned shall not be affected by any lack of validity or enforceability due to defense, claim, discharge or otherwise of any Indebtedness guaranteed by this Agreement or of the security of the Indebtedness.

B. Lender may at any time and from time to time without the further consent of or notice to the undersigned, without incurring responsibility to the undersigned and without impairing or releasing the obligations of the undersigned, and upon any terms and conditions the Lender may elect: (1) change the manner, place or terms of payment or extend the time of payment of any Indebtedness of Debtor to Lender; (2) renew, increase or alter any Indebtedness of Debtor to Lender; (3) raise or lower the interest rate or rates charged Debtor; (4) sell, exchange, release, surrender, realize upon or otherwise deal or not deal with in any manner and in any order any property at any time pledged to secure or securing the Indebtedness of Debtor to Lender or any liabilities incurred directly or indirectly under this Agreement, or any offsets against any such Indebtedness or liabilities; (5) exercise or refrain from exercising any rights against Debtor or others, or otherwise act or refrain from acting (6) settle or compromise any Indebtedness guaranteed or incurred; (7) subordinate the payment of all or part of any Indebtedness of Debtor to Lender to the payment of any liabilities which may be due Lender or others; (8) apply any sums paid by or for account of Debtor to any Indebtedness of Debtor to Lender regardless of what Indebtedness or liability of Debtor to Lender remains unpaid and regardless of to which Indebtedness such sums were intended to be applied; (9) release any one or more of the undersigned, any other guarantor or any other party liable upon or for any Indebtedness or other obligation guaranteed, and such release will not affect the liability under this Agreement of any of the undersigned or any other party not so released; (10) add or release the primary or secondary liability of principals, guarantors or other parties; and/or (11) obtain additional collateral security.

C. The undersigned waives: (1) any and all acceptance of this Guaranty Agreement; (2) notice of the creation of any Indebtedness; (3) any presentment, demand for payment, notice of default or non-payment, notice of acceleration, notice of disposition of security, notice of dishonor or protest to or upon any party and all other notices whatsoever whether required or permitted by this Guaranty Agreement, any other agreement, course of dealing, usage of trade, course of performance and, to the extent allowed, the law; (4) any exercise of any remedy which the Lender now has or later acquires against the Debtor or any other party; (5) any impairment of collateral, including, but not limited to, the failure to perfect, or maintain perfection of, a security interest in collateral; and (6) any event, or any act or omission of the Lender (except acts or omissions in bad faith) which materially increases the scope of the undersigned's risk as guarantor, including the manner of administration of the loan and changes in the form or manner in which any party does business or in their financial condition and any notice of any such change.

D. This Guaranty Agreement shall be absolute, unconditional and continuing guaranty of payment and not of collection and shall be binding upon the undersigned, heirs or successors of the undersigned, and the estate or estates of the undersigned: (1) regardless of the death or cessation of existence of any of the undersigned or of any guarantor or any other party liable upon any Indebtedness or other obligation hereby guaranteed; (2) irrespective of any defenses, claims or discharge available to the Debtor under law or under any agreement with the Lender; and (3) irrespective of any failure or delay by the Lender to perfect or keep perfected any lien or security interest in any collateral. This Guaranty Agreement is an independent obligation which is separately enforceable from the obligation of the Debtor.

E. All rights of the Lender are cumulative and not alternative to other rights. Suit may be brought against the undersigned or other parties liable, jointly and severally, and against any one or more of them, and against all or less than all, without impairing the rights of the Lender, its successors or assigns, against others of the undersigned. The Lender may settle with any one of the undersigned or any other party for such sum or sums as it may see fit and release such of the undersigned or other parties from all further liability to the Lender for such Indebtedness without impairing the right of the Lender to demand and collect the balance of such Indebtedness from others of the undersigned not so released.

F. The Lender may assign this Agreement or any of its rights and powers under it, with all or any part of the Indebtedness guaranteed, and may assign to any such assignee any of the security for the Indebtedness. In the event of such assignment, the assignee shall have the same rights and remedies as if originally named in this Agreement in place of Lender, and the Lender shall thereafter be fully discharged from all responsibility with respect to any such Indebtedness so assigned.

G. Unless expressly limited by specific writing as set forth in this Guaranty Agreement, it is understood to be unlimited in amount. If limited, it is understood the limit means a fixed amount or percentage of any Indebtedness remaining after application of the actual proceeds of the disposition of any security to any unguaranteed portion of the Indebtedness.

H. Until the Indebtedness of the Debtor have been paid in full, the undersigned agrees to provide to the Lender from time to time upon demand such financial statements, copies of tax returns, and other information as to the undersigned as the Lender may reasonably require.

I. Any deposits or other sums credited by or due from the Lender to the undersigned may be set off against any and all liabilities of the undersigned to the Lender arising under the terms of this Guaranty Agreement. The rights granted by this paragraph shall be in addition to the rights of the Lender under any statutory banker's lien or common law right of offset.

J. Until the obligations of the Debtor have been paid in full the undersigned specifically waives all rights of subrogation to the rights of the Lender, any claim to any security or its value to which the Lender has recourse, and all rights of reimbursement or contribution from other parties, whether principals or sureties, accommodation parties or guarantors.

K. The undersigned may, only by written notice given to and received by Lender, withdraw only from liability for additional Indebtedness of Debtor accepted by or incurred to Lender after the time of receipt of such notice by Lender. The liability and other agreements of the undersigned shall not be otherwise affected but shall continue until all Indebtedness, including loan commitments, existing at the time of the receipt of such notice, and renewals or extensions of Indebtedness to which the undersigned consents, is fully paid. After any such revocation, Lender may exercise any rights granted in this Agreement without releasing the undersigned from liability.

L. Notwithstanding the provisions of any note or obligation to which this Guaranty Agreement applies, it is the intention of the parties, and it is here provided, that a Guarantor shall not be liable for interest charges in excess of the maximum amount permitted under the law applicable to this Guaranty Agreement.

M. The undersigned specifically waives any right to setoff under 12 O.S. sec. 616, 15 O.S. sec. 341, or any like statutes, and agree that the Lender may apply the actual proceeds from the disposition of any security first to any unguaranteed portion of the Indebtedness. Any party to this Guaranty Agreement has right to waive trial by jury and waives all objections to venue in any action instituted by the Lender arising out of this Guaranty Agreement.

N. The undersigned waive, as of the date of this Guaranty Agreement, any claim, as that term is defined in the Federal Bankruptcy Code, which the undersigned might have or acquire against the Debtor arising from the existence or performance of the undersigned's obligations under this Guaranty Agreement, and to that extent that the undersigned is not a creditor of the Debtor. In addition to the waiver of the status of creditor, it is agreed that the Indebtedness guaranteed under this Guaranty Agreement excludes all portions of the Indebtedness paid by the Debtor during the period of time within one year prior to the filing of any bankruptcy, reorganization or insolvency proceedings by or against the Debtor. If any payment made by the Debtor to the Lender is determined to be avoidable under applicable state law or the Federal Bankruptcy Code, to that extent, if demanded by the Lender, this Guaranty Agreement is deemed to be reinstated to include the amount within the Indebtedness under this Guaranty Agreement.

O. The undersigned, by signing below, acknowledge having read this Guaranty Agreement, having reviewed it to the extent desired with their legal counsel, and receiving a copy of it and also receiving an explanation of any questions. The undersigned also have read any cosigner notice provided by Lender. The undersigned understand that the undersigned may have to pay any Indebtedness or obligation covered by this Guaranty Agreement in the event the Debtor fails or refuses to do so. The undersigned also represent that they are aware of the financial condition of Debtor and acknowledge a responsibility to maintain a close watch on that financial condition as long as this Guaranty Agreement is outstanding and that they are not relying on the Lender to provide information on the Debtor's financial condition, now or in the future.

P. This Guaranty and the obligations evidenced in it are to be construed and governed by the laws of the state indicated in the address of Lender shown above.

Q. This Guaranty Agreement constitutes the entire agreement between the parties with respect to the obligations of the undersigned and the rights of the Lender under this Guaranty Agreement. This Guaranty Agreement cannot be amended except by an agreement in writing signed by both the undersigned and the Lender. No condition as to the effectiveness or enforcement of this Guaranty Agreement exists except as stated in this Guaranty Agreement. Regardless of any other provision of this Guaranty Agreement to the contrary, and unless otherwise specifically released or modified by this Guaranty Agreement, all other obligations of the undersigned to Lender evidenced by a note, loan agreement, guaranty or any other written agreement remain in force and effect.

R. Limitations on Suit—Liability for damages which the Citizen Potawatomi Community Development Corporation may be found responsible must arise solely pursuant to this Agreement and shall be strictly limited to only the principal amount of the loan, the Corporation's equity interest in the Debtor's enterprise, or the Corporation's security interest in Obligor's property (whichever is greater), and such recovery, if any, shall be exclusively limited to only the assets of the Corporation.

S. Notwithstanding any provision to the contrary, the law of Citizen Potawatomi Nation will govern the construction and enforcement of this agreement. All parties understand and agree that Citizen Potawatomi Nation Tribal Court has jurisdiction to resolve any dispute under this agreement and the parties do hereby submit to the personal jurisdiction of, and waive any objection to venue in, the Citizen Potawatomi Nation Tribal Court for the resolution of any dispute arising out of this agreement.

**GUARANTOR'S SIGNATURE(S)**

_______________________________ _______________________________

Nathaniel O. Beauchamp

**EXHIBIT 2**

# LIMITED LIABILITY COMPANY GUARANTY and PLEDGING RESOLUTION

| DEBTOR(S) NAME(S) | LIMITED LIABILITY COMPANY | FINANCIAL INSTITUTION |
|---|---|---|
| Ada Outdoors, LLC<br>Nathaniel O. Beauchamp | State of Organization: Oklahoma | Citizen Potawatomi Community Development Corporation<br>1545 Gordon Cooper Drive<br>Shawnee, Oklahoma 74801 |

THE UNDERSIGNED CERTIFIES to the above-named Financial Institution as of the date set forth below that: (1) I am a duly appointed and qualified Manager of the above-named limited liability company (the "Company") and the keeper of the Company records; (2) the following is a true and correct copy of Resolutions duly adopted by all of the Members of the Company either at a meeting at which a quorum was present or by unanimous consent of the Members as evidenced by a memorandum of action duly signed by all Members of the Company; (3) there is no provision in the Company's Articles of Organization or Operating Agreement limiting the power of the Members to adopt the following Resolutions which conform with the provisions of the Articles and Operating Agreement; and (4) the Resolutions which are quoted below are now in full force and effect:

"RESOLVED that any One (1) of the Managers of this Company be, and are by these Resolutions authorized, on behalf of this Company:

1. To unconditionally, absolutely and continually guarantee to the following named Financial Institution, hereinafter called Financial Institution: Citizen Potawatomi Community Development Corporation

that the following named Debtor, hereinafter called Debtor: Ada Outdoors, LLC

will fully and promptly pay and discharge all indebtedness for which the Debtor now owes or may at any later time become obligated to the Financial Institution, either as principal, guarantor, endorser, or in any other capacity, and whether created by direct dealing with the Financial Institution or otherwise, and regardless of the nature or form of such indebtedness, including without limitation, judgments, promissory notes, open accounts or any other form of indebtedness (collectively, the "Indebtedness").

2. To pledge and grant a security interest in any and all assets of the Company as collateral for the Indebtedness and/or the Company's guaranty of the Indebtedness.

3. To execute and deliver such security agreements, assignments, guarantees, financing statements, lien entry forms and any other documents and agreements, and to do and perform such other acts as may be necessary and required in order to carry into effect the terms, provisions and conditions of, and to consummate the transactions contemplated by, these Resolutions.

4. To provide that any guaranty of the Indebtedness, pledge of and/or security interest in the assets of the Company to the Financial Institution be unlimited, except as follows: n/a

"FURTHER RESOLVED, that the Members of the Company have determined that the actions authorized in these Resolutions are in the best interest of the Company and will be to its benefit, and that the execution of any document, instrument or agreement required in furtherance of these Resolutions is authorized by the Company's Articles of Organization or Operating Agreement."

"FURTHER RESOLVED, that these Resolutions and authorities shall continue in full force and effect until revoked or modified by resolution of the Members and until official notice in writing of such change shall be given to, and received and acknowledged by, the Financial Institution, and that all previous acts of and all documents and papers previously executed and/or delivered by any of the Managers of the Company in exercising any of the powers or matters described in these Resolutions are ratified, adopted, confirmed and approved."

THE UNDERSIGNED FURTHER CERTIFIES that the following named persons have been duly appointed as Managers, that they continue to hold the position of Manager at the present time, and that the signatures appearing below are the genuine and original signatures of each, respectively: (Attach separate sheet if additional space is needed.)

| NAME | TITLE | SIGNATURE |
|---|---|---|
| Nathaniel O. Beauchamp | Managing Member | |
| | | |
| | | |

**SIGNATURE OF MANAGER**

WITNESS my hand on this _____ day of __________ ______________________ Manager

**CERTIFICATE CONFIRMATION**

Being one of the Managers of the Company (other than the signing Manager), I confirm the above certificate as of the date set forth above.

______________________ Manager

© 2005 Citizen Potawatomi Community Development Corporation

EXHIBIT 2

# LIMITED LIABILITY COMPANY GUARANTY and PLEDGING RESOLUTION

| DEBTOR'S NAME(S) | LIMITED LIABILITY COMPANY | FINANCIAL INSTITUTION |
|---|---|---|
| Shawnee Outdoors, LLC<br>Nathaniel O. Beauchamp | State of Organization: Oklahoma | Citizen Potawatomi Community Development Corporation<br>1545 Gordon Cooper Drive<br>Shawnee, Oklahoma 74801 |

THE UNDERSIGNED CERTIFIES to the above-named Financial Institution as of the date set forth below that: (1) I am a duly appointed and qualified Manager of the above-named limited liability company (the "Company") and the keeper of the Company records; (2) the following is a true and correct copy of Resolutions duly adopted by all of the Members of the Company either at a meeting at which a quorum was present or by unanimous consent of the Members as evidenced by a memorandum of action duly signed by all Members of the Company; (3) there is no provision in the Company's Articles of Organization or Operating Agreement limiting the power of the Members to adopt the following Resolutions which conform with the provisions of the Articles and Operating Agreement; and (4) the Resolutions which are quoted below are now in full force and effect:

"RESOLVED that any One (1) of the Managers of this Company be, and are by these Resolutions authorized, on behalf of this Company:

1. To unconditionally, absolutely and continually guarantee to the following named Financial Institution, hereinafter called Financial Institution: Citizen Potawatomi Community Development Corporation

that the following named Debtor, hereinafter called Debtor: Nathaniel O. Beauchamp

will fully and promptly pay and discharge all indebtedness for which the Debtor now owes or may at any later time become obligated to the Financial Institution, either as principal, guarantor, endorser, or in any other capacity, and whether created by direct dealing with the Financial Institution or otherwise, and regardless of the nature or form of such indebtedness, including without limitation, judgments, promissory notes, open accounts or any other form of indebtedness (collectively, the "Indebtedness").

2. To pledge and grant a security interest in any and all assets of the Company as collateral for the Indebtedness and/or the Company's guaranty of the Indebtedness.

3. To execute and deliver such security agreements, assignments, guarantees, financing statements, lien entry forms and any other documents and agreements, and to do and perform such other acts as may be necessary and required in order to carry into effect the terms, provisions and conditions of, and to consummate the transactions contemplated by, these Resolutions.

4. To provide that any guaranty of the Indebtedness, pledge of and/or security interest in the assets of the Company to the Financial Institution be unlimited, except as follows: n/a

"FURTHER RESOLVED, that the Members of the Company have determined that the actions authorized in these Resolutions are in the best interest of the Company and will be to its benefit, and that the execution of any document, instrument or agreement required in furtherance of these Resolutions is authorized by the Company's Articles of Organization or Operating Agreement."

"FURTHER RESOLVED, that these Resolutions and authorities shall continue in full force and effect until revoked or modified by resolution of the Members and until official notice in writing of such change shall be given to, and received and acknowledged by, the Financial Institution, and that all previous acts of and all documents and papers previously executed and/or delivered by any of the Managers of the Company in exercising any of the powers or matters described in these Resolutions are ratified, adopted, confirmed and approved."

THE UNDERSIGNED FURTHER CERTIFIES that the following named persons have been duly appointed as Managers, that they continue to hold the position of Manager at the present time, and that the signatures appearing below are the genuine and original signatures of each, respectively: (Attach separate sheet if additional space is needed.)

| NAME | TITLE | SIGNATURE |
|---|---|---|
| Nathaniel O. Beauchamp | Member | [signature] |
| | | |
| | | |

**SIGNATURE OF MANAGER**

WITNESS my hand on this ______ day of ____________ ____________________

Manager

**CERTIFICATE CONFIRMATION**

Being one of the Managers of the Company (other than the signing Manager), I confirm the above certificate as of the date set forth above.

____________________

Manager

© 2005 Citizen Potawatomi Community Development Corporation

EXHIBIT
19

EXHIBIT 2

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Felecia Freeman 405-878-4697

B. E-MAIL CONTACT AT FILER (optional)
ffreeman@cpcdc.org

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Citizen Potawatomi Community Development Corp.
1545 Gordon Cooper Drive
Shawnee, Oklahoma 74801

2021040802033184
04/08/2021 10:42:29 AM Pgs: 3
Fee: $ 10.00
David B. Hooten, Oklahoma County Clerk
Oklahoma County - State of Oklahoma

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| ADA OUTDOORS, LLC | | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX | |
| | | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY | |
| 1030 W 12TH | ADA | OK | 74820 | USA | |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| BEAUCHAMP | NATHAN | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1030 W 12TH | ADA | OK | 74820 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Citizen Potawatomi Community Development Corporation | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1545 Gordon Cooper Drive | Shawnee | Ok | 74801 | |

4. COLLATERAL: This financing statement covers the following collateral:

PURCHASE MONEY INTEREST CLAIMED. Including but not limited to all business assets to include all inventory, furniture, fixtures, accounts receivables, equipment of whatever kind or nature, wherever located, now owned or hereafter acquired, and all returns, repossessions, exchanges, substitutions, replacements, attachments, parts, accessories, and accessions thereto and thereof and all proceeds thereof, (whether in the form of cash, instruments, chattel paper, general intangibles, accounts or otherwise). Including Purchase money claimed for: Purchase Order #136365 for 66,560 of 9mm pistol ammo and 55,000 556 rifle ammo described on attachment A

EXHIBIT 20

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**EXHIBIT 2**

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
ADA OUTDOORS, LLC

OR 9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME
SHAWNEE OUTDOORS, LLC

OR 10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 40960 Hardesty Rd | SHAWNEE | OK | 74801 | USA |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

| OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

**EXHIBIT 2**

International Association of Commercial Administrators (IACA)

ATTACHMENT A

**FARRIS BROTHERS, INC.**
24 RATCLIFF LANE

HATTIESBURG MS 39402
Phone: 601-264-8444

**PURCHASE ORDER**

**Vendor Copy**

| | |
|---|---|
| Number | 136365 |
| Date | 01/18/2021 |
| Page | 1 |

| Vendor | | Ship To | |
|---|---|---|---|
| ADA201 | ADA OUTDOORS<br>1030 W 12TH STREET<br>ADA, OK 74820 | 01 | FARRIS BROTHERS WAREHOUSE<br>24 RATCLIFF LANE<br>HATTIESBURG MS 39402 |

| Buyer | Terms | Ship Via | FOB | Freight | Ref# | Expected | Customer |
|---|---|---|---|---|---|---|---|
| DLH | NET ROG | | ADA | PREPAID | | 01/18/21 | |

| Vendor Item # | Item | Description | Units | UM | Cost | UM | Extension | LN# |
|---|---|---|---|---|---|---|---|---|
| 8605003811701 | PPH9F1 | PPU PISTOL AMMO<br>9mm FMJ 115gr 50bx | 66560 | EA | 21.00 | EA | 1397760.0 | 001 |
| 86050038122500 | PPN5560 | PPU RIFLE AMMO<br>556 NATO FMJ 55gr 20 | 55000 | EA | 11.20 | EA | 616000.00 | 002 |

| Amount | Tax | Freight | Total |
|---|---|---|---|
| 2013760.00 | .00 | .00 | 2013760.00 |

**EXHIBIT 2**

*AS SOON AS POSSIBLE!*

# PROMISSORY NOTE – Fixed or Variable Rate - Commercial

DATE OF NOTE
03/30/2023

| DEBTOR'S NAME(S) | LENDER'S NAME AND ADDRESS |
| --- | --- |
| Ada Outdoors, LLC<br>Shawnee Outdoors, LLC<br>Nathaniel O. Beauchamp | Citizen Potawatomi<br>Community Development Corporation<br>1545 Gordon Cooper Drive<br>Shawnee, Oklahoma 74801 |
| DEBTOR'S ADDRESS<br>1030 W 12th Street<br>Ada, OK 74820 | |

| NOTE NUMBER | FIXED INTEREST RATE PER ANNUM | MATURITY DATE | PRINCIPAL AMOUNT | SOCIAL SECURITY/TIN NUMBER: | |
| --- | --- | --- | --- | --- | --- |
| 8530 | 5.0% | 04/01/2024 | $2,330,204.05 | [redacted] | ☐ 360 DAY<br>☒ 365 DAY |

☐ NEW LOAN
☒ RENEWAL OF LOAN NUMBER(S) 8394
☐ FULLY ADVANCED ☐ MULTIPLE ADVANCES ☐ REVOLVING CREDIT

PURPOSE OF LOAN
To provide funding to the businesses herein described, for the renewal of loan #8394

COLLATERAL DESCRIPTION
All business assets to include all inventory, fixtures, accounts receivables, equipment; now owned or to be acquired by the business; 66,560 of 9mm pistol ammo and 55,000 556 rifle ammo and undeveloped R/E in Ada OK

PAYMENT TERMS
3 quarterly accrued interest payments beginning July 01, 2023 and quarterly thereafter with a final balloon payment of all unpaid principal, fees, and interest due on April 01, 2024. In addition to the interest payments there will be a principal payment from the sale and release of ammo.

Notwithstanding any provision to the contrary, the law of Citizen Potawatomi Nation will govern the construction and enforcement of this agreement. All parties understand and agree that Citizen Potawatomi Nation Tribal Court has jurisdiction to resolve any dispute under this agreement and the parties do hereby submit to the personal jurisdiction of, and waive any objection to venue in, the Citizen Potawatomi Nation Tribal Court for the resolution of any dispute arising out of this agreement.

PROMISE TO PAY. For value received, the undersigned Debtor, whether one or more, and jointly and severally if more than one, agrees to the terms of this Note and promises to pay to the order of the Lender named above at its place of business as indicated in this Note or at such other places as may be designated in writing by Lender, the Principal Amount of this Note together with interest on the unpaid Principal Amount until maturity at the per annum interest rate or rates stated above and according to the Payment Terms stated in this Note. Interest on this Note is calculated on the actual number of days elapsed on a basis of a 360 or 365 day year, as indicated above. For purposes of computing interest and determining the date principal and interest payments are received, all payments will be deemed made only when received in collected funds. Payments are applied first to accrued and unpaid interest and other charges, and then to unpaid Principal Amount. In this Note, "Debtor" includes any party liable under this Note, including endorsers, co-makers, guarantors and otherwise, and "Lender" includes all subsequent holders.

VARIABLE RATE. If this is a Variable Rate transaction as indicated above, the interest rate shall vary from time to time with changes (whether increases or decreases) in the Rate shown above. The interest rate on this Note will be the Index Rate plus a Margin, if any, as indicated above. Each change will become effective on the same date the Index Rate changes unless a different effective date is indicated above. If the Index Rate is Lender's base or prime rate, it is determined by Lender in its sole discretion, primarily on a basis of its cost of funds, is not necessarily the lowest rate Lender is charging its customers, and is not necessarily a published rate.

LATE PAYMENTS. When permitted by law, any principal and/or interest amount not paid within 5 calendar days after will be assessed 5.000% of the amount past due, as a late charge fee. In addition, any principal and/or interest not paid by the maturity date of this Note shall thereafter bear interest at the applicable rate stated in this Note. In no event shall the interest rate and related charges either before or after maturity be greater than permitted by law.

ALL PARTIES PRINCIPAL. All Debtors shall each be regarded as a principal and each Debtor agrees that any Debtor, with Lender's approval and without notice to any other Debtor, may from time to time renew this Note or consent to one or more extensions or deferrals of the Maturity Date for any term(s) or to any other modification(s), and all Debtors shall be liable in same manner as on the original Note.

ADVANCES AND PAYMENTS. If the Fully Advanced box is checked, then the Debtor acknowledges that the entire Principal Amount has been advanced to the Debtor or for Debtor's account or benefit. If the Multiple Advances box is checked, then the Debtor understands that the Lender will disburse the proceeds of this Note in increments, up to the Principal Amount, but that even if the Debtor prepays, the Debtor has no right to reborrow any amounts disbursed. The balance that the Debtor owes under this Note is the aggregate of all such disbursements, less any payments of principal made on this Note. Interest will accrue only on the actual amount of principal disbursed and outstanding from time to time. If the Revolving Credit box is checked, then the Debtor understands that the Lender will disburse the proceeds of this Note in Increments up to the Principal Amount and that the remaining terms of this paragraph shall apply to this Note. The balance that the Debtor owes under this Note is the aggregate of all such disbursements, less any payments of principal made on this Note. Interest will accrue only on the actual amount of principal disbursed and outstanding from time to time. If the Revolving Credit box is checked, then the Debtor understands that the Lender will disburse the proceeds of this Note in increments up to the Principal Amount and that the remaining terms of this paragraph shall apply to this Note. The balance that the Debtor owes under this Note is the aggregate of all such disbursements, less any payments of principal made on this Note. The Debtor understands that the maximum amount of all such advances outstanding at any one time cannot exceed the Principal Amount, but that the Debtor may repay and reborrow up to the Principal Amount during the term of this Note. If the aggregate outstanding amount advanced under this Note ever exceeds the Principal Amount, then the Debtor will repay the excess upon demand, plus interest on the excess. There may be times when no principal is outstanding on this Note, but this Note and any collateral securing this Note remain valid and effective as to future advances under this Note. Any loans or advances the Lender makes to the Debtor or for the Debtor's account or benefit are presumed to be made under the terms of this Note. The Lender may make advances under this Note at the oral or written request of any person designated or authorized by the Debtor until the Debtor revokes such designation or authorization in writing received by the Lender, provided that the Lender has the right, but is not obligated, to require written authorization from the Debtor prior to honoring any oral request. Interest will accrue only on the actual amount of principal disbursed and outstanding from time to time.

PREPAYMENT. Debtor shall have the right to prepay all or any part of the principal due under this Note at any time, subject to the following conditions: (a) all interest must be paid through the date or any prepayment; (b) if this Note provides for monthly or other periodic payments, there will be no changes in the due dates or amounts following any partial prepayments unless Lender agrees to such changes in writing; (c) upon prepayment, in whole or in part, Lender may charge and Debtor agrees to pay a fee or premium calculated as follows (this fee/premium provision will not apply if prohibited by applicable law):

COLLATERAL. This Note and all other obligations of Debtor to Lender, including renewals and extensions, are secured by all collateral securing this Note and by all other security interests and mortgages previously or later granted to Lender and by all money, deposits and other property owned by any Debtor and in Lender's possession or control.

ACCELERATION. At option of Lender, the unpaid balance of this Note and all other obligations of Debtor to Lender, whether direct or indirect, absolute or contingent, now existing or later arising, shall become immediately due and payable without notice or demand, upon or after the occurrence or existence of any of the following events or conditions: (a) Any payment required by this Note or by any other note or obligation of Debtor to Lender or to others is not made when due, or any event or condition occurs or exists which results in acceleration of the maturity of any Debtor's obligation to Lender or to others under any promissory note, agreement or undertaking; (b) Debtor defaults in performing any covenant, obligation, warranty or provision contained in any loan agreement or in any instrument or document securing or relating to this Note or any other note or obligation of Debtor to Lender or to others; (c) any warranty, representation, financial information or statement made or furnished to Lender by or on behalf of Debtor proves to have been false in any material respect when made or furnished; (d) any levy, seizure, garnishment or attachment is made against any asset of any Debtor, (e) Lender determines, at any time and in Lender's sole discretion, that the prospect of payment of this Note is impaired; (f) whenever, Lender's sole judgment, the collateral for the debt evidenced by this Note becomes unsatisfactory or insufficient either in character or value and, upon request, Debtor fails to provide additional collateral as required by Lender; (g) all or any part of the collateral for the debt evidenced by this Note lost, stolen, substantially damaged or destroyed; (h) death, incompetency, insolvency, dissolution, or, change in ownership or senior management, or termination of existence of any Debtor; or (i) a receiver is appointed over all or part of any Debtor's property, or any Debtor makes an assignment for the benefit of creditors, files For relief under any bankruptcy or insolvency laws, or becomes subject to all involuntary proceeding under such laws.

RIGHT OF OFFSET. Except as otherwise restricted by law, any indebtedness due from Lender to Debtor, including, without limitation, any deposits or credit balances due from Lender, is pledged to secure payment or this Note and any other obligation to Lender of Debtor, and may at any time while the whole or any art of such obligation(s) remain(s) unpaid, either before or after maturity of this Note, be set off, appropriated, held or applied toward the payment of this Note, be set off, appropriated, held or applied toward the payment of this Note or any other obligation to Lender by any Debtor.

ADDITIONAL PROVISIONS. (1) Limitations on Suit – Liability for damages which the Citizen Potawatomi Community Development Corporation may be found responsible must arise solely pursuant to this Agreement and shall be strictly limited to only the principal amount of the loan, the Corporation's equity interest in the Debtor's enterprise, or the Corporation's security interest in Obligor's property (whichever is greater), and such recovery, if any, shall be exclusively limited to only the assets of the Corporation. (2)Debtor a agrees, if requested, to furnish to. Lender copies of income tax returns as well, as balance sheets and income statements for each fiscal year following Date of Note and at more frequent disburse the proceeds of this Note in increments up to the Principal Amount and intervals as Lender may require. (3) No waiver by Lender of any payment or other right under this Note or any related agreement or documentation shall operate as a waiver of any other payment or right. All Debtors waive presentment, notice of acceleration, notice of dishonor and protest and consent to substitutions, releases and failure to perfect as to collateral and to additions or releases of any Debtor. (4) This Note and the obligations evidenced by it are to be construed and governed by the laws of the state indicated in Lender's address shown in this Note. (5) All Debtors, agree to pay costs of collection including, as allowed by law, an attorney's fee equal to a minimum of 15% of all sums due upon default or such other maximum fee as allowed by law. (6) All parties signing below acknowledge receiving a completed copy of this Note and related documents, which contain the complete and entire agreement between Lender and any party liable for payment under this Note. No variation, condition, modification, change, amendment, extension or renewal (collectively referred to as a "Revision") of this Note or related documents shall be binding unless in writing and signed by Lender and Debtor. If there is more than one Debtor, any Debtor may agree to a Revision of this Note and/or related documents, and all Debtors agree to be bound by such Revision. No legal relationship is created by the execution of this Note and related documents except that of debtor and creditor or as stated in writing.

DEBTOR'S SIGNATURE(S)

| | |
| --- | --- |
| Nathaniel O. Beauchamp, Managing Member | Nathaniel O. Beauchamp, Individual |
| Nathaniel O. Beauchamp, Managing Member | Nathaniel O. Beauchamp, Individual |

EXHIBIT 2

EXHIBIT 21

WHEN RECORDED, RETURN TO:
Citizen Potawatomi Community Development Corporation
1545 S. Gordon Cooper Drive
Shawnee, Oklahoma 74801

# MODIFICATION OF MORTGAGE (No New Money)

THIS MODIFICATION OF MORTGAGE ("Modification") is dated March 30, 2023 between:

Ada Outdoors, LLC, an Oklahoma Limited Liability Company

(referred to below as "Mortgagor"), whose address is 1030 W 12th Street Ada OK 74820;

and Citizen Potawatomi Community Development Corporation (referred to below as "Mortgagee") whose address is 1545 Gordon Cooper Drive Shawnee OK 74801.

MORTGAGE. Mortgagor and Mortgagee have previously entered into a mortgage dated 06/25/2018 and recorded in the County Clerk's office of Pontotoc County, State of Oklahoma in Book 3226, Page 125-126

And modifications of the mortgage, if any, dated and recorded as follows:

| Date | County and State of Recording | Book Number | Page Number(s) |
|---|---|---|---|

*The mortgage and any previous modifications described above are collectively referred to as the "Mortgage."*

REAL PROPERTY DESCRIPTION. The Mortgage covers the following described real property, buildings, improvements and fixtures located in Pontoloc County, State of Oklahoma (the "Mortgaged Property"):

A part of the SW/4 of Section 5, Township 3 North, Range 6 East of the Indian Base and Meridian, Pontotoc County, Oklahoma, described as follows: Commencing at the Southeast Corner of the SW/4 of SE/4 of SW/4 of said Section 5; thence S 89°16'21" W along the South line thereof a distance of 376.56 feet to the point of beginning; thence continuing S 89°16'21" W along said South line a distance of 276.06 feet to a point on the East right-of-way line of State Highway 1; thence N 00°22'51" E along and with said East right-of-way line a distance of 239.62 feet; thence continuing along and with said East right-of-way line on a curve to the left, said curve having a radius of 2034.86 feet which a chord bearing N 02°27'47" W and a chord length of 201.97 feet, an arc distance of 202.05 feet; thence N 89°16'54" E a distance of 280.56 feet; thence S 00°20'06" E a distance of 441.62 feet to the point of beginning.

The address of the Mortgaged Property is: __________

MODIFICATION. The Mortgagor and Mortgagee agree to modify the Mortgage, in addition to any previous modifications stated above, as follows:
Renewal of loan #8351 and 8394 in the principal amount of $2,330,304.05 with a maturity date of 04/01/2023 with no new money.

CONTINUING VALIDITY. The terms of the Mortgage shall remain unchanged and in full force and effect, except as expressly modified above. Mortgagee's consent to this Modification does not waive Mortgagee's right to require strict performance of the Mortgage as modified above nor obligate Mortgagee to agree to any future modifications. Nothing in this Modification shall be construed as satisfaction of the Promissory Note or other credit agreement secured by the Mortgage (the "Note"). The indebtedness of the Mortgagor to the Mortgagee evidenced by the Note is a continuing indebtedness and the security interest created by the Mortgage is a continuing security interest. Nothing contained in this Modification shall be interpreted to mean any outstanding balance owing under the Note is paid or any security interest created by the Mortgage is released or terminated. The Mortgagee intends to retain as liable all parties to the Mortgage and all parties, makers and endorsers to the Note, unless a party is expressly released by Mortgagee in writing. If a person who signed the Mortgage does not sign this Modification, then all persons signing below acknowledge and agree that this Modification is given conditionally, based on the representation to the Mortgagee that the non-signing person consents to the changes and provisions of this Modification and will not be released by it.

EACH MORTGAGOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF MORTGAGE, AND EACH MORTGAGOR AGREES TO ITS TERMS.

SIGNATURE(S) AND ACKNOWLEDGEMENT

| MORTGAGEE NAME AND ADDRESS | MORTGAGOR(S) SIGNATURE(S) | |
|---|---|---|
| By: | Nathan O Beauchamp, Managing Member of Ada Outdoors, LLC | |

ACKNOWLEDGEMENT FOR INDIVIDUAL ACTING IN HIS OR HER OWN RIGHT OR REPRESENTING A CORPORATION, PARTNERSHIP, ETC.

*STATE OF OKLAHOMA*
COUNTY OF Pottawatomie } SS.

The foregoing instrument was acknowledged before me on this ______ day of ______ by Nathan O Beauchamp, Managing Member of Ada Outdoors, LLC

My Commission Expires: ______ ______
*NOTARY PUBLIC*

EXHIBIT 22

EXHIBIT 2

# SECURITY AGREEMENT

DATE OF NOTE
03/30/2023

| DEBTOR'S NAME(S) | SECURED PARTY'S NAME AND ADDRESS |
|---|---|
| Ada Outdoors, LLC<br>Shawnee Outdoors, LLC<br>Nathaniel O. Beauchamp | Citizen Potawatomi Community Development Corporation<br>1545 Gordon Cooper Drive<br>Shawnee, Oklahoma 74801 |
| **DEBTOR'S ADDRESS** | |
| 1030 W 12th Street<br>Ada, OK 74820 | |

I. GRANT OF SECURITY INTEREST. For value received, the undersigned (referred to as "Debtor" whether one or more) grants to Secured Party named above a security interest in the Collateral described below to secure the payment of the "Indebtedness" (as defined below) and performance of all Debtor's obligations and agreements in this Agreement or other documents evidencing the Indebtedness. For purposes of this Agreement, any term used in the Uniform Commercial Code, as adopted and revised from time to time in the State of Oklahoma and/or Citizen Potawatomi Nation ("UCC"), and not defined in this Agreement has the meaning given to the term in the UCC. Debtor's location (if other than the address reflected above) is in the state of <u>OK</u>.

II. DESCRIPTION OF COLLATERAL. The "Collateral" shall include:

PURCHASE MONEY INTEREST CLAIMED. Including but not limited to all business assets to include all inventory, furniture, fixtures, accounts receivables, equipment of whatever kind or nature, wherever located, now owned or hereafter acquired, and all returns, repossessions, exchanges, substitutions, replacements, attachments, parts, accessories, and accessions thereto and thereof and all proceeds thereof, (whether in the form of cash, instruments, chattel paper, general intangibles, accounts or otherwise). 66,560 of 9mm pistol ammo and 55,000 556 rifle ammo and undeveloped R/E in Ada Oklahoma.

The term "Collateral" also includes to the extent not listed above as original collateral:

(1) <u>After-Acquired Property.</u> After-acquired property; provided, however, the security interest will not attach to (a) consumer goods, other than an accession when given as additional security, unless the Debtor acquires rights in them within 10 days after the Secured Party gives value; or (b) a commercial tort claim.

(2) <u>Proceeds.</u> Proceeds, products, additions, substitutions and accessions of the Collateral.

(3) <u>Deposits.</u> Unless prohibited by law, any property (excluding Individual Retirement Accounts and other qualified retirement accounts), tangible or intangible, in possession of Secured Party at any time during the term of this Agreement, or any indebtedness due from Secured Party to Debtor and any deposit or credit balances due front Secured Party to Debtor, and Secured Party may at any nine while the whole or any part of die Indebtedness remains unpaid, whether before or after <u>maturity thereof, be appropriated, held or applied</u> toward payment of die Indebtedness or any obligation of Debtor to Secured Party

III. SECURED INDEBTEDNESS. The security interest granted under this Agreement secures the following (referred to as the "Indebtedness"): (1) the performance of all of the agreements, obligations, covenants and warranties of Debtor as set forth in this Agreement or any other agreement between Debtor and Secured Party; (2) all liabilities of Debtor to Secured Party of every kind and description, including (a) all promissory notes given front Debtor to Secured Party, (b) all future advances front Secured Party to Debtor, whether in the form of a loan for a similar or different purpose than any other loan to Debtor, (c) Debtor's overdrafts, whether business or personal, (d) direct or indirect liabilities, (e) liabilities due or to become due and whether absolute or contingent, and (f) liabilities now existing or hereafter arising and however evidenced; (3) all extensions, renewals and deferrals of liabilities of Debtor to Secured Party for any term or terms, to which the undersigned hereby consents; (4) all interest and other finance charges due or to become due on the liabilities of Debtor to Secured Party; (5) All expenditures by Secured Party involving the performance or enforcement of Debtor's obligations, agreements, covenants and warranties under this Agreement or any other agreement between Debtor and Secured Party; and (6) All costs, attorneys' fees and other expenditures of Secured Party in the collection alld enforcement of any obligation or liability of Debtor to Secured Party and in the collection and enforcement, sale or other liquidation of any of the Collateral.

IV. GENERAL PROVISIONS.

1. <u>GOVERNING LAW.</u> Notwithstanding any provision to the contrary, the law of Citizen Potawatomi Nation will govern the construction and enforcement of this agreement. All parties understand and agree that Citizen Potawatomi Nation Tribal Court has jurisdiction to resolve any dispute under this agreement and the parties do hereby submit to the personal jurisdiction of, and waive any objection to venue in, the Citizen Potawatomi Nation Tribal Court for the resolution of any dispute arising out of this agreement.

2. <u>WAIVERS.</u> No act, delay or omission, including Secured Party's written express waiver of a remedy after any default under this Agreement, shall constitute a waiver of any of Secured Party's rights and remedies not expressly waived in writing under this Agreement or any other agreement between the parties. All of Secured Party's rights and remedies are cumulative and may be exercised singly or concurrently. The waiver or exercise of any one or more rights or remedies will not be a waiver or a bar to the exercise of any other rights or remedies upon ally subsequent default. No waiver, change, modification or discharge of any of Secured Party's rights or remedies or Debtor's duties as specified or allowed by this Agreement will be effective unless in writing and signed by a duly authorized officer of Secured Party. Acceptance of any partial or late payment shall not constitute a waiver of any requirement of this Agreement or impose any additional notification duties upon Secured Party. Debtor and all other signers, including guarantors, waive presentment, notice of dishonor and protest, notice of default, notice of intention to accelerate and notice of acceleration and consent to any and all extensions of time for any term or terms regarding payment due, partial payments, or renewals before or after maturity. Debtor and all other signers, including guarantors, further consent to substitution, impairment, release or nonperfection with regard to the Collateral, and the addition or release of or agreement not to sue any party or guarantor.

3. <u>AGREEMENT BINDING ON ASSIGNS.</u> This Agreement inures to the benefit of Secured Party's successors and assigns, and is binding upon Debtor's heirs, executors, administrators, representatives, successors and permitted assigns (and all persons who become bound as a debtor to this Security Agreement), but no person taking front or representing Debtor has any right to advances under any instrument or document secured by this Agreement.

4. <u>CHANGES IN TERMS.</u> Secured Party reserves the right to change ally of the terms of this Agreement in accordance with applicable law and the provisions of this Agreement.

5. <u>TERM OF AGREEMENT.</u> This Agreement, and the security interest created by this Agreement, will remain in force until all of the Indebtedness is paid in full. unless the security interest created by this Agreement is earlier released by Secured Party in writing.

6. <u>RIGHTS OF SECURED PARTY ASSIGNABLE.</u> Secured Party, at any time and at its option, may pledge, transfer or assign its rights under this Agreement in whole or in part, and any transferee or assignee shall have all Secured Party's rights or the parts of them so pledged, transferred or assigned. Debtor's rights under this Agreement or in the Collateral may not be assigned without Secured Party's prior written consent.

7. <u>JOINT AND SEVERAL RESPONSIBILITY OF DEBTOR AND SURETIES.</u> The responsibilities of Debtor and any co-debtor, guarantor, surety or accommodation party under this Agreement are joint and several, and the references to Debtor in this Agreement shall be deemed to refer to each such person, including any person who pledges Collateral even if such pledgor is not otherwise liable under any promissory note, guaranty or other instrument secured by this Agreement.

8. <u>SEPARABILITY OF PROVISIONS.</u> If any provision of this Agreement shall for any reason be held invalid or unenforceable such invalidity or unenforceability shall not affect any other provision of this Agreement, and this Agreement shall be construed as if such invalid or unenforceable provision had never existed.

9. <u>ENTIRE AGREEMENT.</u> This Agreement, together with any mortgage of real estate which may be Collateral, constitutes the entire agreement between the parties with respect to the subjects addressed herein. This Agreement may be amended or modified only by a writing signed by Secured Party specifying that it is a modification, amendment or addition to this Agreement.

V. EVENTS OF DEFAULT. Debtor shall be in default under this Agreement upon the happening of any one or more of the following events or conditions, called "Events of Default" in this Agreement:

1. If any warranty, covenant, agreement, representation, financial information or statement made or furnished to Secured Party by Debtor, any guarantor or surety, or otherwise on Debtor's behalf to induce Secured Party to enter into this Agreement, or in conjunction with it, is violated or proves to have been false in any material respect when made or furnished
2. If any payment required in this Agreement or under any other agreement or obligation of Debtor to Secured Party or to others is not made when due or in accordance with the terms of the applicable contract.
3. If Debtor defaults in the performance of any covenant, obligation, warranty, or provision contained in this Agreement or any other agreement, mortgage or obligation of Debtor to Secured Party or to others, including without limitation Debtor's failure to insure the Collateral or unlawful use of tile Collateral,
4. If any event or condition exists or occurs which results in acceleration of the maturity of ally obligation of Debtor to Secured Party or to oters under any note, mortgage, indenture, agreement, or undertaking.
5. If anyone makes any levy against or seizes, garnishes or attaches any of the Collateral; if Debtor consensually encumbers any of the Collateral; or if Debtor sells, leases, or otherwise disposes of any of the Collateral without Secured Party's prior written consent as required by this Agreement or ally mortgage executed in connection with this Agreement.
6. If the Collateral is lost, stolen, substantially damaged or destroyed.
7. If, in Secured Party's judgment, the Collateral becomes unsatisfactory or insufficient in character or value, and upon request Debtor fails to provide additional Collateral as required by Secured Party.
8. If at any time Secured Party, in its sole discretion, believes the prospect of payment or performance of any duty, covenant, warranty or obligation secured by this Agreement is impaired.
9. If Debtor or any guarantor or surety dies, dissolves, terminates existence, or becomes insolvent; if a receiver is appointed over any part of Debtor's property or any part of the Collateral; if Debtor makes an assignment for the benefit of creditors; or if any proceeding is commenced under ally bankruptcy or insolvency law by or against Debtor or any guarantor or surety for Debtor,
10. If the Collateral is removed from the location specified in this Agreement or in a separate notice to Secured Party without Secured Party's prior written consent. except for temporary periods in the normal and customary use of the Collateral
11. Secured Party shall receive at any time following the Closing a filing office report indicating that Secured Party's security interest is not prior to all other security interests or other interests reflected in the report.

VI. ADDITIONAL PROVISIONS. The undersigned specifically agree to all of the "Additional Provisions" on the reverse side of this Agreement.

| SECURED PARTY'S SIGNATURE | DEBTOR'S SIGNATURE(S) | |
|---|---|---|
| Citizen Potawatomi Community Development Corporation | Nathaniel O. Beauchamp, Managing Member | Nathaniel O. Beauchamp, Individual |
| | Nathaniel O. Beauchamp, Managing Member | Nathaniel O. Beauchamp, Individual |
| Robert L. Crothers, Commercial Loan Officer | | |

EXHIBIT 23

EXHIBIT 2

# ADDITIONAL PROVISIONS

DEBTOR EXPRESSLY REPRESENTS, WARRANTS, COVENANTS AND AGREES:

## REPRESENTATIONS, WARRANTIES AND COVENANTS

1. FINANCIAL INFORMATION. All applications, balance sheets, earnings statements and other financial information and representations which have been, or may later be, furnished to Secured Party to induce it to enter into or continue a financial transaction with Debtor fairly represent Debtor's financial condition as of the date and for the period shown in such documents. All information furnished to Secured Party at any time and in any form is, or shall be at the time furnished, true and accurate in all material respects and sufficiently complete to give Secured Party full knowledge of the subject matter. Debtor will provide to Secured Party annually, or more frequently if Secured Party so elects, such financial information about Debtor's affairs as Secured Party may reasonably request. Debtor's financial condition has not changed materially since the effective date of the last furnished financial information except as Debtor has reported to Secured Party in writing.

2. INFORMATION ON COLLATERAL. Debtor will furnish to Secured Party information adequate to identify all Collateral, in a form and at such times as Secured Party may request. Debtor also will deliver to Secured Party, upon request, true copies of purchase orders, shipping, delivery and warehouse receipts, and invoices evidencing and describing the Collateral, as well as true copies of all contracts to furnish goods or services to Debtor's customers. Debtor will execute such documents as Secured Party may require to evidence, perfect and record Secured Party's security interest granted by this Agreement and enable Secured Party to receive proceeds and distributions from or interest in the Collateral.

3. OWNERSHIP FREE OF ENCUMBRANCES. Except for the security interest granted by this Agreement or by a mortgage executed in connection to this Agreement, and except for any security interest previously disclosed in writing to Secured Party, Debtor now owns, or will use the proceeds of the advances secured by this Agreement to become the owner of the Collateral (or has rights in or the power to transfer the Collateral) free from any prior liens, security interests or encumbrances. Debtor warrants title to and will defend the Collateral against all claims and demands of persons claiming any interest in the Collateral adverse to Secured Party. Debtor will not permit any liens or security interests other than Secured Party's security interest to attach to any of the Collateral, and will not permit the Collateral to be levied upon, garnished or attached under any legal process, or permit any other thing to be done that may impair the value of the Collateral or the security interest granted to Secured Party by Debtor.

4. FINANCING STATEMENTS. No Financing Statement or Lien Entry Form covering the Collateral is on file in any public office except in connection with this Agreement. Debtor agrees to join with Secured Party in executing one or more Lien Entry Forms, Financing Statements, or Effective Financing Statements in form satisfactory to Secured Party and provide such other documents as may be required from time to time in order to evidence, perfect or continue perfection, or record the security interest granted in this Agreement. Debtor hereby authorizes and grants to Secured Party a power of attorney to execute such documents on Debtor's behalf. A carbon, photographic or other reproduction of this Agreement or of any Financing Statement is sufficient as a Financing Statement.

5. LOCATION OF COLLATERAL, RECORDS, INVENTORY AND EQUIPMENT. Debtor will give Secured Party written notice of each office or location at which the Collateral and Debtor's records pertaining to the Collateral are kept. Debtor shall not be required to give such notice if all Collateral and Debtor's records pertaining to the Collateral are and shall be kept at Debtor's address shown on the face of this Agreement, and if such address is Debtor's chief executive office. Debtor will notify Secured Party in writing of any proposed change in any of the offices or locations of the Collateral, prior to the proposed effective date of such change. Debtor will not remove or permit removal of any of the Collateral from the location specified in this Agreement without Secured Party's prior written consent, except as otherwise provided in this Agreement, and such removal shall be considered an Event of Default under this Agreement.

6. SALE, LEASE OR DISPOSITION OF COLLATERAL PROHIBITED. Debtor shall not sell, mortgage, transfer, exchange, lease, hypothecate, assign, license, grant any other security interest or otherwise dispose of all or any part of the Collateral or Debtor's rights in it without first obtaining Secured Party's written consent. Secured Party's consent may be conditioned upon any requirements (including, but not limited to, the application of proceeds to obligations secured by this Agreement) which Secured Party deems to be for the protection of its security interest. Secured Party's consent will not be deemed to be effective unless and until such requirements and conditions have been fulfilled. Neither Debtor's grant of a security interest in the proceeds of the Collateral nor any requirement that Debtor furnish a Statement concerning farm products, if applicable, shall be construed to mean that Secured Party consents to sale or any other disposition of the Collateral.

7. MAINTENANCE AND INSPECTION. Debtor, at its own expense, shall (a) keep the Collateral in good condition and repair so that its value and operating efficiency shall be maintained and preserved; (b) not permit the Collateral to be misused, abused, wasted or allowed to deteriorate, except for the ordinary wear and tear of its intended primary use; (c) prudently protect the Collateral from the elements; and (d) use the Collateral lawfully and not permit its illegal use or its use in a manner not permitted or covered by the insurance on the Collateral required by this Agreement. Debtor shall comply promptly with all requirements of any governmental agency affecting the Collateral and, upon Secured Party's request, deliver to Secured Party evidence of such compliance. Debtor shall at all times keep accurate and complete books and records of transactions and information relating to the Collateral. Debtor grants to Secured Party the right and privilege of making such inspections of the Collateral and Debtor's books and records relating to it as Secured Party deems necessary, and making or causing an audit or verification of such books and records, at any time and from time to time, including contacting Debtor's customers or suppliers in connection with such audit or verification. Debtor agrees to assist Secured Party in facilitating such audits, verifications and inspections.

8. TAXES AND FEES. Debtor shall pay promptly any and all taxes, assessments and license fees with respect to the Collateral or use of the Collateral when the same shall become due. If the Collateral is on or affixed to realty owned by Debtor, Debtor shall make all such payments with respect to the realty when they are due.

9. AFFIXING TO REAL OR PERSONAL PROPERTY PROHIBITED. Unless Debtor has also granted Secured Party a first priority mortgage in the Collateral Debtor shall not permit any of the Collateral which is personal property to become an accession or to other personal property or become attached or affixed to real property without first obtaining Secured Party's written consent. Secured Party's consent may be conditioned upon any requirements (including, but not limited to, the subrogation of other interest owners in and to such other personal or real property to Secured Party's rights and interest in the Collateral) which Secured Party deems to be for the protection of its security interest. Secured Party's consent will not be deemed to be effective unless and until such requirements and conditions have been fulfilled.

10. INSURANCE ON THE COLLATERAL. While any of the Indebtedness remains outstanding and throughout the full term of this Agreement Debtor shall maintain and pay for insurance on all Collateral, wherever located, including but not limited to storage facilities or in transit in vehicles, including goods evidenced by documents. Such insurance shall be purchased through any person of Debtor's choice, with companies acceptable to Secured Party, against such casualties, hazards, public liabilities and other risks, and in such amounts as prudent and adequate to protect Secured Party or as Secured Party shall require. All insurance policies, except for vendor's single interest insurance, or certified copies of such policies evidencing the insurance coverage shall be furnished to Secured Party within 10 days of the date of this Agreement. All policies of insurance shall provide for at least 10 days' prior written notice to Secured Party of cancellation. Secured Party may act as Debtor's attorney-in-fact, with power of attorney to procure insurance, make, adjust, and settle claims under or cancel such insurance, and endorse Debtor's name on any drafts or checks drawn by insurers of the Collateral. Provided, however, Secured Party is under no obligation and has no duty to procure insurance, pay premiums, make, adjust or settle claims with respect to any insurance or to cancel any insurance required by this Agreement. Debtor assigns to Secured Party any returned or unearned premiums which may be due upon cancellation of any such policies for any reason whatsoever, and directs insurers to pay Secured Party any amounts so due. Any balance of insurance proceeds remaining after payment in full of all amounts secured by this Agreement shall be paid to Debtor.

11. EXPENDITURES BY SECURED PARTY. At its option, and after any written notice to Debtor required by law, Secured Party may, but is not obligated to, discharge taxes, liens, security interests or other encumbrances on the Collateral, or pay for: (a) the repair of any damage to the Collateral, (b) anything necessary to maintain and preserve the Collateral, and (c) insurance on the Collateral. Debtor shall be liable and agrees to reimburse Secured Party promptly for all such expenditures, and for all costs, attorney fees and other disbursements made by Secured Party in connection with this paragraph. In addition, Debtor shall be liable and agrees to reimburse Secured Party promptly for all costs, attorney fees and other disbursements made by Secured Party as allowed by law or provided for in this Agreement in enforcing or collecting any note, warranty, or liability of Debtor to Secured Party, or in realizing upon, enforcing or collecting any account, promissory note, chattel paper, instrument, document or other collateral of Debtor's in which Secured Party has a security interest. Until Debtor reimburses Secured Party for the amounts provided in this paragraph, such amounts shall be considered part of Debtor's liability to Secured Party which is secured by any security agreement executed by Debtor, in Secured Party's favor, including this Agreement, unless such security would cause Secured Party to be in violation of a right of rescission or a restriction on security interests. In which case, to that extent, such amounts will not be secured. The amount of Debtor's liability under this paragraph shall be subject to accrual of interest at a rate not exceeding the annual percentage rate ("APR") or interest rate provided in the instrument secured by this Agreement. Any notice required in connection with this paragraph shall be sufficient if given at Debtor's address set forth in this Agreement by (a) mailing the notice at least 10 days before, or (b) delivering the notice at least 5 days before the commencement of the performance of the duties specified in the notice.

12. POSSESSION. Debtor shall have possession of the Collateral, except where expressly otherwise provided in this Agreement or where Secured Party chooses to perfect its security interest by possession in addition to the filing of a financing statement. Where Collateral is in the possession of a third party, Debtor will join with Secured Party in notifying the third party of Secured Party's security interest and obtaining an acknowledgment from the third party that it is holding the Collateral for the benefit of Secured Party.

13. CONTROL. Debtor will cooperate with Secured Party in obtaining control with respect to Collateral consisting of: deposit accounts; investment property; letter-of-credit rights; electronic chattel paper.

14. CHATTEL PAPER. If the Collateral includes chattel paper, Debtor will not create any chattel paper without placing a legend on the chattel paper acceptable to Secured Party indicating that Secured Party has a security interest in the chattel paper.

15. PURCHASE MONEY SECURITY INTEREST. To the extent Debtor uses the Indebtedness to purchase Collateral, Debtor's repayment of the Indebtedness shall apply on a "first-in-first-out" basis so that the portion of the Indebtedness used to purchase a particular item of Collateral shall be paid in the chronological order the Debtor purchased the Collateral.

16. DEBTOR'S NAME AND LOCATION. Debtor's exact legal name is as set forth on the reverse side of this Agreement. If Debtor is an individual, Debtor's principal residence is at Debtor's address as set forth herein. If Debtor is an entity other than an individual, Debtor's location (i.e., place of business, chief executive office or state of organization, as the case may be) is in the state indicated on Debtor's address or as otherwise set forth on the reverse side of this Agreement. Until the Indebtedness is paid in full, Debtor agrees that it will not change its location (for example, its state of incorporation) or its legal name without providing Secured Party 30 days' prior written notice.

17. DEBTOR'S COOPERATION. In addition to Debtor's other obligations and Agreements in this Agreement, and Secured Party's remedies, Debtor agrees and promises to do all acts which Secured Party deems reasonable or necessary to preserve or protect the Collateral, including, without limitation, the following:

(a) FARM PRODUCTS. If the Collateral includes "farm products," Debtor agrees to execute and deliver to Secured Party an "Effective Financing Statement" containing all information required by law. Debtor also agrees to furnish to the Secured Party a list of the names and addresses of the buyers, commission merchants, and selling agents to or through whom Debtor may sell the farm products and agrees to keep such list current. Secured Party may inform persons on such list and others of Secured Party's security interest in the farm products. If any of the farm products are sold to or through any person or entity not on the list, Debtor may be subject to a fine unless Secured Party was notified in writing at least 7 days prior to such sale, or unless all sale proceeds are remitted to Secured Party within 10 days after such sale. Debtor agrees that before accepting an instrument in payment for farm products other than livestock, Debtor will execute a certificate containing, in addition to all information required by law, the name of Secured Party and a statement that Secured Party holds a security interest in the farm products listed on the certificate.

(b) LIVESTOCK. In addition to the provisions of this Agreement relating to farm products, if the Collateral includes livestock, to the extent Secured Party deems it necessary to preserve the Collateral, and upon Secured Party's demand, with an appropriate credit for its value, Debtor will make available to Secured Party all feed, both hay and grain, and all equipment owned by Debtor and used in the feeding and handling of the livestock. Debtor will cooperate with Secured Party and use Debtor's best efforts to allow Secured Party use of all Debtor's right, title and interest in and to all water privileges, all other equipment used in the feeding and handling of the livestock, and all contracts and leases covering lands for pasture and grazing.

(c) CHATTEL PAPER, ACCOUNTS, INSTRUMENTS, DOCUMENTS, SECURITIES and NOTES. If the Collateral becomes evidenced by chattel paper, accounts, instruments, documents, shares of stock or other securities, promissory notes, trade acceptances, or other instruments in writing, or if Debtor receives stock rights, rights to subscribe, dividends of any kind or character (including liquidating dividends), new securities, cash, interest, or any other property by reason of ownership of the Collateral, the Collateral shall include all such property and, unless Secured Party provides otherwise, Debtor immediately shall deliver and pledge the same to Secured Party, appropriately assigned or endorsed to Secured Party's order. [illegible]

(d) CASH AND OTHER REMITTANCES. Upon demand of and as specified by Secured Party, when Debtor receives any checks, trade acceptances, drafts, cash, or other remittances, in payment of accounts or other Collateral or as proceeds of inventory or other Collateral, Debtor shall apply the same directly to Debtor's liability to Secured Party, or deposit the same in a special account [illegible]

(e) PROCEEDS. Whenever the sale, exchange, or other disposition of inventory or other Collateral gives rise to an account, chattel paper, instrument, or general intangible for the payment of money ("proceeds" for purposes of this paragraph), Debtor, as required by Secured Party, shall notify Secured Party promptly of the disposition of such inventory or other Collateral and any resulting proceeds. [illegible]

(f) FEDERAL ASSIGNMENT OF CLAIMS ACT. If the Collateral includes accounts or other receivables with a face value over $1,000, and which arise out of a contract with the United States of America or any of its departments, agencies, subdivisions or instrumentalities, Debtor shall notify Secured Party promptly in writing of that fact. Debtor shall execute any instruments and take any other action Secured Party requires or requests to perfect Secured Party's security interest in such accounts under the provisions of the Federal Assignment of Claims Act.

## REMEDIES

Limitations on Suit – Liability for damages which the Citizen Potawatomi Community Development Corporation may be found responsible must arise solely pursuant to this Agreement and shall be strictly limited to only the principal amount of the loan, the Corporation's equity interest in the Debtor's enterprise, or the Corporation's security interest in Obligor's property (whichever is greater), and such recovery, if any, shall be exclusively limited to only the assets of the Corporation.

Upon the occurrence of an Event of Default, and at any time thereafter, Secured Party may, except as otherwise provided by law, at its option and without notice or demand to Debtor, exercise any and all rights and remedies provided by the UCC, as well as all other rights and remedies Secured Party possesses, including but not limited to the right to:

1. Declare all liabilities secured by this Agreement immediately due and payable, and/or proceed to enforce payment and performance of all such liabilities, provided that upon any prepayment in full of the unpaid balance of such liabilities, Debtor shall be entitled to a rebate of any unearned portion of any finance or other charge in accordance with law.

2. Require Debtor to assemble the Collateral or evidence of the Collateral and make it available to Secured Party at a place Secured Party designates which is reasonably convenient to both parties. Debtor shall be responsible for any expenses and damages if Debtor wrongfully damages the Collateral or if, after default and demand in accordance with law and this Agreement, Debtor wrongfully fails to make the Collateral available to Secured Party. All such expenses and damages are secured by Secured Party's security interest in the Collateral granted by this Agreement.

3. Repossess the Collateral, and for this purpose Secured Party is granted authority to enter into and upon any premises on which any part of the Collateral may be situated and remove it. Debtor waives any claim in connection with or arising from an entry peaceably made in connection with a repossession. Debtor authorizes Secured Party or its independent contractors to take possession of and hold any property located in or temporarily attached to the Collateral. If Debtor has not reclaimed such property within 10 days after notice of its taking and location is sent to Debtor, such property may be sold and the proceeds applied to expenses and other amounts due from Debtor to Secured Party. Any balance of such proceeds remaining after payment in full of all amounts secured by this Agreement shall be paid to Debtor.

4. Possess all books and records evidencing or pertaining to the Collateral and any personal property in or associated with the Collateral, and for this purpose Secured Party is granted authority to enter into and upon any premises at which any part of such books and records may be situated and remove them. Any such property not necessary to enforcement of Secured Party's rights shall be returned to Debtor on demand, or otherwise upon completion of use.

5. Transfer any of the Collateral or evidence of the Collateral into Secured Party's own name or that of a nominee, and receive the proceeds and hold the same as security for Debtor's liabilities to Secured Party or apply the proceeds on or against any such liability. Secured Party may notify account debtors and obligors to make payment directly to Secured Party, and may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, release or realize upon the Collateral, in Secured Party's own name or in Debtor's name, as Secured Party may determine.

6. Sell or otherwise dispose of the Collateral. Unless the Collateral in whole or part is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Secured Party will give Debtor reasonable notice of the time and place of any public sale or of the time after which any private sale or other disposition is to be made. Such notice shall be adequate if given at Debtor's address set forth in this Agreement by mailing the notice at least 10 days before any sale or other disposition or action. Secured Party shall be entitled to, and Debtor shall be liable for, reimbursement of all reasonable costs and expenditures of realizing on the security interest, including without limitation court costs, fees for replevin bonds, storage, repossession costs, repair and preparation costs for sale, selling costs and attorneys' fees. All such costs are secured by the security interest in the Collateral granted by this Agreement, except as provided above under "Expenditures by Secured Party." Additionally, if the Collateral includes real estate, and if the mortgage executed in connection with this agreement so provides, Secured Party may exercise its power to sell the Collateral and the interests of all persons in the manner provided in the Oklahoma Power of Sale Mortgage Foreclosure Act, 46 Okla. Stat. § 40 et seq. If there is a foreclosure other than by a Power of Sale, Debtor waives appraisement of the Collateral, unless Secured Party seeks an appraisal. Appraisal shall be at the Secured Party's sole option, to be declared when the petition to foreclose is filed or when judgment is taken.

Debtor waives any right it may have to require Secured Party to pursue any third person for any of the Indebtedness. Secured Party may comply with any applicable state or federal law, requirements in connection with a disposition of the Collateral and compliance will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral. Secured Party has no obligation to clean-up or otherwise prepare the Collateral for sale. Secured Party may sell the Collateral without giving any warranties as to the Collateral and may specifically disclaim any warranty of title or the like. This procedure will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral. If Secured Party sells any of the Collateral upon credit, Debtor will be credited only with payments actually made by the purchaser, received by Secured Party and applied to the indebtedness of the purchaser. In the event the purchaser fails to pay for the Collateral, Secured Party may resell the Collateral and Debtor shall be credited with the proceeds of the sale.

7. Secured Party shall not be liable for failing to collect any account, enforce any contract right, or any other act or omission on the part of Secured Party, its officers, agents or employees, except as the same constitutes bad faith or failure to act in a commercially reasonable manner. Secured Party shall have acted in a commercially reasonable manner if its action or inaction is consistent with general commercial usage of parties similarly situated in the area of Secured Party's location, but this standard shall not constitute disapproval of any procedures which otherwise may be reasonable under the circumstances nor require Secured Party to take steps to preserve rights against prior parties in an instrument of chattel paper.

EXHIBIT 2

# GUARANTY AGREEMENT

DATE OF AGREEMENT
03/30/2023

| DEBTOR'S NAME(S) | LENDER'S NAME AND ADDRESS |
| --- | --- |
| Ada Outdoors, LLC<br>Shawnee Outdoors, LLC<br>Nathaniel O. Beauchamp | Citizen Potawatomi<br>Community Development Corporation<br>1545 Gordon Cooper Drive<br>Shawnee, Oklahoma 74801 |
| DEBTOR'S ADDRESS | |
| 1030 W 12th Street<br>Ada, OK 74820 | |

A. To induce the Lender to extend credit to the Debtor and for other good and valuable consideration, the receipt of which is acknowledged, and for the purpose of enabling the Debtor to obtain or renew loans, credit or other financial accommodation from the Lender named above, each of the undersigned as a primary obligor, jointly and severally and unconditionally: (1) guarantees to the Lender that Debtor will fully and promptly pay or otherwise discharge all indebtedness and other obligations ("Indebtedness") upon which Debtor now is or may later, from time to time, become obligated to Lender as principal, guarantor, endorser, or in any other capacity, and whether joint or several liability or liability created by direct dealing with Lender or through transfer from others, and regardless of the nature and form of Indebtedness and whether due or not due; (2) agrees, without the Lender first having to proceed against Debtor or any other party liable or to liquidate any security, to pay on demand all sums due and to become due to Lender from Debtors and all losses, costs, attorney fees or expenses which may be suffered or incurred by Lender by reason of Debtor's default or the default of the undersigned; (3) except as setoff is waived, agrees to be bound by and on demand to pay any deficiency or difference between all Indebtedness of the Debtor and the proceeds of any private or public sale (including a sheriff's sale) of the security held by Lender, with or without notice to the undersigned; (4) agrees that liability under this Agreement will not be affected or impaired by any failure, neglect or omission, including a failure or delay to perfect or maintain perfection of a security interest, either in relation to the collection of the Indebtedness or the protection of the security given, and regardless of whether the Lender fails or omits to seek or is precluded from seeking a judgment against Debtor; and (5) further agrees that the liability of the undersigned shall not be affected by any lack of validity or enforceability due to defense, claim, discharge or otherwise of any Indebtedness guaranteed by this Agreement or of the security of the Indebtedness.

B. Lender may at any time and from time to time without the further consent of or notice to the undersigned, without incurring responsibility to the undersigned and without impairing or releasing the obligations of the undersigned, and upon any terms and conditions the Lender may elect: (1) change the manner, place or terms of payment or extend the time of payment of any Indebtedness of Debtor to Lender; (2) renew, increase or alter any Indebtedness of Debtor to Lender; (3) raise or lower the interest rate or rates charged Debtor; (4) sell, exchange, release, surrender, realize upon or otherwise deal or not deal with in any manner and in any order any property at any time pledged to secure or securing the Indebtedness of Debtor to Lender or any liabilities incurred directly or indirectly under this Agreement, or any offsets against any such Indebtedness or liabilities; (5) exercise or refrain from exercising any rights against Debtor or others, or otherwise act or refrain from acting (6) settle or compromise any Indebtedness guaranteed or incurred; (7) subordinate the payment of all or part of any Indebtedness of Debtor to Lender to the payment of any liabilities which may be due Lender or others; (8) apply any sums paid by or for account of Debtor to any Indebtedness of Debtor to Lender regardless of what Indebtedness or liability of Debtor to Lender remains unpaid and regardless of to which Indebtedness such sums were intended to be applied; (9) release any one or more of the undersigned, any other guarantor or any other party liable upon or for any Indebtedness or other obligation guaranteed, and such release will not affect the liability under this Agreement of any of the undersigned or any other party not so released; (10) add or release the primary or secondary liability of principals, guarantors or other parties; and/or (11) obtain additional collateral security.

C. The undersigned waives: (1) any and all acceptance of this Guaranty Agreement; (2) notice of the creation of any Indebtedness; (3) any presentment, demand for payment, notice of default or non-payment, notice of acceleration, notice of disposition of security, notice of dishonor or protest to or upon any party and all other notices whatsoever whether required or permitted by this Guaranty Agreement, any other agreement, course of dealing, usage of trade, course of performance and, to the extent allowed, the law; (4) any exercise of any remedy which the Lender now has or later acquires against the Debtor or any other party; (5) any impairment of collateral, including, but not limited to, the failure to perfect, or maintain perfection of, a security interest in collateral; and (6) any event, or any act or omission of the Lender (except acts or omissions in bad faith) which materially increases the scope of the undersigned's risk as guarantor, including the manner of administration of the loan and changes in the form or manner in which any party does business or in their financial condition and any notice of any such change.

D. This Guaranty Agreement shall be absolute, unconditional and continuing guaranty of payment and not of collection and shall be binding upon the undersigned, heirs or successors of the undersigned, and the estate or estates of the undersigned: (1) regardless of the death or cessation of existence of any of the undersigned or of any guarantor or any other party liable upon any Indebtedness or other obligation hereby guaranteed; (2) irrespective of any defenses, claim or discharge available to the Debtor under law or under any agreement with the Lender; and (3) irrespective of any failure or delay by the Lender to perfect or keep perfected any lien or security interest in any collateral. This Guaranty Agreement is an independent obligation which is separately enforceable from the obligation of the Debtor.

E. All rights of the Lender are cumulative and not alternative to other rights. Suit may be brought against the undersigned or other parties liable, jointly and severally, and against any one or more of them, and against all or less than all, without impairing the rights of the Lender, its successors or assigns, against others of the undersigned. The Lender may settle with any one of the undersigned or any other party for such sum or sums as it may see fit and release such of the undersigned or other parties from all further liability to the Lender for such Indebtedness without impairing the right of the Lender to demand and collect the balance of such Indebtedness from others of the undersigned not so released.

F. The Lender may assign this Agreement or any of its rights and powers under it, with all or any part of the Indebtedness guaranteed, and may assign to any such assignee any of the security for the Indebtedness. In the event of such assignment, the assignee shall have the same rights and remedies as if originally named in this Agreement in place of Lender, and the Lender shall thereafter be fully discharged from all responsibility with respect to any such Indebtedness so assigned.

G. Unless expressly limited by specific writing as set forth in this Guaranty Agreement, it is understood to be unlimited in amount. If limited, it is understood the limit means a fixed amount or percentage of any Indebtedness remaining after application of the actual proceeds of the disposition of any security to any unguaranteed portion of the Indebtedness.

H. Until the Indebtedness of the Debtor have been paid in full, the undersigned agrees to provide to the Lender from time to time upon demand such financial statements, copies of tax returns, and other information as to the undersigned as the Lender may reasonably require.

I. Any deposits or other sums credited by or due from the Lender to the undersigned may be set off against any and all liabilities of the undersigned to the Lender arising under the terms of this Guaranty Agreement. The rights granted by this paragraph shall be in addition to the rights of the Lender under any statutory banker's lien or common law right of offset.

J. Until the obligations of the Debtor have been paid in full the undersigned specifically waives all rights of subrogation to the rights of the Lender, any claim to any security or its value to which the Lender has recourse, and all rights of reimbursement or contribution from other parties, whether principals or sureties, accommodation parties or guarantors.

K. The undersigned may, only by written notice given to and received by Lender, withdraw only from liability for additional Indebtedness of Debtor accepted by or incurred to Lender after the time of receipt of such notice by Lender. The liability and other agreements of the undersigned shall not be otherwise affected but shall continue until all Indebtedness, including loan commitments, existing at the time of the receipt of such notice, and renewals or extensions of Indebtedness to which the undersigned consents, is fully paid. After any such revocation, Lender may exercise any rights granted in this Agreement without releasing the undersigned from liability.

L. Notwithstanding the provisions of any note or obligation to which this Guaranty Agreement applies, it is the intention of the parties, and it is here provided, that a Guarantor shall not be liable for interest charges in excess of the maximum amount permitted under the law applicable to this Guaranty Agreement.

M. The undersigned specifically waives any right to setoff under 12 O.S. sec. 616, 15 O.S. sec. 341, or any like statutes, and agree that the Lender may apply the actual proceeds from the disposition of any security first to any unguaranteed portion of the Indebtedness. Any party to this Guaranty Agreement has right to waive trial by jury and waives all objections to venue in any action instituted by the Lender arising out of this Guaranty Agreement.

N. The undersigned waive, as of the date of this Guaranty Agreement, any claim, as that term is defined in the Federal Bankruptcy Code, which the undersigned might have or acquire against the Debtor arising from the existence or performance of the undersigned's obligations under this Guaranty Agreement, and to that extent that the undersigned is not a creditor of the Debtor. In addition to the waiver of the status of creditor, it is agreed that the Indebtedness guaranteed under this Guaranty Agreement excludes all portions of the Indebtedness paid by the Debtor during the period of time within one year prior to the filing of any bankruptcy, reorganization or insolvency proceedings by or against the Debtor. If any payment made by the Debtor to the Lender is determined to be avoidable under applicable state law or the Federal Bankruptcy Code, to that extent, if demanded by the Lender, this Guaranty Agreement is deemed to be reinstated to include the amount within the Indebtedness under this Guaranty Agreement.

O. The undersigned, by signing below, acknowledge having read this Guaranty Agreement, having reviewed it to the extent desired with their legal counsel, and receiving a copy of it and also receiving an explanation of any questions. The undersigned also have read any cosigner notice provided by Lender. The undersigned understand that the undersigned may have to pay any Indebtedness or obligation covered by this Guaranty Agreement in the event the Debtor fails or refuses to do so. The undersigned also represent that they are aware of the financial condition of Debtor and acknowledge a responsibility to maintain a close watch on that financial condition as long as this Guaranty Agreement is outstanding and that they are not relying on the Lender to provide information on the Debtor's financial condition, now or in the future.

P. This Guaranty and the obligations evidenced in it are to be construed and governed by the laws of the state indicated in the address of Lender shown above.

Q. This Guaranty Agreement constitutes the entire agreement between the parties with respect to the obligations of the undersigned and the rights of the Lender under this Guaranty Agreement. This Guaranty Agreement cannot be amended except by an agreement in writing signed by both the undersigned and the Lender. No condition as to the effectiveness or enforcement of this Guaranty Agreement exists except as stated in this Guaranty Agreement. Regardless of any other provision of this Guaranty Agreement to the contrary, and unless otherwise specifically released or modified by this Guaranty Agreement, all other obligations of the undersigned to Lender evidenced by a note, loan agreement, guaranty or any other written agreement remain in force and effect.

R. Limitations on Suit – Liability for damages which the Citizen Potawatomi Community Development Corporation may be found responsible must arise solely pursuant to this Agreement and shall be strictly limited to only the principal amount of the loan, the Corporation's equity interest in the Debtor's enterprise, or the Corporation's security interest in Obligor's property (whichever is greater), and such recovery, if any, shall be exclusively limited to only the assets of the Corporation.

S. Notwithstanding any provision to the contrary, the law of Citizen Potawatomi Nation will govern the construction and enforcement of this agreement. All parties understand and agree that Citizen Potawatomi Nation Tribal Court has jurisdiction to resolve any dispute under this agreement and the parties do hereby submit to the personal jurisdiction of, and waive any objection to venue in, the Citizen Potawatomi Nation Tribal Court for the resolution of any dispute arising out of this agreement.

GUARANTOR'S SIGNATURE(S)

Nathaniel O. Beauchamp

EXHIBIT
24

EXHIBIT 2

# LIMITED LIABILITY COMPANY GUARANTY and PLEDGING RESOLUTION

| DEBTOR'S NAME(S) | LIMITED LIABILITY COMPANY | FINANCIAL INSTITUTION |
|---|---|---|
| Ada Outdoors, LLC<br>Nathaniel O. Beauchamp | State of Organization: Oklahoma | Citizen Potawatomi Community Development Corporation<br>1545 Gordon Cooper Drive<br>Shawnee, Oklahoma 74801 |

THE UNDERSIGNED CERTIFIES to the above-named Financial Institution as of the date set forth below that: (1) I am a duly appointed and qualified Manager of the above-named limited liability company (the "Company") and the keeper of the Company records; (2) the following is a true and correct copy of Resolutions duly adopted by all of the Members of the Company either at a meeting at which a quorum was present or by unanimous consent of the Members as evidenced by a memorandum of action duly signed by all Members of the Company; (3) there is no provision in the Company's Articles of Organization or Operating Agreement limiting the power of the Members to adopt the following Resolutions which conform with the provisions of the Articles and Operating Agreement; and (4) the Resolutions which are quoted below are now in full force and effect:

"RESOLVED that any One (1) of the Managers of this Company be, and are by these Resolutions authorized, on behalf of this Company:

1. To unconditionally, absolutely and continually guarantee to the following named Financial Institution, hereinafter called Financial Institution: Citizen Potawatomi Community Development Corporation

that the following named Debtor, hereinafter called Debtor: Ada Outdoors, LLC

will fully and promptly pay and discharge all indebtedness for which the Debtor now owes or may at any later time become obligated to the Financial Institution, either as principal, guarantor, endorser, or in any other capacity, and whether created by direct dealing with the Financial Institution or otherwise, and regardless of the nature or form of such indebtedness, including without limitation, judgments, promissory notes, open accounts or any other form of indebtedness (collectively, the "Indebtedness").

2. To pledge and grant a security interest in any and all assets of the Company as collateral for the Indebtedness and/or the Company's guaranty of the Indebtedness.

3. To execute and deliver such security agreements, assignments, guarantees, financing statements, lien entry forms and any other documents and agreements, and to do and perform such other acts as may be necessary and required in order to carry into effect the terms, provisions and conditions of, and to consummate the transactions contemplated by, these Resolutions.

4. To provide that any guaranty of the Indebtedness, pledge of and/or security interest in the assets of the Company to the Financial Institution be unlimited, except as follows: n/a

"FURTHER RESOLVED, that the Members of the Company have determined that the actions authorized in these Resolutions are in the best interest of the Company and will be to its benefit, and that the execution of any document, instrument or agreement required in furtherance of these Resolutions is authorized by the Company's Articles of Organization or Operating Agreement."

"FURTHER RESOLVED, that these Resolutions and authorities shall continue in full force and effect until revoked or modified by resolution of the Members and until official notice in writing of such change shall be given to, and received and acknowledged by, the Financial Institution, and that all previous acts of and all documents and papers previously executed and/or delivered by any of the Managers of the Company in exercising any of the powers or matters described in these Resolutions are ratified, adopted, confirmed and approved."

THE UNDERSIGNED FURTHER CERTIFIES that the following named persons have been duly appointed as Managers, that they continue to hold the position of Manager at the present time, and that the signatures appearing below are the genuine and original signatures of each, respectively: (Attach separate sheet if additional space is needed.)

| NAME | TITLE | SIGNATURE |
|---|---|---|
| Nathaniel O. Beauchamp | Managing Member | [signature] |
| | | |
| | | |

**SIGNATURE OF MANAGER**

WITNESS my hand on this _____ day of ____________________

____________________ Manager

**CERTIFICATE CONFIRMATION**

Being one of the Managers of the Company (other than the signing Manager), I confirm the above certificate as of the date set forth above.

____________________ Manager

© 2005 Citizen Potawatomi Community Development Corporation

EXHIBIT 2

## LIMITED LIABILITY COMPANY GUARANTY and PLEDGING RESOLUTION

| DEBTOR'S NAME(S) | LIMITED LIABILITY COMPANY | FINANCIAL INSTITUTION |
|---|---|---|
| Shawnee Outdoors, LLC<br>Nathaniel O. Beauchamp | State of Organization: Oklahoma | Citizen Potawatomi Community Development Corporation<br>1545 Gordon Cooper Drive<br>Shawnee, Oklahoma 74801 |

THE UNDERSIGNED CERTIFIES to the above-named Financial Institution as of the date set forth below that: (1) I am a duly appointed and qualified Manager of the above-named limited liability company (the "Company") and the keeper of the Company records; (2) the following is a true and correct copy of Resolutions duly adopted by all of the Members of the Company either at a meeting at which a quorum was present or by unanimous consent of the Members as evidenced by a memorandum of action duly signed by all Members of the Company; (3) there is no provision in the Company's Articles of Organization or Operating Agreement limiting the power of the Members to adopt the following Resolutions which conform with the provisions of the Articles and Operating Agreement; and (4) the Resolutions which are quoted below are now in full force and effect;

"RESOLVED that any One (1) of the Managers of this Company be, and are by these Resolutions authorized, on behalf of this Company:

1. To unconditionally, absolutely and continually guarantee to the following named Financial Institution, hereinafter called Financial Institution: Citizen Potawatomi Community Development Corporation

that the following named Debtor, hereinafter called Debtor: Nathaniel O. Beauchamp

will fully and promptly pay and discharge all indebtedness for which the Debtor now owes or may at any later time become obligated to the Financial Institution, either as principal, guarantor, endorser, or in any other capacity, and whether created by direct dealing with the Financial Institution or otherwise, and regardless of the nature or form of such indebtedness, including without limitation, judgments, promissory notes, open accounts or any other form of indebtedness (collectively, the "Indebtedness").

2. To pledge and grant a security interest in any and all assets of the Company as collateral for the Indebtedness and/or the Company's guaranty of the Indebtedness.

3. To execute and deliver such security agreements, assignments, guarantees, financing statements, lien entry forms and any other documents and agreements, and to do and perform such other acts as may be necessary and required in order to carry into effect the terms, provisions and conditions of, and to consummate the transactions contemplated by, these Resolutions.

4. To provide that any guaranty of the Indebtedness, pledge of and/or security interest in the assets of the Company to the Financial Institution be unlimited, except as follows: n/a

"FURTHER RESOLVED, that the Members of the Company have determined that the actions authorized in these Resolutions are in the best interest of the Company and will be to its benefit, and that the execution of any document, instrument or agreement required in furtherance of these Resolutions is authorized by the Company's Articles of Organization or Operating Agreement."

"FURTHER RESOLVED, that these Resolutions and authorities shall continue in full force and effect until revoked or modified by resolution of the Members and until official notice in writing of such change shall be given to, and received and acknowledged by, the Financial Institution, and that all previous acts of and all documents and papers previously executed and/or delivered by any of the Managers of the Company in exercising any of the powers or matters described in these Resolutions are ratified, adopted, confirmed and approved."

THE UNDERSIGNED FURTHER CERTIFIES that the following named persons have been duly appointed as Managers, that they continue to hold the position of Manager at the present time, and that the signatures appearing below are the genuine and original signatures of each, respectively: (Attach separate sheet if additional space is needed.)

| NAME | TITLE | SIGNATURE |
|---|---|---|
| Nathaniel O. Beauchamp | Member | [signature] |
| [signature] | | |

**SIGNATURE OF MANAGER**

WITNESS my hand on this ______ day of ____________ ____________________
Manager

**CERTIFICATE CONFIRMATION**

Being one of the Managers of the Company (other than the signing Manager), I confirm the above certificate as of the date set forth above.

____________________
Manager

© 2005 Citizen Potawatomi Community Development Corporation

EXHIBIT 2